HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HP TUNERS, LLC, a Nevada limited liability company,

           Plaintiff,

    vs.

KEVIN SYKES-BONNETT and SYKED ECU TUNING INCORPORATED, a Washington corporation, and JOHN MARTINSON,

           Defendants.

CASE NO.  3:17-cv-05760-BHS

**RENEWED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND CONSOLIDATED MEMORANDUM IN SUPPORT**

**NOTE ON MOTION CALENDAR : AUGUST 16, 2018**

**<u>ORAL ARGUMENT REQUESTED</u>**

Plaintiffs HP TUNERS, LLC, a Nevada limited liability company ("HPT"), brings this Renewed Emergency Motion for Temporary Restraining Order and Preliminary Injunction pursuant to Federal Rules of Civil Procedure 65(b) against Defendants KEVIN SYKES-BONNETT, SYKED ECU TUNING INCORPORATED and JOHN MARTINSON, including those persons acting in concert with them (collectively, "Defendants").  In support thereof, HPT states as follows:

## <u>INTRODUCTION</u>

On October 18, 2017, this Court denied HPT's initial motion for Temporary Restraining Order based on the lack of information and evidence HPT was able to proffer at that time.  Since

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

that time, the parties have engaged in discovery; however, Defendants have not been forthcoming with discovery and have not produced virtually any of the specific documents and information requested by HPT.  HPT finally knows why. Specifically, several days ago, an anonymous informant[1] provided HPT with detailed and comprehensive evidence demonstrating Defendants' possession of substantial confidential and proprietary information of HPT that was wrongfully furnished to Defendants by a former owner of HPT.

---

[1]     In the interest of full disclosure, and mindful of its duty of candor to the Court, HPT discloses to the parties and the Court the manner in which it received the information from the anonymous informant detailed herein and in the Declaration of Keith Prociuk submitted in connection with this Motion.   In connection with HPT's investigation concerning the misappropriation and misuse of its confidential and proprietary information, which investigation remains ongoing, counsel for HPT was contacted anonymously, by electronic mail, by an individual claiming to have material and highly relevant information relating to HPT's investigation, and the misuse and misappropriation of HPT's confidential and proprietary information.  Preliminary communications between Counsel and the anonymous informant (which communications have been produced to Defendants herein) and preliminary evidence provided by the anonymous informant led HPT to believe that such information existed, was highly credible and was, in fact, possessed by the anonymous informant.  Consequently, additional electronic mail communications ensued.  Ultimately, the anonymous informant agreed to provide HPT with evidence and information in exchange for a reward.  However, with regard to the turnover of evidence and information in its possession, the anonymous informant required that his or her identity remain anonymous and that HPT would tender a reward in the form of crypto-currency (Bitcoin) in exchange for the information and evidence.  Based on the preliminarily detail supplied by the anonymous informant giving strong weight to the credibility of the information and evidence, HPT proceeded with a series of transactions in which HPT tendered a reward to the anonymous informant in exchange for information and evidence relating to the misappropriation and misuse of HPT's confidential and proprietary information.  In connection with such transactions, among other documents and information which have been produced to Defendants, HPT received Exhibits 1-A, 1-B, 1-C and 1-L to the Declaration of Keith Prociuk submitted in connection with this Motion.   HPT has used its best efforts to authenticate the documents and images received from the anonymous informant and believes them to be authentic.  HPT does not know the identity of the anonymous informant nor does it have knowledge as to how the evidence was obtained except that the anonymous informant has communicated that such documents, information and images were provided by Defendant Kevin Sykes-Bonnett and/or were captured in the context of TeamViewer sessions between Mr. Sykes-Bonnett and a third party (not the anonymous informant).

RENEWED EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION -
page 2

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

The evidence from the anonymous informant includes screenshots, images and certain documents and communications showing the former HPT owner's involvement with Syked and Defendants' wrongful possession of highly confidential and proprietary information of HPT.  For example, the images reflect Defendants' unauthorized possession of HPT's key generation tool and certain source code; however, the tool and source code were only known to and possessed by the three owners of HPT.  This evidence coupled with the statements of Matt Kaiser wherein he details the sale of fraudulent HPT application keys by Kevin Sykes-Bonnett to third parties using a HPT key generation tool is consistent with the information provided by the anonymous informant.

The fact that Defendants are unquestionably in wrongful possession of HPT's highly confidential and proprietary information taken together with Defendants' prior public threats on FaceBook to "open source" (meaning publicly release) all GM source code and Defendants' active marketing, distribution and sale of competitive products, which are based on, derived from and/or incorporate HPT's confidential and proprietary information gives rise to this renewed motion for Temporary Restraining Order and Preliminary Injunction.  Absent injunctive relief, HPT will suffer irreparable harm and the imminent threat to HPT's entire business is substantial.

HPT seeks to restrain and enjoin Defendants as follows:

1.      That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, publicly releasing source code (open sourcing code) in any manner;

2.      That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, selling any competitive products or software to HPT;

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

3.      That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, selling Syked ECU Tuning, Inc.'s vehicle communication cable known as the "Syked Eliminator Cable";

4.      That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, releasing any products or services using HPT's proprietary code to any third party;

5.      That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, selling any products or services using HPT's proprietary code to any third party;

6.      That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, releasing any products or software that is based on or derived from HPT's software or products;

7.      That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, selling any products or software that is based on or derived from HPT's software or products;

8.      That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, accessing any computer folders or files provided to Defendants by Ken Cannata or Bobbie Cannata;

9.      That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be ordered to provide HPT with any and all communications, documents and information received from Ken Cannata or Bobbie Cannata;

10.     That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, engaging in any

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

activities related to the planning, design, development, coding or creation of any software or products that in any way uses, relies upon, is based on or discloses any of HPT's confidential, proprietary or trade secret information, including but not limited to source code;

11.     That Defendants be required to submit any and all computers and portable USB storage devices and drives used by them at any time since January 1, 2016 for forensic examination by an expert designated by Plaintiff and shall be restrained from changing, deleting, modifying or otherwise tampering with any contents of any such computer or portable USB storage device or drive;

12.     That Defendants be required to tender the contents of any and all computer files and folders which are reflected on the screenshot images attached as Exhibits 1-A, 1-B and 1-C to the Declaration of Keith Prociuk;

13.     That Defendants be required to tender the PCM Harness for the E38 Controller depicted in Exhibit 1-I to the Declaration of Keith Prociuk for forensic examination by an expert designated by Plaintiff and shall be restrained from changing, deleting, modifying or otherwise tampering with the PCM Harness for the E38 Controlled in any manner whatsoever;

14.     That Defendants be ordered to compel with discovery and produce the documents and information requested by HPT; and

15.     That this Court enter such other and further relief relating to the Scheduling Order and any other matters as deemed necessary and appropriate.

HPT requests that the Court expedite consideration of this Motion to avoid irreparable harm to HPT.

The relief requested is a temporary restraining order, issued temporarily until such time as the Court may hear HPT's Motion for Preliminary Injunction.  HPT also requests that the

RENEWED EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION -
page 5

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

Court issue an order to show cause as to why the requested preliminary injunction should not issue.

While discussed in more detail in the Memorandum of Points and Authorities that follows, the legal authority in support of the requested relief is Fed. R. Civ. P. 65(b) and Local Rule 65.  The Motion is based on the Verified Amended Complaint which was filed as well as the Declaration of Keith Prociuk attached as Exhibit 1, and such oral argument as the Court may allow.

## STATEMENT OF RELEVANT FACTS

1.     HPT is a niche business, which provides complete, cost effective automotive tuning and data acquisition solutions for enthusiasts and professional shops.

2.     HPT's business includes but is not limited to computer hardware and software designed for use in custom and/or pre-programmed engine and transmission tuning and calibration applications for automobiles, trucks and other types of vehicles (including but not limited to ATV's, snowmobiles and watercraft) (the "HP Tuners Business").

3.     HPT has expended significant time, money and resources to develop the HP Tuners Business, and HPT has created methods of business, strategies, programs and technologies which did not exist in the industry prior to HPT's development of the HP Tuners Business.

4.     HPT conducts business nationwide. Over the years, HPT has invested a great deal of time and money in developing its proprietary products and source code, and in building and growing the HP Tuners Business.

5.     In order for HPT to gain a competitive advantage in the industry, it has cultivated, nurtured and maintained an extensive network of vendors, resellers and customers to which

RENEWED EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION -
page 6

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

HPT provides its products and offerings.   HPT's network of vendors, resellers and customers is expansive and relies on HPT to ensure that only authorized, authentic products and offerings are available in the marketplace.

6.     HPT invests a substantial amount of money and other resources in developing and maintaining its network of vendors, reseller and customers.

7.     HPT prides itself in catering to the needs of its vendors, resellers and customers and providing authorized, authentic and functional products and offerings, and the most competitive pricing in the industry.

8.     HPT works diligently to create new products and offerings and to quickly and adeptly match its vendors, resellers and customers' needs and requests.

9.     HPT is constantly working to develop its products, source code and offerings, and has devoted substantial time, money and resources to protect its confidential and proprietary information, and to avoid efforts by third parties to pirate HPT's products and offerings.

10.     As a result of HPT's reputation, exceptional service, and diligent development of products and offerings, HPT has developed long-standing relationships with many of its vendors, resellers and customers.

11.     HPT's confidential and proprietary software, source code, license key generator and offerings have been developed and extensively refined by HPT at a substantial cost and effort and constitute confidential information and valuable trade secrets of HPT (collectively, the "Confidential Information").

12.     HPT derives economic value from the fact that its Confidential Information is not known outside of HPT's business and is not available through any public records and

RENEWED EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION -
page 7

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

information sources. HPT's Confidential Information cannot be independently developed by its competitors without great effort and expense.

13.     Recognizing the economic value that it derives from its Confidential Information, as well as the potential value of this information to its competitors, HPT requires that its Confidential Information be kept strictly confidential by its employees and restricts access to this information.  HPT has taken substantial steps and security measures to protect the confidentiality of its Confidential Information, including but not limited to the following:

a)     HPT protects access to its Confidential Information through computer passwords;

b)     HPT protects to its Confidential Information through hard drive encryption on all employee's computers;

c)     HPT protects access to its Confidential Information through sophisticated firewalls;

d)     HPT protects distribution of Confidential Information through non-compete and non-disclosure agreements;

e)     HPT limits the number of employees having access to its Confidential Information;

f)     Employees are given access to HPT's Confidential Information on a "need to know" basis;

g)     HPT does not give access to its Confidential Information to non-employees;

h)     HPT employees are forbidden from copying, transferring or otherwise duplicating any of HPT's Confidential Information; and

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

i)      HPT requires each employee to return to HPT all Confidential Information when the employee leaves HPT's employ.

14.     Furthermore, HPT undertook reasonable measures to maintain the secrecy of its proprietary products, source code, software and offerings, including but not limited to entering into licensing agreements with protective clauses and installing security measures to prevent others from obtaining access and pirating HPT's confidential and proprietary products, source code, software and offerings.

15.     Prior to October 20, 2016, HPT was owned by Keith Prociuk, Chris Piastri and Ken Cannata.  (See Prociuk Decl.).

16.     On October 20, 2016, HPT purchased Mr. Cannata's interest in the company.  In connection with that agreement, Mr. Cannata agreed to various restrictive covenants, he agreed to return all of HPT's proprietary and confidential information (including but not limited to all MPVI firmware and source code) and he agreed to destroy all confidential and proprietary information of HPT.  (See Prociuk Decl.).

17.     Further, while Mr. Cannata was an owner of HPT and in connection with the purchase of his interest, he agreed to maintain the confidentiality of and not disclose HPT's confidential and proprietary information in any manner.  (See Prociuk Decl.).

18.     Notwithstanding these restrictions, several days ago, an anonymous informant provided HPT with detailed information and images received from Defendant Kevin Sykes-Bonnett and from TeamViewer sessions with Defendant Kevin Sykes-Bonnett.  The information shows that Mr. Cannata (and/or his wife Bobbie Cannata) was involved with Defendants as an owner as of at least January 2017 (less than 3 months after the purchase of his interest) and that

RENEWED EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION -
page 9

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

Defendant Kevin Sykes-Bonnett wrongfully possesses highly confidential and proprietary information of HPT.  (See Prociuk Decl.).

19.     For example, the screenshot of Defendants' computer known as "Kevin-PC" (which is attached as Exhibit 1-A to the Prociuk Decl.) depicts a number of HPT source code files, descriptive documents and folders including:

     a.   "Firmware" – Folder

     b.   "Firmware Hack" - Folder

     c.   "CAN0RX_ISR.ASM" - Firmware source code file from HPT MPVI that only Mr. Prociuk, Mr. Cannata and Mr. Piastri had access to

     d.   "CAN0TXPROCESS.ASM" - Firmware source code file from HPT MPVI that only Mr. Prociuk, Mr. Cannata and Mr. Piastri had access to

     e.   "P32_ALGO.ASM" - Firmware source code file from HPT MPVI that only Mr. Prociuk, Mr. Cannata and Mr. Piastri had access to

     f.   "FirmwareHack.rar" - Archive file

     g.   "Interface Reprogramming.doc" - HPT document describing MPVI firmware reprogramming commands and method

     h.   "MPVI Protocol.doc"- HPT document describing MPVI protocol commands used to command and control the MPVI from PC

20.     Similarly, the screenshot of Defendants' computer known as "Kevin-PC" (which is attached as Exhibit 1-B to the Prociuk Decl.) depicts a number of HPT folders and files from HPT VCM Suite source code including:

     a.   "License" - HPT source code folder containing core VCM Suite licensing code)

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

b. "LicTransfer" - Folder containing HPT utility program source code used to transfer licenses from one MPVI to another, used for interface replacements

c. "Shared" – Folder containing VCM Suite source code

d. "cCable.cs" - HPT VCM Suite source code file

e. "cController.cs" - HPT VCM Suite source code file

f. "cMPVI.cs" - HPT VCM Suite source code file

g. "cUtil.cs" - HPT VCM Suite source code file

h. "cVehicle.cs" - HPT VCM Suite source code file

i. "License Writer.exe" - HPT utility program used to transfer licenses from one MPVI to another

j. "Lictransfer.exe" - HPT utility program used to transfer licenses from one MPVI to another – older version

21. Furthermore, the screenshots of Defendants' computer known as "Kevin-PC" (which is attached as Group Exhibit 1-C to the Prociuk Decl.) depicts a HPT windows based Key Generator program which acts as a shell to a HPT keygen.exe command line program. The keygen.exe is confidential and proprietary information HPT.

22. Defendants' receipt and possession of this detailed confidential and proprietary information of HPT is wrongful and improper.

23. Notably, Matt Kaiser's statements are consistent with Defendants' possession of this information. (A copy of the Declaration of Matt Kaiser is attached to the Prociuk Decl. as Exhibit 1-H).

24. In particular, Mr. Kaiser stated that Kevin Sykes-Bonnett was generating fraudulent application keys for an HPT Interface. Moreover, Mr. Kaiser stated that Kevin Sykes-

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

Bonnett had a "silent business partner" who was a "former HP Tuners partner or employee." (See the Kaiser Decl. which is attached as Exhibit 1-H to the Prociuk Decl.).

25.     In addition to the above, Defendants posted a YouTube video at https://youtu.be/nGK4o0lxYq0?t=100 which contained a licensing screen.  A screenshot of the licensing screen shows Defendants have copied HPT's licensing screen virtually word for word. (See Exhibit 1-D). HPT now knows how Defendants were able to copy this – it was wrongfully provided to Defendants by Mr. Cannata.  (See Prociuk Decl.).

26.     Similarly, Exhibit 1-E shows a listing of exact HPT parameter names (character per character, including abbreviations) showcased in Defendants' own software.  Every single parameter in the list to the left is copied from HPT software.  (See Exhibit 1-F to the Prociuk Decl. showing a sample of a few of these parameters shown in HPT software (e.g.  "Max Torque Timing Mult", "Max Torque Timing EGR adder", and "Max Torque Timing Alcohol Adder") which are seen in Defendants' software. This is also consistent with Defendants' receipt of the parameters list names from Mr. Cannata as Mr. Prociuk came up with these names himself over a decade ago and there is no other way that Defendants would have them.  (See Prociuk Decl.).

27.     Defendant Kevin Sykes-Bonnett has also posted images on FaceBook showing his wrongful possession of confidential and proprietary information of HPT.

28.     For example, Defendant Sykes-Bonnett posted an image showing his possession of a PCM Harness for the E38 Controller, which PCM Harness was designed by Mr. Prociuk, is proprietary to HPT, is manufactured exclusively for HPT by Speartech, and which is not publicly available.  (See Exhibit 1-I to the Prociuk Decl.).  Mr. Cannata would have been in possession of the PCM Harness and only Mr. Cannata could have provided the PCM Harness to Defendants.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

29.     Similarly, Defendant Sykes-Bonnett posted an image showing his possession of PCM Tools Software, which is confidential and proprietary software of HPT, and which was not possessed by anyone other than Mr. Prociuk, Mr. Piastri and Mr. Cannata.  (See Exhibit 1-J to the Prociuk Decl.).  Mr. Cannata would have been in possession of the PCM Tools Software and only Mr. Cannata could have provided the PCM Tools Software to Defendants.

30.     Furthermore, upon information and belief, Syked's recently released Eliminator Cable is the same or substantially similar to HPT's MPVI and contains the same communication protocol.  Documents and information received from the anonymous informant demonstrate that Defendants have duplicated HPT's MPVI communication protocol in connection with the recently released Syked Eliminator Cable, and that the Syked Eliminator Cable incorporates confidential and proprietary information of HPT's MPVI.  (See Prociuk Decl.).

31.     Defendant Kevin Sykes-Bonnett has made various public threats to "open source" (publicly release) source code.  (See Exhibit 1-G to the Prociuk Decl.).[2]

32.     Moreover, Defendants are actively marketing products for sale (e.g. Syked's software, the Syked's Eliminator Cable, tuning credits, etc.) which unfairly compete with HPT's products and offerings, and which are based on, derived from and/or incorporate confidential and proprietary information of HPT.  (See Prociuk Decl. and Exhibit 1-K attached thereto, which is a FaceBook post by Syked marketing the competing Eliminator Cable product and discounted tuning credits available for sale to compete with HPT).

33.     Attached as Exhibit 1-L to the Prociuk Decl. is an unsigned copy of a "Shares Purchase Agreement" between Syked ECU Tuning, Inc. and Bobbie Cannata.  The anonymous

---

[2]     Defendants' threats in this regard should be taken seriously.  On May 23, 2018, Defendant Kevin Sykes-Bonnett publicly released proprietary algorithms of General Motors in a FaceBook post.  (See Exhibit 1-M to the Prociuk Decl.).

RENEWED EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION -
page 13

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

informant provided HPT with this document evidencing Mr. Cannata's direct or indirect ownership interest in Syked ECU Tuning, Inc. through Bobbie Cannata. The "Shares Purchase Agreement" is substantially similar to a form of the same document used by Ken Cannata and HPT during Ken Cannata's tenure with HPT. In addition, the anonymous informant provided email communications between Ken Cannata and Syked ECU Tuning, Inc. relating to the Bylaws of Syked ECU Tuning.

34.     Because of the threat to HPT's business that competing products incorporating HPT's confidential and proprietary information have been released and are being sold, HPT's entire business is at stake.

35.     Consequently, there is now substantial evidence demonstrating Defendants' wrongful receipt, possession and use of HPT's confidential, proprietary and trade secret information.

36.     For these reasons, Plaintiff's renewed motion should be granted and the injunctive relief requested herein should be entered.

## ARGUMENT

## THE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION SHOULD BE GRANTED.

### A.     LEGAL STANDARDS

A court has the discretion to grant injunctive relief when a plaintiff establishes that it is likely to succeed on the merits, it is likely to suffer irreparable harm in the absence of the preliminary relief, the balance of equities tips in his favor, and an injunction is in the public interest. *All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011), *quoting*

RENEWED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION - page 14

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

1   *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Johnson v. Couturier*, 572 F.3d

2   1067, 1078 (9th Cir. 2009), also quoting *Winter*.

3          Alternatively, the Ninth Circuit has authorized a sliding scale approach where, even if the

4   plaintiff has not established that it is likely to succeed on the merits, a court may nevertheless

5   grant the requested relief if the plaintiff raises "serious questions going to the merits … and the

6   balance of hardships tips sharply in [plaintiff's] favor." *Cottrell*, 632 F.3d at 1131-32, *quoting*

7   *Clear Channel Outdoor, Inc. v. City of L.A.*, 340 F.3d 810, 813 (9th Cir. 2003).

8          If a defendant claims to have an affirmative defense, once the plaintiff establishes

9   likelihood of success on the merits, it is the defendant's burden to show it is likely to succeed on

10  its affirmative defense. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir.

11  2007).

12

13  **B.**      **HPT IS LIKELY TO SUCCEED ON THE MERITS, HPT IS LIKELY TO**

14              **SUFFER IRREPARABLE HARM IN THE ABSENCE OF THE**

15              **REQUESTED RELIEF AND THERE IS NO PREJUDICE TO**

16              **DEFENDANTS IN GRANTING THE RELIEF REQUESTED HEREIN.**

17          The evidence presented in connection with the Verified Amended Complaint and this

18  Motion establishes that HPT is likely to succeed on the merits of its claims.

19          As detailed herein and in the Declaration of Keith Prociuk, Defendants have been

20  wrongfully provided with and possess HPT's confidential and proprietary information and have

21  misappropriated HPT's confidential and proprietary information by incorporating it into the

22  products and software it is developing, actively marketing and selling.  Moreover, Defendants

23  are generating fraudulent application keys for HPT Interfaces using HPT's proprietary key

24  generation tool.  Moreover, there is exact duplication of HPT parameter names (character per

25

RENEWED EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION -
page 15

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

character, including abbreviations) showcased in Defendants' own software.  As the exhibits to the Amended Complaint demonstrate, Defendants have copied HPT's licensing and have publicly admitted to hacking and reversing HPT's software for their own benefit.

In connection with the prior motion, this Court found that HPT had not proffered sufficient evidence in support of the request for injunctive relief.  Now, based on the images and information provided as well as the fact that HPT's former owner has supplied HPT's confidential and proprietary information to his new "business partners", it is highly likely that Defendants' products and software are derived from, based upon and contain HPT's proprietary code and information.  Without HPT's proprietary code and information, Defendants would not have been able to launch a competitive product.  For example, Defendants have created a duplicate MPVI protocol for their new Syked Eliminator Cable which is being sold right now. Defendants' based the development of the Syked Eliminator Cable on the information received from Mr. Cannata.  Furthermore, the similarities outlined herein and identical parameters serve to demonstrate that Defendants' products and software are based on HPT's code and proprietary information.

For these reasons, HPT's claims for (i) violation of the Computer Fraud and Abuse Act ("CFAA") arising under 18 U.S.C. §1030; (ii) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836 et seq.; (iii) misappropriation of trade secrets arising under the Washington Uniform Trade Secrets Act, RCW 19.108; (iv) violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 et. seq.; (v) unfair competition under the Washington Consumer Protection Act, RCW 19.86.020; (vi) unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et. seq.; (vii) breach of contract; and (viii) tortious interference with prospective economic relations, are all well founded in law and fact.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

Here, there is no harm to Defendants by virtue of the relief requested herein and that HPT will suffer irreparable harm if Defendants' conduct is not restrained.  It is indisputable that the release or sale of competitive products and software containing misappropriated confidential, proprietary and trade secret information of HPT is improper and unlawful.  HPT's investigation of these matters based on publicly available information and strong evidence from an anonymous informant who was communicating with Mr. Sykes-Bonnett and from TeamViewer sessions with Mr. Sykes-Bonnett which are gives rise to and support HPT's conclusion that Defendants' products and software are based on, derived from and contain HPT's confidential, proprietary and trade secret information.

Because Defendants' products and software are based on, derived from and contain HPT's confidential, proprietary and trade secret information, HPT will suffer irreparable harm in the absence of the requested relief.  If Defendants are permitted to containing selling their products and software which are based on, derived from and contain HPT's confidential, proprietary and trade secret information, then HPT's entire business is at risk.  The very survival of HPT is at stake if Defendants are not enjoined from their conduct.

Moreover, it is indisputable that Defendants will not suffer any harm in having to cease their sale of products and software to the public.  Defendants release and sale of their competitive products should not be permitted unless and until Defendants can demonstrate that their products and software are not based on or derived from, and do not contain HPT's confidential, proprietary and trade secret information.  The losses to HPT if Defendants' software and product is publicly released cannot be ascertained and are unknown.  It is difficult to imagine harm that could be more irreparable as HPT's entire business is in jeopardy.

RENEWED EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION -
page 17

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

Furthermore, it is not only HPT that will suffer irreparable harm, harm will also be inflicted upon all of its employees, who will be substantially impacted if HPT's business is compromised.  There can be no doubt that HPT has demonstrated a high likelihood of very serious and irreparable harm.

### C. THE BALANCE OF EQUITIES TIPS SHARPLY IN HPT'S FAVOR AND THE REQUESTED RELIEF IS IN THE PUBLIC INTEREST.

If Defendants, and those acting in concert with them, are enjoined as requested, they will only be prevented from (unlawfully) continuing to use confidential and information of HPT which is not theirs and from selling products and software which is based on, derived from and contains HPT's confidential, proprietary and trade secret information. Conversely, if HPT's products and software have been misappropriated by Defendants which HPT has strong evidence to suggest is the case, HPT stands to lose its entire business if the relief is not granted and Defendants, and those acting in concert with him, are not enjoined as detailed herein.

Finally, HPT has not unreasonably delayed in filing this motion.  (*See Cybermedia, Inc. v. Symantec Corp.,* 19 F. Supp. 2d 1070, 1078 (N.D. Cal. 1998) (three month delay to investigate not an unreasonable delay)). HPT received the information from the anonymous source earlier this month on August 5, 2018 and immediately took action to prepare and file this Motion. Accordingly, the balance of equities tips strongly in HPT's favor.  Finally, the potential devastation of HPT's business and loss of jobs implicate a strong interest by the public in granting the requested relief.

### D. CONCLUSION

Because the factors weigh in favor of granting the relief requested by HPT, HPT respectfully requests that the Court enter the proposed order attached hereto as Exhibit 2.

RENEWED EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION -
page 18

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

WHEREFORE, HP TUNERS, LLC, respectfully prays for the following relief against Defendants Kevin Sykes-Bonnett, Syked ECU Tuning, Inc. and John Martinson:

1.      That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, publicly releasing source code (open sourcing code) in any manner;

2.       That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, selling any competitive products or software to HPT;

3.      That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, selling Syked ECU Tuning, Inc.'s Eliminator Cable;

4.      That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, releasing any products or services using HPT's proprietary code to any third party;

5.      That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, selling any products or services using HPT's proprietary code to any third party;

6.      That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, releasing any products or software that is based on or derived from HPT's software or products;

7.      That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, selling any products or software that is based on or derived from HPT's software or products;

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

8.     That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, accessing any computer folders or files provided to Defendants by Ken Cannata or Bobbie Cannata;

9.     That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be ordered to provide HPT with any and all communications, documents and information received from Ken Cannata or Bobbie Cannata;

10.    That Defendants, as well as each of their agents, and all persons acting in concert with any of them, be immediately restrained from, directly or indirectly, engaging in any activities related to the planning, design, development, coding or creation of any software or products that in any way uses, relies upon, is based on or discloses any of HPT's confidential, proprietary or trade secret information, including but not limited to source code;

11.    That Defendants be required to submit any and all computers and portable USB storage devices and drives used by them at any time since January 1, 2016 for forensic examination by an expert designated by Plaintiff and shall be restrained and enjoined from changing, deleting, modifying or otherwise tampering with any contents on any such computer or portable USB storage device or drive;

12.    That Defendants be required to tender the contents of any and all computer files and folders which are reflected on the screenshot images attached as Exhibits 1-A, 1-B and 1-C to the Declaration of Keith Prociuk;

13.    That Defendants be required to tender the PCM Harness for the E38 Controller depicted in Exhibit 1-I to the Declaration of Keith Prociuk for forensic examination by an expert designated by Plaintiff and shall be restrained from changing, deleting, modifying or otherwise tampering with the PCM Harness for the E38 Controlled in any manner whatsoever;

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

14.      That Defendants be ordered to compel with discovery and produce the documents and information requested by HPT; and

15.      That this Court enter modify the Scheduling Order and Trial Date in this matter in order for HPT to conduct proper discovery relating to these matters;

16.      That the Court issue an order to show cause as to why the requested preliminary injunction should not issue; and

17.      For such other and further relief as this Court deems necessary and appropriate.

Dated this 16th day of August, 2018

Respectfully submitted,

*s/ Andrew P. Bleiman*
Attorneys for HP Tuners, LLC

Stephen G. Leatham, WSBA #15572
Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
PO Box 611
211 E. McLoughlin Boulevard
Vancouver, WA 98666-0611
Telephone:  (360) 750-7547
Fax:  (360) 750-7548
E-mail:  sgl@hpl-law.com

Andrew P. Bleiman (admitted *pro hac vice*)
Marks & Klein
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
(312) 206-5162
andrew@marksklein.com

RENEWED EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION -
page 21

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all Counsel of Record.

HEURLIN, POTTER, JAHN, LEATHAM,
HOLTMANN & STOKER, P.S.

*s/ Stephen G. Leatham*
Stephen G. Leatham, WSBA #15572
211 E. McLoughlin Boulevard, Suite 100
Vancouver, WA 98663
Telephone:  (360) 750-7547
Fax:  (360) 750-7548
E-mail:  sgl@hpl-law.com
Attorney for HP Tuners, LLC

RENEWED EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION -
page 22

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547