THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company,<br><br>        Plaintiff,<br><br>    vs.<br><br>KEVIN SYKES-BONNETT and SYKED ECU TUNING INCORPORATED, a Washington corporation,<br><br>        Defendants. | No. 3:17-cv-05760 BHS<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER** |

Defendants Kevin Sykes-Bonnett and Syked ECU Tuning, Inc. (collectively "Syked Tuning") respectfully oppose Plaintiff HP Tuners, Inc.'s ("HPT") Renewed Emergency Motion for Temporary Restraining Order (Dkt 62).

## I. INTRODUCTION

HPT's counsel has ***admitted*** that HPT does not believe any of its source code exists in Syked Tuning's software products. Even so, HPT seeks an order from this Court, on three days' notice, that would effectively terminate Syked Tuning's business. Syked Tuning urges the Court to decline such a drastic result.

When HPT first brought this motion ten months ago, it accused Syked Tuning of incorporating HPT's source code into Syked Tuning's software product. See Dkt 62, *passim*. This Court denied that motion because Syked Tuning proved its software had been in existence

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR TRO - 1
No. 3:17-cv-05760 BHS
131191.0001

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

for years prior to HPT's accusations and HPT failed to demonstrate that any HPT source code was used in Syked Tuning's software. HPT has still failed to do so.

Ten months ago when HPT brought its first TRO motion, Syked Tuning offered to allow its software to be compared to HPT's software ***by an independent third party expert***, which would put an end to the question of whether any HPT software existed in Syked Tuning's software. That offer has been ongoing and stands today. HPT has steadfastly ***refused*** that reasonable offer every time it has been discussed. In short, HPT does not care about the truth because it already knows the truth—that no HPT software was used in Syked Tuning's software.

Rather than resolving the bulk of this dispute in an easy, simple, reasonable, and efficient manner, HPT is instead attempting to force Syked Tuning to provide a copy of Syked Tuning's source code directly to HPT so that HPT can improperly scour it for any tips and advantages HPT can use in HPT's own software. In other words, HPT is attempting to do the very thing of which it accuses Syked Tuning, and which it has a long history of doing.

## II.  BACKGROUND AND FACTS RELEVANT TO THIS MOTION

To begin, a brief overview of facts relevant to this motion is provided.

### A.  Brief Background on Mr. Sykes-Bonnett

Mr. Sykes-Bonnett's background was fully discussed in the briefing on HPT's first Motion for a TRO and will not be belabored here. See Dkts 18 (opposition brief), 19 (Sykes-Bonnett declaration), *passim*. Briefly stated, Mr. Sykes-Bonnett has been an automotive enthusiast since at least as early as 2003, when he began helping friends and others tune their automotive vehicles. *Id*. In around 2013 (several years before this dispute arose), Mr. Sykes-Bonnett began development of his own special-purpose software to assist with tuning cars. He had his first working version of that software in 2014, still years before this dispute arose. It was about then that Mr. Sykes-Bonnett founded the entity now known as Syked ECU Tuning, Inc. to perform custom tunings for himself and others. *Id.* The Syked Tuning software has been in

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR TRO - 2
No. 3:17-cv-05760 BHS
131191.0001

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON  98111-9402
206.223.7000 FAX: 206.223.7107

continuous commercial use since 2014 and has been offered to the public for purchase since at least as early as 2015.

**B.  Brief Introduction to the Automotive Tuning Industry**

A very brief introduction to the automotive tuning industry may be helpful to illuminate the mindsets of all those who operate in it.  As noted previously, the automotive tuning industry revolves around the concept of hacking into a car's Engine Control Unit or "ECU" to alter performance parameters.  See Dkt 18 at ¶ 8.  The number of parameters of an ECU that can be altered is mindboggling.  However, to tune any car with an ECU, the parameters for that particular ECU as originally programmed by the automotive manufacturer must be known.

Reprogramming a car's ECU is a sensitive operation and requires an intimate knowledge of the inner workings of the car's "brain" or computer.  Ken Cannata Declaration ("Cannata Decl.") at ¶ 3.  In a very brief explanation, a handheld device or cable is plugged into an ODB-II connector on the car, which provides access to the firmware stored in the ECU.  *Id*.  Then, the handheld device or cable causes a replacement firmware to overwrite any preexisting firmware within the ECU.  *Id*.  This process is called "flashing" a new ROM (firmware) to the ECU.  *Id*.

The existing ECU firmware or ROM, which originally comes from the automotive manufacturer, is highly precise and must cooperate with nearly every other electronic component of the car.  Cannata Decl. at ¶ 4.  Each parameter is stored in the ECU in a very specific memory address and must be read and written from and to the correct address.  For those reasons and others, flashing a new ROM into an ECU has a very high potential to render the ECU useless (referred to as "bricking an ECU") if the replacement firmware is not precisely programmed for the specific target ECU.  *Id*.

Because flashing new ECU firmware requires such careful accuracy, much must be known about the particular ECU being flashed, such as exactly what parameters, values, and codes may be changed and at what memory addresses to avoid bricking the ECU.  Cannata Decl. at ¶ 5.  Generally, technologists and engineers engaged in the automotive tuning industry devote

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR TRO - 3
No. 3:17-cv-05760 BHS
131191.0001

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON  98111-9402
206.223.7000 FAX: 206.223.7107

substantial effort to reverse engineer and otherwise discover the intricacies of each ECU for every model of car that will be tuned. Cannata Decl. at ¶¶ 5, 6, 7, 9. Most often, technologists in the tuning industry attempt to reverse engineer or "hack" the Original Equipment Manufacturer ("OEM") hardware, but they also devote substantial effort to hacking each other's products as well. Cannata Decl. at ¶ 10, 11. In addition, the various competitors within the industry frequently seek to acquire technical documents from others in the industry who have already acquired some desired information. Cannata Decl. at ¶ 12-14.

The very existence of the automotive tuning industry is dependent upon hackers and the skills they bring to the industry. So true is this notion that even the Copyright Office has endorsed hacking in the automotive industry. In short, the Digital Millennium Copyright Act recites several proscriptions against circumventing technological measures intended to prevent hacking works of another. See, e.g., 17 U.S. Code § 1201. However, the Copyright Office has the authority to exempt from that statute certain conduct which would otherwise violate the anti-circumvention provisions of the DMCA. *Id*. The Copyright Office has specifically authorized the circumvention of technical measures designed to prevent the reverse engineering of automotive ECUs. See Federal Register, Vol. 80, No. 208 at 65953 (Oct. 28, 2015)(attached). In short, hacking automotive ECUs is expressly authorized by the Federal government.

**C.  Brief History of HP Tuners**

Mr. Ken Cannata was an original founder of HPT. Cannata Decl. at ¶ 2. In about 2003, he and his co-founders embarked on a project to bring ECU tuning to the masses. *Id*. As noted above, reprogramming a car's ECU is a very delicate operation that requires great accuracy in the tools. *Id*. at ¶ 4. The industry is overrun with hackers all attempting to extract from factory ECUs every bit of technical documentation and know how that can be learned by examining an electronic device. HPT is no different; in fact, HPT was an early adopter of extreme hacking. *Id*. at ¶ 10. Over the course of its entire existence, HPT has been founded on the notion of taking

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR TRO - 4
No. 3:17-cv-05760 BHS
131191.0001

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON  98111-9402
206.223.7000 FAX: 206.223.7107

what is known to others. *Id.* at ¶ 10; see also Dkt 62-2 at 9 (message from HPT CEO Keith Prociuk encouraging others to engage in hacking).

Contrary to its assertions now, HPT is no stranger to Kevin Sykes-Bonnett and what information he can provide. When it suited HPT's business needs, HPT was eager to pay Mr. Sykes-Bonnet thousands of dollars to acquire the confidential technical information that he was able to amass. Cannata Decl. at ¶ 13-17. Indeed, the so-called "key generator" that HPT alleges was wrongfully in the possession of Mr. Sykes-Bonnett was in fact ***given to him*** directly by HPT itself in partial satisfaction for confidential technical documents that Mr. Sykes-Bonnett had provided to HPT. Cannata Decl. at ¶ 17, 18.

The shocking depths to which HPT is willing to go has now been revealed. In documents just produced to Syked Tuning this past Thursday, HPT demonstrated that it is willing to hire an unknown hacker who professes to have access to Syked Tuning's highly confidential information and to the email account of Kevin Sykes-Bonnett, and to pay that hacker for access to Mr. Sykes-Bonnett's confidential materials and email account. HPT is no less than an accessory to corporate espionage and further violations of countless statutes.

### III.  LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy, [which] is never awarded as of right." *Munaf v. Green*, 553 U.S. 674, 689 (2008) (internal citations omitted). In order to qualify for a preliminary injunction, the moving party must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, —, 129 S.Ct. 365, 374 (2008). Courts in the Ninth Circuit analyze these requirements under a "sliding-scale approach." *Alliance for the Wild Rockies v. Cottress*, 632 F.3d 1127, 1131–1135 (9th Cir. 2011). A moving party who demonstrates that he is likely to suffer an irreparable injury and that an injunction is in the public

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR TRO - 5
No. 3:17-cv-05760 BHS
131191.0001

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON  98111-9402
206.223.7000 FAX: 206.223.7107

interest must show that "serious questions going to the merits were raised and that the balance of hardships tips sharply in the [moving party's] favor." *Id.* at 1134–35.

## IV.  DISCUSSION OF THE MERITS

HPT has failed to establish that it is likely to prevail on the merits of each of its several claims, and it has failed to establish that it is likely to suffer irreparable harm in the absence of injunctive relief. For at least those reasons, HPT's motion for a temporary restraining order should be denied.  Instead, HPT and Syked Tuning should be ordered to submit their respective software code to a mutually agreeable independent third party for comparison so that the issue of whether any HPT software has been misappropriated and incorporated into Syked Tuning's products can be easily and finally put to rest.

**A.     Likelihood of Success on the Merits**

HPT has still not demonstrated that it is *likely* to succeed on the merits of any of the allegations in its complaint.  At best, the evidence newly submitted by HPT has raised the issue of whether certain of HPT's confidential information was in the possession of Mr. Sykes-Bonnett.  However, as set forth in the declarations of Kevin Sykes-Bonnett and Ken Cannata, HPT itself provided what little HPT confidential information is even alleged to have been in Mr. Sykes-Bonnett's possession.

1.     HPT has failed to offer any additional evidence that any of HPT's source code was ever used in Syked Tuning's software.  Indeed, HPT's renewed motion merely recycles the same evidence as before -- that certain industry-standard parameter names, which are not the trade secrets of HPT, appear in a beta version of Syked Tuning's software, a beta version that has never been released and has never been sold to the public.  Yet ten months after HPT originally filed this motion, it has absolutely no additional evidence that any of HPT's software is actually in the Syked Tuning software.  As was established before, the Syked Tuning software has been available to the public for over three years. KSB Dec (Dkt 18) at ¶ 13. HPT's allegations to the contrary are simply misplaced. Again, as noted earlier, parameters of competing tuning

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR TRO - 6
No. 3:17-cv-05760 BHS
131191.0001

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON  98111-9402
206.223.7000 FAX: 206.223.7107

products ***must*** have similar names because both products pertain to the same automotive manufacturer's ECU. KSB Dec (Dkt 18) at ¶ 24.

2. HPT's "new evidence" does not even count as admissible evidence and should be ignored. The documents in HPT's possession were purchased from an anonymous source, are unauthenticated, and illegally obtained. HPT has made no argument about how it could possibly authenticate those documents or lay any foundation for their admissibility. In short, inadmissible evidence is no better than no evidence at all.

3. HPT introduces, again, some ill-defined concern that Mr. Sykes-Bonnett may "open source" certain technical documents in his possession. Dkt 62 at 3; see also Dkt 47. HPT has failed to allege any cause of action for "publicly releasing" a party's own confidential information. It is important to note that HPT objects that Mr. Sykes-Bonnett has threatened to release "GM source code" which Mr. Sykes-Bonnett may possess. Dkt 62 at 3. However, HPT has failed to demonstrate how it has any interest in the confidentiality of GM's information. Simply put, HPT has no interest in the confidentiality of GM's information.

4. HPT alleges that Mr. Sykes-Bonnett has used the HPT "key generator," that was provided to him by Ken Cannata when he was an officer of HPT, outside the scope of the permissible use of that program. See Cannata Decl. at ¶ 18. Again, Mr. Sykes-Bonnett's use of that program was sanctioned by HPT through its then-officer as partial compensation for technical documentation that Mr. Sykes-Bonnett had provided to HPT. *Id*. However, there remains a legitimate fact question about whether Mr. Sykes-Bonnett's use of that program did in fact exceed his authorized use. Accordingly, HPT has failed to establish any ***likelihood*** of prevailing on this count.

5. HPT has, for the first time, introduced an attack on Syked Tuning's Eliminator Cable. Dkt 62 at 4. Aside from certain self-interested statements that are untrue, HPT has presented no case at all that HPT could demonstrate that Syked Tuning's Eliminator Cable

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR TRO - 7
No. 3:17-cv-05760 BHS
131191.0001

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

incorporates any proprietary, trade secret information of HPT. Indeed, Syked Tuning expressly denies that it does.

In sum, HPT has made no attempt to demonstrate that it is likely to succeed on any of the other allegations set out in its complaint. Rather, its purported Emergency Motion for a TRO is an ill-advised and premature discovery motion.

**B.     Likelihood of Irreparable Harm**

Perhaps the most compelling showing that HPT's requested relief is improper is the total lack of irreparable harm. In short, we are in exactly the same position today that we were in ***ten months ago***. HPT could not demonstrate any harm whatsoever ten months ago, and it still cannot. The Syked Tuning software and handhelds have been on sale for the last ten months. HPT has done literally nothing to advance this litigation or seek to refine the issues.

Ten months ago, when HPT first filed this motion, Syked Tuning offered for the parties to each submit copies of their respective software to an independent third-party expert for evaluation. HPT refused that reasonable offer. At various times over the last ten months, Syked Tuning has repeatedly renewed that offer. HPT has consistently refused.

Having an independent third party evaluate and compare HPT's software to Syked Tuning's software is the only definitive way to dispose of the question whether any HPT software was used in the Syked Tuning software. Yet HPT refuses to submit to that simple solution. There is only one explanation why HPT would refuse to actually seek an answer to even one dispositive question in this matter: HPT already knows the answer. HPT is fully aware, and its counsel has affirmed as much, that none of HPT's software found its way into Syked Tuning's software. HPT's attempts to muddy the issues and hand wave the ultimate question speak volumes about its true intent. HPT seeks to deny Syked Tuning all sources of income so that Syked Tuning cannot mount a defense to this litigation. Such an improper motive should not be rewarded, and this matter should proceed to an actual decision based on the merits of the claims.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR TRO - 8
No. 3:17-cv-05760 BHS
131191.0001

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON  98111-9402
206.223.7000 FAX: 206.223.7107

HPT has failed to explain how enduring competition amounts to irreparable harm. While it is certain that HPT would prefer not to endure any competition from anyone, that desire falls woefully short of a demonstration of improper harm that may substantiate injunctive relief.

**C.  Balance of Hardships**

A temporary restraining order or preliminary injunction is only appropriate where the "balance of hardships tips sharply in the plaintiff's favor," *Alliance for the Wild Rockies*, 632 F.3d at 1134–35 (9th Cir. 2011). Here, the balance of hardships tips strongly in favor of Syked Tuning.

The incredible relief sought by HPT – that Syked Tuning cease all business activities -- is so drastically overreaching as to be incredible on its face.  Accordingly, denying the relief sought by HPT would result in absolutely no hardship to HPT at all. Conversely, granting HPT its requested relief would effect a drastically unfair result on Syked Tuning. HPT's requested relief would force Syked Tuning to cease its business operations entirely merely to appease HPT's hacker witch hunt.

HPT's requested relief, should the Court grant it, would deal a crippling blow to Syked Tuning and stifle competition while accomplishing nothing of value towards resolving the instant dispute.

In short, neither Mr. Sykes-Bonnett nor anyone else at Syked Tuning is responsible for any hacking that may have occurred (if indeed it did occur) to HPT's software. Syked Tuning should not be punished at all for nothing, and certainly not punished so harshly as to shut down the company.

**D.  Public Interest**

A temporary restraining order or preliminary injunction is only appropriate where granting the motion would be in the public interest. *Alliance for the Wild Rockies*, 632 F.3d at 1134–35 (9th Cir. 2011).  Here, the public interest strongly favors denying HPT's requested relief. Put bluntly, HPT is attempting to stifle competition by pursuing baseless legal claims

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR TRO - 9
No. 3:17-cv-05760 BHS
131191.0001

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON  98111-9402
206.223.7000 FAX: 206.223.7107

against a nascent startup company in the automotive tuner industry. Anti-competitive actions such as these are disfavored as a matter of public policy. See, e.g., *State v. Black,* 100 Wash.2d 793, 803, 676 P.2d 963 (1984). In the absence of any showing by HPT that there is any public policy served by punishing Syked Tuning for nothing, HPT's requested relief should be denied.

### E.   If the Court is inclined to grant relief, it should be very narrowly tailored

Syked Tuning believes that the foregoing demonstrates no injunctive relief is necessary, but should the Court decide that some form of injunctive relief is necessary, it should be narrowly tailored to the actual harm being alleged here and to the evidence that HPT has advanced. To the extent HPT's complaint seeks redress against some form of "hacking" of HPT's software, any injunction should be narrowly tailored to ameliorate any harm that could result from a disclosure of any unauthorized or altered version of HPT's software. Syked Tuning has demonstrated that its own software long predates the existence of the instant dispute, so enjoining the sale of the Syked Tuning software would not only be years too late, but also completely off mark.

Even more compelling, HPT's own counsel admitted to the undersigned counsel while conferring on this motion that HPT no longer believes that any HPT code exists in the Syked Tuning software. In other words, HPT is attempting to prevent the sale of Syked Tuning software for no other reason than to deny Syked Tuning the revenue it so desperately needs to sustain this litigation. The import is transparent. HPT now knows it cannot prevail in this matter on the merits, so it is hoping to drain Syked Tuning of any ability to defend itself.

As a means to resolve this matter in as efficient a manner as possible, Syked Tuning urges the Court to order that both parties submit their respective software to an independent third-party expert for evaluation. Despite HPT's protestations to the contrary, that is the only way the truth can be ascertained in this matter. HPT's attempts at delaying the inevitable reveal its true motive, merely to drag this litigation out indefinitely in the hopes of a victory by attrition. Syked Tuning urges the Court to fashion a relief that is tailored to a speedy resolution of these questions.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR TRO - 10
No. 3:17-cv-05760 BHS
131191.0001

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON  98111-9402
206.223.7000 FAX: 206.223.7107

## V. CONCLUSION

HPT's motion for temporary restraining order should be denied in its entirety. HPT's requested relief is not only undeserving of any relief at all, it is also completely disconnected even from HPT's own allegations made in its complaint.

DATED: August 20, 2017

LANE POWELL PC

By *s/John E. Whitaker*
Gregory F. Wesner, WSBA No. 30241
wesnerg@lanepowell.com
John E. Whitaker, WSBA No. 28868
whitakerj@lanepowell.com
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA  98111-9402
Telephone:  206-223-7000
Facsimile:  206-223-7107

Attorneys for Defendants Kevin Sykes-Bonnett and Syked ECU Tuning Incorporated

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR TRO - 11
No. 3:17-cv-05760 BHS
131191.0001

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON  98111-9402
206.223.7000 FAX: 206.223.7107

# CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I electronically filed the above with the Clerk of the Court using the CM/ECF system. In accordance with their ECF registration agreement and the Court's ruling, the Clerk of the Court will send email notification of such filing to the following persons:

**Attorneys for Plaintiff HP TUNERS, LLC**

Stephen G. Leatham, WSBA No. 15572
Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
Vancouver, WA 98663
Phone: (360) 750-7547
Facsimile: (360) 750-7548
Email: sgl@hpl-law.com

☑ by **CM/ECF**
☐ by **Electronic Mail**
☐ by **Facsimile Transmission**
☐ by **First Class Mail**
☐ by **Hand Delivery**
☐ by **Overnight Delivery**

**Attorneys for Plaintiff HP TUNERS, LLC**

Andrew P. Bleiman (*pro hac vice* admitted)
Marks & Klein
1363 Shermer Road, Suite 318
Northbrook, IL 60062
Phone: (312) 206-5162
Email: andrew@marksklein.com

☑ by **CM/ECF**
☐ by **Electronic Mail**
☐ by **Facsimile Transmission**
☐ by **First Class Mail**
☐ by **Hand Delivery**
☐ by **Overnight Delivery**

Executed on August 20, 2017, at Seattle, Washington.

*s/John Whitaker*
John Whitaker

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
EMERGENCY MOTION FOR TRO - 12
3:17-cv-05760 BHS
131191.0001/7106610.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107