THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company,<br><br>            Plaintiff,<br><br>v.<br><br>KEVIN SYKES-BONNETT, SYKED ECU TUNING INCORPORATED, a Washington corporation, and JOHN MARTINSON<br><br>            Defendants. | Cause No. 3:17-cv-05760 BHS<br><br>**DEFENDANTS' MOTION FOR PROTECTIVE ORDER**<br><br><u>**Noted for Consideration:**</u><br><u>**April 25, 2019**</u> |

Defendants Kevin Sykes-Bonnett and Syked ECU Tuning, Inc. (collectively "Syked Tuning") hereby move for a protective order shielding it from further abusive discovery on the part of Plaintiff, HP Tuners, LLC ("HP Tuners") and ordering HP Tuners to bear the cost of any further discovery it seeks.

Factual support for the statements made herein is provided by the accompanying Declarations of Mike Castrataro and Kevin Sykes-Bonnett, as well as in prior filings identified by Docket No. herein.

### INTRODUCTION

This case is an exercise in overkill on the part of HP Tuners. Defendant Syked Tuning is a tiny business, essentially run by two people with other full time jobs, which over its entire five year existence has had gross sales (not profits) of only $170,000. Syked Tuning's incurred, but not yet paid, legal fees eclipsed that figure long ago. What HP Tuners' legal fees to date have been are anyone's guess. Whatever they are, they have long exceeded what HP Tuners can ever hope to recover from the Defendants here.

MOTION FOR PROTECTIVE ORDER
Cause No. 17-CV-05760-BHS

Page 1

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

HP Tuning's scorched earth discovery strategy has long passed what it reasonable and appropriate in a case this size, and has now taken a very real, and very serious toll on the physical and financial health of Defendant Kevin Sykes-Bonnett and his family. Under well established principles of "proportionality," to the extent HP Tuning believes it needs even more discovery into the deepest corners of the personal lives of the two individual defendants, Mr. Sykes-Bonnett and Mr. Martinson, HP Tuners should assume the burden and cost of doing so.

**FACTUAL BACKGROUND**

A. **Endless Discovery, Rather Than The Resolution Of A Dispute, Appears To Be HP Tuner's Real Goal Here**

More than one-and-one-half years into this case, HP Tuners has yet to specify what its alleged trade-secrets are, and has yet to offer one shred of evidence that the software or "source code" of any Syked Tuning product contains any source code or other proprietary information of HP Tuners.

From the start of this case, Syked Tuning has done its best to provide discovery to HP Tuners. Syked Tuning has answered numerous interrogatories, it has responded to *132 separate document requests served by HP Tuners,* has already produced thousands of pages of records in response to these requests, is continuing to search its records in response to additional demands from HP Tuners, has endured subpoenas issued to third parties, such as telephone companies and PayPal, for personal records relating to the corporate and individual defendants and has made its source code available for inspection by independent experts for well over one year now. Syked Tuning has largely responded and is continuing to respond at great personal expense and effort to the apparently endless requests of HP Tuners for more information.

As this Court is well aware, Mr. Sykes-Bonnett, unlike most litigants, has actively participated in the various telephonic status conferences that have taken place, and has forthrightly stated to the Court what he has done to produce records and what he is reasonably

MOTION FOR PROTECTIVE ORDER
Cause No. 17-CV-05760-BHS

Page 2

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

capable of doing going forward. Mr. Sykes-Bonnett has already established and has stated to the Court that to conduct the various searches demanded by HP Tuners on each and every one of the various files that exists in his personal social media accounts would literally take him three to six years if he devoted his full effort to doing so and abandoned his real occupation. Despite a reduction in the search terms now insisted upon by HP Tuners, it remains a very real and very serious burden on Mr. Sykes-Bonnett to run the requested searches and locate the requested records.

Not surprisingly, no matter what Syked Tuning has produced and continues to produce, HP Tuners immediately claims it needs something else. The transparency of such gamesmanship is now clear. Equally clear is HP Tuners's strategy and intent to drive Syked Tuning out of business.

B.   **This Case Can And Should Have Been Resolved Long Ago.**

Ironically, many of the "disputes" in this case are illusory and have not warranted the needless effort and expense already put into it. Indeed, Mr. Sykes-Bonnett personally, and by his own admission, *is* liable for foolishly selling a limited number of unauthorized "credits" enabling others to make use of HP Tuners equipment without paying the standard HP Tuning license fee. Recognizing his error in this regard, Mr. Sykes-Bonnett has provided HP Tuners with the names of everyone to whom he sold such credits, and is more than willing to resolve that aspect of the case by turning over to HP Tuners all profits he received from so doing, or otherwise providing reasonable compensation to HP Tuners for this admitted breach of HP Tuners's rights. Indeed, HP Tuners has already taken depositions of most if not all these recipients and now knows the full extent of the breach. However, settlement of this issue, which could and should have been achieved long ago, apparently is not HP Tuners's goal. Driving Syked Tuning out of business with endless discovery is.

As to the remaining aspects of HP Tuners claims against Mr. Sykes-Bonnett, the corporate defendant and Mr. Martinson, there remains no evidence that any of HP Tuner's software or proprietary information is used in Syked Tuning's software. More than one year

MOTION FOR PROTECTIVE ORDER
Cause No. 17-CV-05760-BHS
Page 3

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

ago, Syked Tuning offered to make its software available for inspection by third party experts to determine whether it contained any alleged HP Tuners source code. (See Docket No. 66.) Inexplicably, HP Tuners resisted this sensible approach and insisted on scorched earth document discovery instead.

Several months ago, in a further effort to demonstrate to HP Tuner's satisfaction that the Syked Tuning software contained no HP Tuners code, this Court issued an addendum (Docket No. 118) to the Protective Order in place specifying a procedure under which the parties can make their source code available for inspection. Syked Tuning has, since that time, been more than willing to produce its source code for expert review under that procedure. Inexplicably, HP Tuners began concocting reasons for delaying the review. Such reasons included insisting that Syked Tuning, at its own expense, install various "tools" that were never mentioned before and that were nowhere specified or otherwise addressed in the Addendum to the protective order. After Syked Tuning agreed to install these tools, HP Tuners continued delaying actually scheduling the review. Finally, with a deadline looming for its expert report, and in light of Syked Tuning's clear indication that it would not agree to, and would oppose, any further extensions of time in this case, HP Tuner's finally, on April 3, 2019, brought in its experts to review the Syked Tuning source code. That review is continuing as this motion is being written. Syked Tuning fully expects that the result of the review will indicate that no HP Tuners code is used in the Syked Tuning source code and that HP Tuner's claim to the contrary is without factual basis.

Indeed, many of the various forms of relief demanded by HP Tuners in this case, such as that Syked Tuning make no use of HP Tuner's software, etc., are already in place -- Syked Tuning has made no use of such software. (See, Docket No. 18.) As to money damages, HP Tuners has yet to quantify its supposed damages. Indeed, what HP Tuner's goals are in this case, beside endless discovery, further extensions, and continued demands on two men who have jobs to hold down and families to support, remain vague and largely unstated.

MOTION FOR PROTECTIVE ORDER
Cause No. 17-CV-05760-BHS
Page 4

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

Under these circumstances, Syked Tuning respectfully suggests and requests that a court-ordered mediation, with attendance of the principals with decision making authority, would be effective in at least narrowing the issues and quantifying the stakes involved, if not in resolving the matter in its entirety.

C.   **This Case Is Taking A Serious Toll On Defendants**

As this Court is well-aware, Mr. Sykes-Bonnett has appeared and has actively participated in the various telephonic status conferences that have been conducted to date in response to HP Tuner's constant demands for more discovery.

As established by the accompanying declaration of Mr. Mike Castrataro, who supervises Mr. Sykes-Bonnett in his current occupation as a commission-based Sales Representative for Leaf Filter LLC of Fife, Washington, Mr. Sykes-Bonnett typically works six ten to twelve hour days per week as a Sales Representative making sales calls throughout the extended Seattle area.  Mr. Sykes-Bonnett's income, and his ability to support his family, depends on his ability to make sales, which, in turn, depends on his ability to remain focused on prospective customers without other distractions or worries.  As established by Mr. Castrataro's Declaration, the pressures of this lawsuit, brought about in large part by the need for Mr. Sykes-Bonnett to respond to HP Tuner's endless discovery requests in the few hours that remain after Mr. Sykes-Bonnett has already put in a ten to twelve hour day, have adversely affected his effectiveness as a Sales Representative and, consequently, his income.

As previously noted, Syked ECU Tunning LLC is a very small company run by two people, each of whom has another full time job.  The company does not have any staff of support personnel who can track down documents and run searches.  Nor can the company, or the individual defendants, employ others to do these tasks.  Documents responsive to HP Tuner's now one-hundred-thirty-two separate requests must be tracked down principally by Mr. Sykes-Bonnett himself.  Based on Mr. Sykes-Bonnett's experience that it takes him roughly one-half to one hour to run search terms on each of the roughly 12,000 files maintained in his personal social media accounts, means that it will take Mr. Sykes-Bonnett

MOTION FOR PROTECTIVE ORDER
Cause No. 17-CV-05760-BHS

Page 5

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

anywhere from 6000 to 12,000 hours to run each of the searches demanded by HP Tuners. Assuming Mr. Sykes-Bonnett gives up his other employment and devotes a full-time, 2000 hour per year effort to complying with HP Tuners' demands, will still take three to six years to complete. Obviously, such a demand is unreasonable given the size and realities of this case.

**D.   Defendants Have Already Offered To Make Their Records Available For Inspection And Copying By HP Tuners As Permitted By Rule 34 Fed.R.Civ.P.**

Rule 34 Fed.R.Civ.P. clearly provides that a respondent to a document request may discharge its duties by making responsive documents available as they are kept in the ordinary course of business.

On January 31, 2019, undersigned counsel for Syked Tuning sent HP Tuner's counsel an email reading, in part:

> As to the social media and other records you have requested, as we mentioned, these are very voluminous, and for Mr. Sykes to run the search terms on them would require literally years of work for one person. *We will provide the raw records to you on an "Highly Confidential" basis as provided by the existing protective order so that you or outside help you may hire can run the search terms at your expense. Once the relevant documents have been identified, we can then consider removing the "Highly Confidential designation as provided by paragraph 6 of the Protective Order.* We believe this procedure is workable and consistent with the "proportionality" standard of Rule 26(b)(1) and case law interpreting it. (Emphasis supplied.)

Inexplicably, but not surprisingly, HP Tuners on February 13, 2019, rejected this offer -- an offer that would have provided immediate access to *all* the social media and other records HP Tuners claims is essential to its case -- saying, "With regard to your proposal to produce all of the 'social media' communications under an AEO designation, this is not agreeable to HPT." Not only did this response ignore Syked Tuning's offer that, "Once the relevant documents

MOTION FOR PROTECTIVE ORDER
Cause No. 17-CV-05760-BHS                    Page 6

Mann Law Group
107 Spring St.
Seattle, WA  98101
Phone:  206.436.8500

have been identified, we can then consider removing the 'Highly Confidential' designation as provided by paragraph 6 of the Protective Order," it transparently signals that imposing undue burdens on Syked Tuning, and in particular Mr. Sykes-Bonnett, is more important to HP Tuners than actually getting the documents it purportedly needs immediately.

Contrary to HP Tuner's claims, making documents available to opposing counsel on an "Attorneys Eyes Only" basis pending either entry of a protective order or a detailed review for confidentiality, is long standing practice among experienced counsel and serves the beneficial purpose of facilitating prompt and efficient production. The social media records demanded by HP Tuners contain, in part, communications with Syked Tuning's current and prospective customers, and further contain, in part, pricing information, product compatibilities, customer demands and interests and other competitive information that Court's have long recognized as precisely the sort of information that should not be shared among direct competitors and is properly the subject of a "Highly Confidential" or "Attorneys' Eyes Only" designation.

HP Tuners claim that the protective order (Docket No. 39) in place in this case limits "Highly Confidential" information to only "proprietary technical information in the nature of hardware design documents, source code; proprietary software; license key generators, and computer passwords," only reflects a serious misreading of the Order. As specified by the order itself:

> 'Highly Confidential' material shall include *any document, material, or information* otherwise meeting the definition of 'confidential,' the disclosure of which to a party or non-party the disclosing party *reasonably believes* would likely result in competitive, commercial, financial or other harm to the disclosing party, or its clients or potential clients.

(Docket No. 39, ¶2.2, emphasis supplied.) Clearly, names, email addresses and other identifying information for existing and potential customers meets this standard.

MOTION FOR PROTECTIVE ORDER
Cause No. 17-CV-05760-BHS
Page 7
Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

Furthermore, the listing of "proprietary technical information in the nature of hardware design documents, source code; proprietary software; license key generators, and computer passwords" is prefaced, in the Order, by the words, "'Highly Confidential' material *may include without limitation*..." clearly indicating that the recitation that follows is illustrative, rather than restrictive. *Id.*

HP Tuner's claim that "Highly Confidential" material consists *only* of "hardware design documents, source code; proprietary software; license key generators, and computer passwords" does violence to both the English language and the actual words of the Protective Order. More importantly, it provides no rational basis for precluding Syked Tuning from exercising its option to produce documents on an initial AEO basis as they are kept in the ordinary course of business, as provided by Rule 34, Fed.R.Civ.P. Again, HP Tuners is transparently seeking to impose undue and impossible burdens on Syked Tuning, rather than actually get the information it claims it so desperately needs.

E.  **HP Tuners Continues To Complain Regardless Of What Syked Tuning Actually Produces**

Following the last telephonic status conference on March 22, 2019, Mr. Sykes-Bonnett later that day uploaded thousands of communications he had with at least ten of the individuals identified by HP Tuner's as being relevant. In so doing, Mr. Sykes-Bonnett provided records with respect to eight individuals beyond the two individuals HP Tuners had earlier identified as being the most important and the ones HP Tuners needed first. Not surprisingly, the following morning (a Saturday) counsel for HP Tuners emailed undersigned counsel complaining about the production and accusing Sykes Tuning of having "gaps" in the record. Again, providing HP Tuners with access to the records as they are kept in the ordinary course of business, and with the agreement that they will be initially treated as "Highly Confidential" until otherwise agreed, will do much to simplify the document production and, more importantly, avoid continued accusations that Sykes Tuning is hiding documents or otherwise playing games. Paradoxically, Sykes Tuning is trying its best to

MOTION FOR PROTECTIVE ORDER
Cause No. 17-CV-05760-BHS
Page 8
Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

1  provide the requested information as efficiently as possible, and it is HP Tuners that, despite
2  its dramatic demands, generates excuses *not* to receive the information it claims is critical to
3  its case.

## ARGUMENT

### A.  LEGAL STANDARD

As amended, Fed. R. Civ. P. 26(b)(1) now clearly requires that discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the discovery outweighs its likely benefit." Going beyond just the general rule, this District further recognizes that, "To further the application of the proportionality standard in discovery," discovery requests must be "reasonably targeted, clear, and as specific as possible." Local Rule CR 26(f). And it has long been recognized that, "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1).

"Whether discovery is proportional to the needs of the case hinges on 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Hancock v. Aetna Life Insurance Company*, 321 F.R.D. 383, (W.D. Wash. 2017). "The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Roberts v. Clark Cty. Sch. Dist.,* 312 F.R.D. 594, 603 (D. Nev. 2016). "It is well-established that '[t]he burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists." *Gager v. United States,* 149 F.3d 918, 922 (9th Cir. 1998) (quoting *Conkle v. Jeong,* 73 F.3d 909, 914 (9th Cir. 1995)). "The Court has the power to limit or prevent discovery when it is unduly burdensome, i.e., when

MOTION FOR PROTECTIVE ORDER
Cause No. 17-CV-05760-BHS
Page 9

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

the burden imposed by the discovery outweighs its likely benefit considering the parties' resources and the amount in controversy." *Choquette v. Warner,* 3:15-CV-05838-BHS-JRC (W.D. Wash. 2017).

The courts in this district and elsewhere have long recognized that commercial information, such as customer lists, pricing information, etc., is precisely the type of information that should not be shared with direct competitors and, therefor, appropriate for designation as "Attorney's Eyes Only" under a two-tiered protective order. *See, Cabell v. Zorro Productions, Inc.,* 294 F.R.D. 604, 610 (W. D. Wash. 2013) (holding that two-tiered protective order is appropriate to keep direct competitor from seeing "commercial information" and "sensitive business documents.")

Under the facts of this case as outlined above, more than good cause exists for this Court to protect Messrs. Sykes-Bonnett and Martinson from the annoyance, oppression, undue burden and expense they have already suffered and will clearly suffer if HP Tuners continues engaging in endless discovery rather than actually preparing its case.

**B.     The Discovery Demands At Issue**

Illustrative of the wide-open, far ranging document requests served by HP Tuners are the following:

(97) All bank statements, transaction detail reports and records from any checking, savings, investment or other accounts at any financial institution for the period January 1, 2016 to the present for any and all bank accounts maintained by Defendant Syked ECU Tuning, Inc.

(98) All bank statements, transaction detail reports and records from any checking, savings, investment or other accounts at any financial institution for the period January 1, 2016 to the present for any and all bank accounts maintained by Defendant Kevin Sykes-Bonnett.

(99) All bank statements, transaction detail reports and records from any checking, savings, investment or other accounts at any financial institution for the period January 1, 2016 to the present for any and all bank accounts maintained by Defendant John Martinson.

MOTION FOR PROTECTIVE ORDER
Cause No. 17-CV-05760-BHS
Page 10

Mann Law Group
107 Spring St.
Seattle, WA  98101
Phone:  206.436.8500

(100) All monthly statements, bills, call logs and call history reports for any telephone number used by Defendant Syked ECU Tuning, Inc. from January 1, 2016 to the present.

(101) All monthly statements, bills, call logs and call history reports for any telephone number used by Defendant Kevin Sykes-Bonnett from January 1, 2016 to the present.

(102) All monthly statements, bills, call logs and call history reports for any telephone number used by Defendant John Martinson from January 1, 2016 to the present.

(103) All federal and state tax returns, including all schedules thereto, for the years 2015, 2016 and 2017 of Syked ECU Tuning, Inc.

(104) All federal and state tax returns, including all schedules thereto, for the years 2015, 2016 and 2017 of Kevin Sykes-Bonnett.

(105) All federal and state tax returns, including all schedules thereto, for the years 2015, 2016 and 2017 of John Martinson.

(106) All W-2s and W-9s issued to third parties by Defendant Syked ECU Tuning, Inc. for the years 2015, 2016 and 2017.

(107) All W-2s and W-9s issued to third parties by Defendant Kevin Sykes-Bonnett for the years 2015, 2016 and 2017.

(108) All W-2s and W-9s issued to third parties by Defendant John Martinson for the years 2015, 2016 and 2017.

(109) All correspondence and communications between by Defendants and any accountant engaged by any Defendant from January 1, 2016 to the present.

(110) All balance sheets, profit and loss statements, financial statements and statements of cash flows of Syked ECU Tuning, Inc. from January 1, 2016 to the present.

(111) All customer invoices, purchase orders, billing statements or other documents which evidence, refer or relate to any software, hardware, credits, products, services or goods sold or provided by Syked ECU Tuning, Inc. from January 1, 2016 to the present.

MOTION FOR PROTECTIVE ORDER
Cause No. 17-CV-05760-BHS
Page 11

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

In addition to the above, HP Tuners has made further demands as follows:

PayPal records for the account software@sykedecutuning.com

PayPal records for the account info@sykedecutuning.com

PayPal records for the account sykedecutuning@yahoo.com

Documents and communications with nigel@brutalfab.com

Compiled version of the software on various dates from 2016-2018

Documents relating to travel to Reno from 1/1/2015 to present

Documents reflecting payments to Mike Klingbeil, Jason Sachs, Jamie Cano, David Sakowski

Documents reflecting IP addresses for residence of Sykes-Bonnett and Martinson and the business of Syked ECU Tuning

Documents and Communications responsive to search terms list

Documents and communications, including emails and text messages, with Ken Cannata, Bobbie Cannata and Christopher Breton-Jean

Documents and communications, including emails and text messages, with Matt Kaiser, Tim Milliken, and Michael McKnight

C. **The Demands Are Overly Broad, Unnecessarily Duplicative And Grossly Disproportionate Under Applicable Standards**

The discovery requests served by HP Tuners to date go far beyond what is reasonably related to the supposed issues in this case, namely whether any HP Tuners software has been used in the Syked Tuning products.  For example, HP Tuners seeks, " All bank statements, transaction detail reports and records from any checking, savings, investment or other accounts at any financial institution" for each of the individual defendants regardless of whether any of those records have anything to do with Syked Tuning.  Similarly, HP Tuners seeks all their personal tax records as well, again, regardless of whether they have anything to do with Syked Tuning.

MOTION FOR PROTECTIVE ORDER
Cause No. 17-CV-05760-BHS

Page 12

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

Likewise, HP Tuners seeks "All monthly statements, bills, call logs and call history reports for any telephone number used by" the individual Defendants regardless of whether those numbers or calls relate to any Syked Tuning matters. As these include private telephone numbers used by the Defendants' family members and children, demanding such records affects the privacy of individuals wholly unconnected with any of the issues in this case.

As a further example of the abusive nature of HP Tuner's broad requests, HP Tuners has *already* subpoenaed PayPal and the telephone providers and has *already* obtained far better records from them than the Defendants here could ever provide. Forcing Defendants to provide duplicate copies (to the extent they can) of records already in HP Tuner's possession makes no sense whatsoever, other than to needlessly spin the Defendants' wheels, waste their time and waste their resources.

As to the texts and emails, this, as previously noted, requires that Mr. Sykes-Bonnett spend between 30 minutes and one hour on each of the approximately 12,000 files that exist in his personal social media records. Again, Defendants have offered to make these records available on an initial "Highly Confidential" basis to enable HP Tuners to do the searching itself. Again, HP Tuners has declined this reasonable offer, insisting, instead, that Mssrs. Sykes-Bonnett and Martinson waste their time, energy and money doing the searches themselves and at the cost of their families.

Under the factors to be considered in assessing proportionality, and in particular those relating to (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' resources, and (4) whether the burden or expense of the proposed discovery outweighs its likely benefit, the factors tip decidedly in Defendants favor. HP Tuners has yet to make a monetary demand or identify a damages figure. Given that Syked Tuning's entire gross revenues over its entire existence never exceeded $170,000, damages, even if payable, would be eclipsed by the cost of discovery. Defendants' resources are greatly limited, and HP Tuners has never identified how, for example, seeking records of telephone calls made by Mr. Sykes-Bonnett's wife and/or daughter somehow justify the cost and effort

MOTION FOR PROTECTIVE ORDER
Cause No. 17-CV-05760-BHS
Page 13

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

of tracking down such records. This case has been and remains an unending fishing expedition that should have been concluded long ago. To the extent HP Tuners wishes to continue fishing, it should do so at its own effort and expense.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that any further discovery into the documents and/or electronic records of the Defendants be done at the expense of HP Tuners. Defendants further request that the Court order prompt, court-supervised settlement discussions between the principles of the parties as continued disputes over entirely avoidable discovery issues, and the fees and costs associated therewith, have long since greatly exceeded any possible amount in controversy in this matter.

Dated April 5, 2019.                    Respectfully submitted,

*/s/ Philip P. Mann*
Philip P. Mann, WSBA No: 28860
**Mann Law Group PLLC**
107 Spring St.
Seattle, Washington 98104
Phone (206) 436-0900
Fax (866) 341-5140
phil@mannlawgroup.com

Attorneys for Defendants

MOTION FOR PROTECTIVE ORDER
Cause No. 17-CV-05760-BHS
Page 14

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

## **CERTIFICATE OF SERVICE**

I hereby certify on the date indicated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties who have appeared in this matter.

DATED: April 5, 2019                    /s/ *Philip P. Mann*

MOTION FOR PROTECTIVE ORDER
Cause No. 17-CV-05760-BHS

Page 15

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500