THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN SYKES-BONNETT, SYKED ECU TUNING INCORPORATED, a Washington corporation, and JOHN MARTINSON<br><br>Defendants. | Cause No. 3:17-cv-05760 BHS<br><br>**DEFENDANTS' RESPONSE TO PETITION FOR ATTORNEYS' FEES** |

Defendants Kevin Sykes-Bonnett, John Martinson, and Syked ECU Tuning, Inc. (collectively "Syked Tuning") hereby respond to Plaintiff HP Tuners, LLC's ("HPT") Petition for Attorneys' Fees. Dkt 158.

## I. INTRODUCTION

The Court has concluded that defendants and their counsel misled the Court with statements to the effect that Syked Tuning owned the intellectual property embodied within certain documents stolen from the email account of Kevin Sykes-Bonnett. The reality is that those statements were not made for the purpose of misleading the Court in any way, and in fact were the result of hasty briefing necessitated by the circumstances of this matter. Syked Tuning learned, abruptly, that an anonymous hacker had gained access to Mr. Sykes-Bonnett's email account and had sold that access to HPT. The danger of not knowing what documents were potentially misappropriated by HPT forced Syked Tuning and its counsel to seek this Court's intervention is safeguarding whatever of Syked Tuning's confidential

Response To Petition For Fees
Cause No. 17-CV-05760-BHS

Page 1

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

information may have been stolen. In short, the unfortunate circumstances of the instant briefing are of HPT's own making. Such unusual circumstances make a nominal sanctions award sufficient to deter any repeat of the offending conduct. Accordingly, Syked Tuning submits that only a nominal sanction is sufficient to accomplish the purposes of Rule 11.

## II.  REASONABLENESS OF HPT'S FEES

As noted below, the rates charged by HPT's attorneys are close to reasonable, but slightly excessive for this District. In addition, the hours expended by HPT's counsel are excessive under the circumstances.

**A.     The Rates Charged By HPT are Unreasonable**

HPT has submitted a declaration purporting to substantiate an hourly rate of $350. However, HPT's petition fails to substantiate that rate with any actual evidence other than the declaration of Mr. Leatham, an attorney for HPT, which merely makes the conclusory and unsubstantiated statement that $350 is a reasonable rate.  Dkt 160.

This District has recently issued fee-award orders for attorneys similarly situated with Mr. Bleiman and his associate.  In *LHF Productions, Inc. v. Doe 1, et al*., Chief Judge Martinez stated as follows:

> In the Ninth Circuit, the determination of a reasonable hourly rate "is not made by reference to rates actually charged the prevailing party." *Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986). Instead, the reasonable hourly rate is determined with reference to the prevailing rates charged by attorneys of comparable skill and experience in the relevant community. See *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 979 (9th Cir. 2008). Courts may also consider "rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney" as "satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps  Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990)

*LHF Productions, Inc. v. Doe 1, et al*.,Case No. 2:16-cv-551 (W.D. Wa Feb. 15, 2017 Order)

Response To Petition For Fees
Cause No. 17-CV-05760-BHS

Page 2

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

In that case, Chief Judge Martinez adopted a rate of $300 per hour for a Seattle intellectual property lawyer having roughly 22 years experience, and $250 per hour for an associate in a copyright dispute. *Id*. at 13. Accordingly, Syked Tuning submits that in this District, hourly rates of $300 for Mr. Bleiman and $250 for his associate are more reasonable and commensurate with their levels of experience and the complexities of the issues.

**B.     Very Little Of The Time HPT Billed To Oppose Syked Tuning's TRO Motion Should Be Considered**

The Court indicated that it would only consider the pro rata amount of time dedicated by HPT to responding to Syked Tunings' TRO motion pertaining to the documents pertinent to this petition. However, Syked Tuning submits that none of the hours purportedly dedicated by HPT counsel to respond to Syked Tuning's TRO Motion should be relevant. At the TRO hearing on both parties' TRO motions, HPT's counsel made no significant effort to oppose the modest requests made by Syked Tuning. See Dkt 88, *passim*. Rather, HPT simply conceded that the relief requested by Syked Tuning was proper. Accordingly, none of the time expended by HPT's counsel is reasonable. Instead of expending time opposing what are on their face reasonable requests, HPT's counsel should have simply acquiesced in those requests rather than oppose them on the papers just to concede them in open court. Accordingly, Syked Tuning submits that none of HPT's reported billable hours should be considered now.

### III. THE STATEMENTS MADE BY DEFENDANTS AND COUNSEL WERE NOT EGREGIOUS

The Court instructed the parties to address the "egregiousness of the conduct" at issue. Syked Tuning submits that the conduct complained of by HPT is far from egregious, and should be subject to only a nominal sanction paid to the Court.

**A.     Background Facts**

The salient background facts pertaining to the instant petition are these. On August 16, 2018, HPT filed an emergency motion for a Temporary Restraining Order ("TRO") and submitted to the Court a number of documents in support of that motion (the "HPT TRO").

Response To Petition For Fees
Cause No. 17-CV-05760-BHS

Page 3

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

Dkt. 62. The same day, HPT served upon Syked Tuning's counsel more documents without additional explanation. Upon reviewing those documents the following morning, Syked Tuning's counsel discovered that HPT apparently had obtained access to Mr. Sykes-Bonnett's email account and numerous documents that appeared to be contained therein. One of the documents that had been provided by HPT was a hardware schematic labeled "confidential" and "Syked ECU Tuning."

In its own motion, HPT made numerous references to the effect that the hardware schematic pertained to Syked Tuning's Eliminator Cable. See Dkt 62 at 4 ("Syked ECU Tuning, Inc.'s vehicle communication cable known as the 'Syked Eliminator Cable'"), at 13 ("Syked's recently released Eliminator Cable"; "the recently released Syked Eliminator Cable"; "Defendants are actively marketing products for sale (e.g. Syked's software, the Syked's Eliminator Cable, tuning credits, etc.)"; at 14 ("Defendants have created a duplicate MPVI protocol for their new Syked Eliminator Cable which is being sold right now.").

In view of the harsh reality that someone had hacked into Syked Tuning's computer systems and apparently gained unfettered access at least to an email account belonging to Mr. Sykes-Bonnett, and without knowing the extent of HPT's penetration into Syked Tuning's computing systems, Syked Tuning was forced to file its own TRO (the "Syked TRO") for the purpose of seeking to safeguard whatever information HPT had illegally acquired. See Dkt 69. Indeed, in that motion, Syked Tuning pointed to the hardware schematic and stated it "is currently unknown how many other documents are in HPT's possession." Dkt 69 at 6, line 13.

In support of the Syked TRO, Syked Tuning submitted a declaration by its counsel. Only one sentence in that declaration has been challenged in connection with the instant petition, and it is a follows:

> The [schematic] is a highly confidential hardware schematic detailing parts of Syked Tunings hardware cable product.
>
> Dkt 71 at 3, line 24.

Response To Petition For Fees
Cause No. 17-CV-05760-BHS
Page 4

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

Again, the period between the revelation that HPT had gained illegal access to Mr. Sykes-Bonnett's private email account and the filing of the Syked TRO was only a few days. The purpose of the Syked TRO was merely to try and protect whatever information HPT had misappropriated. At the time of filing, Syked Tuning simply had no idea what documents or information HPT had received. Perhaps there was information that was proprietary to Ken Cannata, perhaps there was information proprietary to Syked Tuning or either of the named defendants. The issue was exactly as Syked Tuning's then counsel stated on the record at the joint TRO hearing:

> ***We have no idea what they've got***. We know there was apparently random access, unfettered access to somebody's email. We are not sure if it is Mr. Sykes-Bonnett's email. There is a lot of stuff in there that is clearly confidential. We don't know what they have. They haven't given us some sort of clear accounting under oath that we can attest to, that we know what they've got.
>
> Dkt 88 at p. 37, line 21 to p. 38, line 3 (emphasis added).

Notwithstanding HPT's hyperbole and rhetoric, there was essentially no discussion at the TRO hearing pertaining to any specific document produced by HPT from the anonymous hacker. Rather, the focus was on the fact that Syked Tuning simply had no idea what was in HPT's possession, coupled with the Court's concern about whether "a party is obtaining information from such an unauthorized, illegal source." Dkt 88 at 44, line 14.

Syked Tuning and its counsel were, at the time of filing the Syked TRO, singularly dedicated to attempting to protect whatever known and unknown information had been improperly (and likely criminally) misappropriated by HPT. There was never any intent or thought that the Court was being misled pertaining to the ownership of any particular files or documents; only that Syked Tuning's confidential information was potentially at risk and the security of Syked Tuning's computing systems had been compromised.

Response To Petition For Fees
Cause No. 17-CV-05760-BHS

Page 5

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

**B.     An Appropriate Sanction In This Matter Should Be Nominal To Deter Any Repeat of The Offending Conduct**

"[T]he main purpose of Rule 11 is to deter improper behavior, not to compensate the victims of it or punish the offender." 5A Wright, et al., Federal Practice & Procedure § 1336.3 (3d ed. 2004). The text of Rule 11 provides that "[a] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(2).

As demonstrated above, the statements made by Syked Tuning and its counsel were in no way made for the purpose of swaying the Court's decision on the subject matter of the TRO. Rather, they were the product of rushed briefing for the purpose of minimizing whatever unknown harm was befalling Syked Tuning. The Court's analysis would have been nearly identical (if not identical) regardless of whether Syked Tuning had noted it was Ken Cannata and not Syked Tuning who owned the underlying intellectual property rights in the stolen documents.

More specifically, had Syked Tuning said that the specific hardware schematic at issue was, in fact, owned by Ken Cannata (the husband of one of Syked Tuning's owners) rather than Syked Tuning itself, there would have been no change in the outcome. The facts of record would still substantiate that Syked Tuning had standing to assert the confidential designation of the documents for at least the reasons that (1) the confidential documents had been entrusted to Mr. Sykes-Bonnett for safekeeping, (2) the documents were in fact being safeguarded and treated as confidential by Syked Tuning, and (3) Syked Tuning's relationship with its owner and supplier of the Syked Tuning Eliminator Cable was at risk. See, e.g., *Burton Mech. Contractors v. Foreman*, 148 F.R.D. 230, 234 (N.D.Ind.1992) (party may have standing to assert confidentiality designation on behalf of third party); See also *Krumwiede v. Brighton Assoc*., LLC, 05 CV 3003, 2006 WL 2644952, at *2–3 (N.D.Ill. Sept. 12, 2006) (similar).

Response To Petition For Fees
Cause No. 17-CV-05760-BHS

Page 6

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

No statement presented by either Syked Tuning or its counsel in connection with the Syked TRO was made in bad faith, or with any intent to mislead the Court, or indeed even with any idea that the statements were untrue or misleading at the time. Rather, the statements were made for the purpose of trying to minimize whatever damage was being caused by HPT's potentially criminal conduct.

Based on the forgoing, a sanction sufficient to deter any similar conduct would be minimal. See *LaVigna V. WABC Television, Inc*., 159 F.R.D. 432 (S.D. NY. 1995)(sanction award of $250 plus additional CLE requirements sufficient to satisfy purpose of deterrence). The likelihood that the odd series of events leading to the current motion would repeat is exceedingly small, and the parties understand the importance of full and accurate disclosure to the Court. HPT has suffered no discernible prejudice from any of the events underpinning the instant briefing.

C.  The Appropriate Sanction Should Be Paid To The Court And Not To HPT

"[T]he Advisory Committee Note accompanying the amendment states that monetary penalties 'should ordinarily be paid into the court' except 'under unusual circumstances' when they should be given to the opposing party." 5A Wright & Miller, Fed. Prac. & Proc. Civ. § 1336.3 (4th ed.). If any monetary sanctions should *ordinarily* be paid into the court, then any sanctions awarded in this matter should undoubtedly be paid into the Court and *not* HPT.

In a nutshell, HPT either rewarded an anonymous hacker for gaining "access to the email account of" Kevin Sykes-Bonnett. or encouraged him to do so. Dkt 85 at 2. It is unclear which. Through that illegal access to a private email account, HPT received documents which are undeniably confidential (and at least one even marked so) regardless of who or which entity owns them. About such conduct, this Court noted "on the face of it, it is clear that it could conceivably implicate criminal violations here." Dkt 88, at 36, lines 17-20. Indeed it could.  See, e.g., *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012)(employee of company sentenced to prison for improper access to email account); 18 U.S. Code § 2701(b) (exceeding authorization to access stored communications punishable by up to 10 years in prison).

Response To Petition For Fees
Cause No. 17-CV-05760-BHS

Page 7

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

To reward HPT for either sanctioning or instigating illegal access to a private email account by an anonymous hacker, in exchange for about $100,000 worth of untraceable currency, shocks the conscience. Rewarding such conduct with even a minimal compensation would operate as a disservice to justice. Juxtaposing HPT's own wrongdoing (which is potentially criminal) with the wrongdoing of incorrectly identifying the true owner of certain intellectual property rights for the purpose of attempting to protect those rights, simply compels the conclusion that any sanction should be paid to the Court, which is the only aggrieved party in this entire transaction.

## IV. THE ABILITY OF THE DEFENDANTS AND COUNSEL TO SATISFY ANY SANCTIONS AWARD

The Court ordered that the defendants address their ability to satisfy any sanction award entered in the instant action. By way of reply, Syked Tuning states as follows:

As noted in the Declaration of Kevin Sykes-Bonnett (Dkt 161-2), Mr. Bonnett's ability to satisfy a sanctions award of any significant amount would substantially impact his ability to provide support for his family. Mr. Sykes-Bonnett is a man of modest means who lives paycheck to paycheck. Any extra income that Mr. Sykes-Bonnett receives is dedicated to the defense of this lawsuit. Accordingly, any sanctions award against Mr. Sykes-Bonnett sufficient to deter the offending conduct should be nominal.

With regard to Syked Tuning's former counsel, Mr. Whitaker is an individual of modest means who is without sufficient resources to satisfy a significant sanction award without it having a significant negative impact on his ability to adequately provide for his family. Moreover, the inability of at least Mr. Sykes-Bonnett to satisfy any sanctions award of any significant amount would force Mr. Whitaker to potentially bear the entire burden of the entire sanction, should the Court enter an award jointly and severally. Such a result would, in fact, disproportionately punish counsel for Defendants for attempting to protect their interests in the face of what appears to be a potentially criminal invasion of privacy. In contrast, Mr. Whitaker is the least likely of any of the affected individuals to repeat any offending conduct.

Response To Petition For Fees
Cause No. 17-CV-05760-BHS

Page 8

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

For those reasons, the Court should consider entering a sanctions award that is not joint and several so that each individual is forced to incur the intended deterrent effect.

## V.  CONCLUSION

For all the foregoing reasons, modest sanctions will be sufficient to deter any repeat of the conduct underlying the instant petition. For that reason, any sanction awarded should be nominal at worst. Similarly, any sanction award should be paid to the Court rather than HPT to prevent rewarding what this Court indicated may well be criminal behavior.

Dated April 12, 2019.    Respectfully submitted,

*/s/ Philip P. Mann*
Philip P. Mann, WSBA No: 28860
**Mann Law Group PLLC**
107 Spring St.
Seattle, Washington 98104
Phone (206) 436-0900
Fax (866) 341-5140
phil@mannlawgroup.com

Attorneys for Defendants

Response To Petition For Fees
Cause No. 17-CV-05760-BHS
Page 9
Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

## CERTIFICATE OF SERVICE

I hereby certify on the date indicated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties who have appeared in this matter.

DATED: April 12, 2019                    /s/ *Philip P. Mann*

Response To Petition For Fees
Cause No. 17-CV-05760-BHS

Page 10

Mann Law Group
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500