THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN SYKES-BONNETT, SYKED ECU TUNING INCORPORATED, a Washington corporation, and JOHN MARTINSON<br><br>Defendants. | Cause No. 3:17-cv-05760 BHS<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**<br><br><u>**Noted for Consideration:**</u><br><u>**April 19, 2019**</u><br><br>**Oral Argument Requested** |

Defendants Kevin Sykes-Bonnett, John Martinson and Syked ECU Tuning, Inc. (collectively "Syked Tuning") hereby respond to Plaintiff, HP Tuners, LLC ("HP Tuners") Motion for Santions for Spoliation of Evidence, Dkt. 156, as follows:

**A.     HP Tuners Nowhere Identifies The Particular Sanction It Seeks**

Nowhere in its motion does HP Tuners identify with any degree of particularity what particular sanction it seeks other than a general request for, "a default judgment against Defendants or such other and further relief as this Court deems necessary and appropriate."

On March 26, four days after the subject motion was filed, undersigned counsel for Defendants sent an email to Plaintiffs' counsel, Andrew Bleiman, reading, in part, as follows:

Andrew,

I am in receipt of your Motion for Sanctions for Spoliation of Evidence. Needless to say, I agree it was not a good idea for Mr. Sykes-Bonnet to destroy the flash drive, and, as you are aware, this took place long before my involvement in the case.

Nevertheless, the facts are what they are and we have to deal with them.

To facilitate and perhaps even obviate my response to your motion, **I am hopeful you can tell me what sort of sanctions you are seeking** as they are not clear from either the motion itself or the proposed order. In particular, **Mr. Sykes-Bonnet has already admitted that the flash drive was given to him by Mr. Cannatta, and that it contained HP Tuners information.** If you want a stipulation in that regard (or with respect to other information you believe was contained on the drive) please let me know and we might be able to provide it. **Again, Mr. Sykes-Bonnet does not contest who gave him the drive or what it contained.**

(Emphasis supplied.)

The purpose in sending this email was to determine what sanctions were being sought so that a stipulation or other agreement could be put in place and thereby avoid both unnecessary briefing on this issue and needless court involvement in the matter. In particular, Defendants were (and remain) prepared to stipulate that the flash drive was given to Mr. Sykes-Bonnett by Mr. Cannata and that it contained the HP Tuners information HP Tuners claims. In fact, this has never been contested by Mr. Sykes-Bonnett, and he openly testified to these facts nearly seven months ago at his September 24, 2018 deposition.

On March 27, 2019, HP Tuners' lead counsel responded to this email as follows:

Phil:

I will review this, discuss with our client and advise. Thank you.

In the nearly three intervening weeks since then, and despite more than *thirty* emails received from HP Tuners' counsel in the interim, HP Tuners has not provided a substantive answer as to what particular "sanction" it is seeking here, thereby necessitating this response by Defendants.

**B.     HP Tuners Has Not Specified What "Damage" "Prejudice" Or Other Harm It Has Suffered By Reason Of The "Spoliation"**

The law in the Ninth Circuit is clear. The court's prejudice inquiry "looks to whether the [despoiling party's] actions impaired [the other party's] ability to go to trial or threatened

RESPONSE TO MOTION FOR SANCTIONS
FOR SPOLIATION OF EVIDENCE  Cause No.        Page 2
17-CV-05760-BHS

Mann Law Group PLLC
107 Spring St.
Seattle, WA  98101
Phone:  206.436.8500

to interfere with the rightful decision of the case." *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 959 (9th Cir. 2006).

The basic facts here are largely undisputed.  Mr. Sykes-Bonnett admits that he received a flash drive from HP Tuners' former co-owner and founder, Mr. Kenneth Cannata. Mr Sykes-Bonnett admits that the flash drive contained the information of HP Tuners that HP Tuners claims.  Mr. Sykes-Bonnett also admits that, in March, 2018, following a night of excessive drinking and in emotional distress and despair over what this lawsuit has been doing to both him and his family, he destroyed the flash drive in response to viewing it as the ultimate source of all the personal trouble that followed after receiving it.[1]

Mr. Sykes-Bonnet has further confirmed that he generated HP Tuning credits and sold these credits to others, whom he has identified.  HP Tuners has already taken third-party depositions of these recipients who have confirmed the extent to which they have received and used these credits.  Given that the contents and source of the flash drive are undisputed, HP Tuners fails to identify, except in the vaguest and most indefinite of terms, what information has somehow been "lost" by the destruction of the drive and how, if at all, HP Tuners has been "irreparably prejudiced" or otherwise harmed as a result.

In its motion, HP Tuners makes dramatic claims that, upon inspection, are illusory. For example, throughout its motion, HP Tuners makes the following dramatic, but unspecific, claims:

Mr. Sykes-Bonnett engaged in the, "destruction of highly relevant evidence" (Motion, p. 1),

Such action resulted in, "irreparab[le] prejudic[e to] Plaintiff in this matter" (Motion p. 2),

---

[1]     Again, this all took place long before undersigned counsel had even heard of this case, much less appeared in it.

Mann Law Group PLLC
107 Spring St.
Seattle, WA  98101
Phone:  206.436.8500

"the destruction of the flash drive potentially impacts [other] proceedings as well" (Motion p. 3),

"because of the relevant, incriminating information available on the flash drive, Sykes-Bonnett astonishingly destroyed the flash drive with a hammer" (Motion p. 4),

"[Sykes-Bonnett]  destroyed relevant evidence despite having been aware of its relevance to the case" (Motion p.  5),

"[Sykes-Bonnett] knowingly destroyed highly relevant evidence" (Motion p. 7),

"the destruction [of the flash drive] was not the result of negligence but intentional and designed to make certain that the evidence would have no use or value whatsoever" (Motion p. 9),

"Defendant's actions were...inten[ded] to preclude Plaintiff and this Court from acquiring devastating evidence which would subject him to severe monetary damages" (Motion p. 9),

"The Destroyed Evidence Was Highly Relevant to Plaintiff's Claims In this and Other Proceedings"  (Motion p. 9),

"Here, the relevance of the flash drive is evident." (Motion p. 10),

"He [Mr. Sykes-Bonnett] intentionally destroyed what could potentially have been Plaintiff's most crucial piece of evidence in this case and in connection with other proceedings. (Motion p. 11),

Mann Law Group PLLC
107 Spring St.
Seattle, WA  98101
Phone:  206.436.8500

"In doing so, he committed an act that is highly prejudicial to Plaintiff; indeed, he destroyed a piece of evidence that could have been dispositive to the outcome of the case" (Motion p. 11).

Despite these statements and claims, it is only on page 10 of its motion that HP Tuners makes even a modest effort to identify what, if any, "irreparable harm" it has suffered as a result of Mr. Sykes-Bonnett's admittedly unwise action.  Here, at page 10, HP Tuners claims that the destruction of the flash drive, "directly impedes Plaintiff's ability to analyze the contents therein" and that:

> Had Plaintiff been able to acquire the flash drive properly through discovery, it could have obtained a wide variety of information directly relevant to its case, including, inter alia, the specific files and information on the flash drive, what proprietary information Defendants obtained, what files were accessed, what files were downloaded, the amount of credits that were generated and issued, and, among other electronic data, metadata and other relevant and important information.

This it the *entirety* of HP Tuners' identification of what "prejudice" it has suffered or what highly critical information has supposedly been lost.  In reality, no information has been lost and HP Tuners has suffered no irreparable harm.

Again, Mr. Sykes-Bonnett does not contest (a) his receipt of the flash drive, (b) who provided it to him, or (c) what it contains.  Furthermore, Mr. Sykes-Bonnett has *already admitted* to improperly generating HP Tuners credits and providing them to others.  Mr. Sykes-Bonnett has *already disclosed* "the amount of credits that were generated and issued." Mr. Sykes-Bonnett has already disclosed, " to whom those credits were issued."   HP Tuners has *already taken* the depositions of the recipients of these credits, and Mr. Sykes-Bonnett has *already provided* an accounting of all monies he has received as a result.  Significantly, *none* of this information was or even would have been included on a flash drive that contained HP Tuners information, and not Mr. Sykes-Bonnett's.  Under these circumstances, HP Tuners has

Mann Law Group PLLC
107 Spring St.
Seattle, WA  98101
Phone: 206.436.8500

1    not identified with any degree of specificity how its ability to go to trial has been impaired, or

2    how absence of the orginal flash drive threatens to interfere with the rightful decision of the

3    case, as required under the applicable law of this circuit.

4    **C.    No Evidence Has Been Irretrievably Lost**

5          Despite its dramatic claims, HP Tuners provides no basis for its claim that the flash

6    drive somehow contained, or even might have contained "the amount of credits that were

7    generated and issued, and to whom those credits were issued, among other electronic data,

8    metadata and other relevant and important information."  Such information not only would

9    not be contained on a flash drive, Mr. Sykes-Bonnett has *already provided* his records relating

10   to such matters.  HP Tuners is complaining about the destruction of a flash drive that did not

11   contain information, while ignoring that the "other relevant and important information" that

12   might (but was not) contained thereon has already been produced.

13         Most importantly, HP Tuners has not shown, and cannot show, that the destruction of

14   the flash drive was other than a foolish and misguided act of an admittedly intoxicated young

15   man[2] suffering severe emotional distress as a result of this lawsuit and who took his

16   frustrations out on an inanimate object.  Had Mr. Sykes-Bonnett actually formed a cool,

17   rational plan to destroy evidence in order to alter the outcome of this case, would he so readily

18   have admitted to possesing the flash drive in the first place?  Would he have so readily

19   admitted to viewing its contents and seeing HP Tuners' material contained thereon?  Would

20   he have so readily admitted to destroying the flash drive?  Beyond the admitted destruction of

21   the flash drive, HP Tuners has nothing to support its hyperbolic claims that Mr. Sykes-

22   Bonnett intentionally set out to destroy "highly relevant" and "critical" evidence contained

23   only on the flash drive and nowhere else.  Indeed, Mr. Sykes-Bonnett's frank admission to his

24   foolish act, and his frank admission to creating unauthorized HP Tuners' credits belie any

25

26         2       As developed in prior deposition testimony, Mr. Sykes-Bonnett never even graduated from
      high school, much less The Harvard Business School. He is not familiar with business litigation, he has had prior
27    run-ins with the law as a youth, and he is hardly a sophisticated and experienced businessman who is well-
      acquainted with lawyers, civil litigation, and the rules pertaining to "spoilation of evidence," etc.

28

Mann Law Group PLLC
107 Spring St.
Seattle, WA  98101
Phone:  206.436.8500

claim that this was anything more than the misguided act of an intoxicated man facing extreme pressures, materially affecting the well-being of not only himself, but his wife and minor daughter as well.

### D.      This Issue Is A Red Herring

Significantly, the flash drive that is the center of HP Tuners' is of minor relevance to this action.  To the extent Defendants can understand it, the gist of HP Tuners' complaint in this action consists of two components.

*First,* HP Tuners claims that Mr. Sykes-Bonnett generated unauthorized "credits" to be used with HP Tuners tuning cables and that he sold these to others.  Again, Mr. Sykes-Bonnet does not deny this and has, in fact, identified all recipients (approximately seven in number) to whom he has provided such credits.  His monetary receipts in this regard are minimal (e.g., approproximately $4000) and already dwarfed by attorneys fees expended in this matter.  The flash drive at issue here has little, if any, relevance given Mr. Sykes-Bonnett's admissions as to what it contained and his admissions regarding his generating HP Tuners credits.  Importantly, Hp Tuners has not identified *what information it contends* was on the flash drive that Mr. Sykes-Bonnett would now dispute.

*Second,* HP Tuners contends that after receiving HP Tuners' information via the flash drive, Defendants then copied that information over into their Syked-ECU Tuning software. That accusation Defendants vigorously dispute.  In point of fact, Defendants, between April 3 and April 5, 2019, made their source-code available for inspection by computer forensic experts hired by HP Tuners.  Whether any improper "copying" or other abuse of HP Tuners information took place will be the subject of that review, not what was on the flash drive. Given that HP Tuners' experts have been given full access to the Syked-ECU Tuning source code, the current non-existence of the flash drive has absolutely no relevance to, or bearing on, whether the HP Tuners code was copied into Defendants' software.

Again, HP Tuners nowhere explains how the physical existence of the flash drive has any bearing on any of the material issues in this case, given that unauthorized generation of

HP Tuners' credits are not in dispute, and given that the extent, to any, that HP Tuners' software appears in the source code of Syked-ECU Tuning is now in the hands of HP Tuners' experts. To these issues, the flash drive is simply no longer relevant.

**E.      A Default Judgment Is Inappropriate Here**

HP Tuners makes a vague request that this court "impos[e] sanctions in the form of a default judgment against Defendants" without specifying what form that judgment should take.  Putting aside this important ambiguity, the law is clear that such action is a drastic remedy that should not be imposed lightly.  "The risk of prejudice to the party seeking sanctions and the availability of less drastic sanctions are the decisive factors in the Ninth Circuit's test to determine whether case dispositive sanctions are justified." *Compass Bank v. Evangelism,* 104 F.Supp.3d 1040, (2015).  "Dismissal is a 'harsh sanction,' to be imposed only in particularly egregious situations where 'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings.'" *Hynix Semiconductor Inc. v. Rambus Inc.,* 897 F.Supp.2d 939, 984 (2012) *citing Micron Technology, Inc. v. Rambus Inc.,* 645 F.3d 1311,1328 (Fed.Cir.2011).  Before granting dismissal as a sanction, the court should consider: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Apple Inc. v. Samsung Elec. Co., Ltd.,* 888 F.Supp.2d 976, 992 (N.D. Cal. 2012).

The facts here do not warrant a default judgment against the Defendants for three principal reasons.

*First,* and as noted in detail in sections **B, C** and **D** above, HP Tuners has not suffered any identifiable, actual or otherwise real harm or prejudice from the admittedly improper destruction of the flash drive.  Again, the contents of the flash drive, where it came from and Mr. Sykes-Bonnett's access to the flash drive are not, and have never been, disputed.  Indeed, it was Mr. Sykes-Bonnett's truthful testimony nearly seven months ago that brought to light his destruction of the flash drive.  HP Tuners simply cannot identify with any degree of

specificity or credibility what, supposedly, was on the flash drive that can not be obtained elsewhere or through a reasonable stipulation on the part of Mr. Sykes-Bonnett.

*Second,* there are other defendants, namely Syked-ECU Tuning and Mr. John Martinson, named in this action. There is absolutely no evidence whatsoever that Mr. Martinson in any way, shape or form participated in the destruction of the flash drive, knew that the flash drive would be destroyed, or otherwise condoned the destruction of the drive. Similarly, there is no evidence whatsoever that Mr. Sykes-Bonnett was acting as a corporate officer or otherwise in an official capacity when he destroyed the drive. Imposing the severe sanction of a default judgment on Mr. Martinson and/or Syked-ECU Tuning without culpability on their part is inappropriate and excessively harsh.

*Finally,* HP Tuners' vague request for a default judgment is highly untimely. HP Tuners knew of the destruction of the flash drive at least as early as September 24, 2018, when Mr. Sykes-Bonnet testified that he had destroyed the device. Rather than move for a default judgment at that time, HP Tuners instead waited one-half year before filing the instant motion. In the meantime, HP Tuners engaged in scorched-earth discovery that, (1) continues to this day, (2) is highly disproportionate to the amount at stake in this case and (3) appears to be a transparent attempt by HP Tuners to drive a competitor out of business through never ending litigation. Why HP Tuners could not have moved for default judgment at the time Mr. Sykes-Bonnet testified regarding the flash drive remains unexplained. However, a desire to achieve a swift, speed and inexpensive resolution of this case could not have been the goal. Had this been the goal, a motion to that effect long before now would have been the logical and reasonable choice.

Nor, given Mr. Sykes-Bonnett's truthful answers at his deposition, can HP Tuners credibly claim it incurred attorneys' fees as a result of Mr. Sykes-Bonnett's actions. Again, had HP Tuners filed its motion promptly after learning of the destruction of the flash drive and moved for a default judgment then rather than six months later, its savings in attorneys' fees would, potentially, have been greater. HP Tuners has nowhere identified how it incurred

RESPONSE TO MOTION FOR SANCTIONS
FOR SPOLIATION OF EVIDENCE  Cause No.      Page 9
17-CV-05760-BHS

Mann Law Group PLLC
107 Spring St.
Seattle, WA  98101
Phone:  206.436.8500

1  any unnecessary or needless attorneys fees as a result of Mr. Sykes-Bonnett's admitted

2  actions, actions that were admitted to more than one-half year ago.

3      Given the above, a belated request that this court grant an as-of-yet poorly defined

4  "default judgment" against the Defendants here does not rise to the strict level needed to

5  impose such a terminating remedy under Ninth Circuit law.  And as to less drastic remedies,

6  such as binding conclusions as to who gave the flash drive to Mr. Sykes-Bonnett, that it was

7  provided by Mr. Cannata, that it contained HP Tuners' information, etc., Mr. Sykes-Bonnett

8  has already conceded and agreed to such sanctions.  Indeed, he did so before even being

9  forced to prepare and file this easily avoided and unneeded response.

10                          **CONCLUSION**

11      This is an unnecessary and needless motion.  Mr. Sykes-Bonnett has never denied his

12  rash and ill-considered action and has not disputed what is on the flash drive or what it

13  contained.  Nearly three weeks ago, he attempted to determine precisely what "sanction" HP

14  Tuners was seeking here.  Those attempts went unheeded.

15      Mr. Sykes-Bonnett opposes HP Tuners' request for a vaguely defined "default"

16  judgment.  As to remaining sanctions, which HP Tuners has yet to identify, these may not, in

17  fact, be in dispute.  At the very least before making a final decision in this regard, HP Tuners

18  should specify with some degree of particularity just what, beyond blowing off steam, it is

19  seeking here.

20      Dated April 15, 2019.                  Respectfully submitted,

21
                                          */s/ Philip P. Mann*
22                                        Philip P. Mann, WSBA No: 28860
                                          **Mann Law Group PLLC**
23                                        107 Spring St.
                                          Seattle, Washington  98104
24                                        Phone (206) 436-0900
                                          Fax (866) 341-5140
25                                        phil@mannlawgroup.com
26
                                          Attorneys for Defendants
27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on the date indicated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties who have appeared in this matter.

DATED:  April 15, 2019                          <u>/s/ *Philip P. Mann*      </u>

Mann Law Group PLLC
107 Spring St.
Seattle, WA  98101
Phone:  206.436.8500