HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>KEVIN SYKES-BONNETT and SYKED ECU TUNING INCORPORATED, a Washington corporation, and JOHN MARTINSON,<br><br>Defendants. | CASE NO. 3:17-cv-05760-BHS<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**NOTING DATE: SEPTEMBER 6, 2019**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiff HP TUNERS, LLC, a Nevada limited liability company ("HPT"), for its response in Opposition to Defendants' Motion for Partial Summary Judgment[1] (Dkt. 182) states as follows and submits the accompanying Declaration of Keith Prociuk ("Prociuk Decl.") and the

[1] It should be noted that Defendants' Motion for Partial Summary Judgment violates Rule 56 and LR 56.1 by virtue of their failure to include a statement of material facts which is mandated by the rule. In addition, Defendants' motion fails to specify the counts on which partial summary judgment is being sought, which is improper. While not expressly stated, it appears as if partial summary judgment is only being sought in connection with Count II, Count III and Count IV of the First Amended Complaint. For the reasons set forth herein, partial summary judgment is not appropriate as to Count II, Count III or Count IV. However, partial summary judgment should be also denied as to the other counts of the First Amended Complaint as there is no reference whatsoever to the remaining counts in the motion and the motion is not directed as to those other counts.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

Declaration of Andrew P. Bleiman, Esq. ("Bleiman Decl.") which are being filed contemporaneously herewith.

**INTRODUCTION**

Throughout the course of these proceedings, Defendants' approach to this litigation has been deception and misrepresentation. Defendants' motion for partial summary judgment is more of the same. It is comprised almost entirely of conclusory statements, self-serving in nature and void of any factual or evidentiary support. Defendants misrepresent the nature of the evidence which has been adduced to date, mischaracterize Plaintiff's expert's opinions regarding Defendants' trade secret misappropriation and make vague, false and unsupported generalizations in support of their baseless request for partial summary judgment.

Contrary to Defendants' contentions, HPT has very clearly asserted and demonstrated material facts since the outset of this action that HPT's source code, among other confidential and proprietary information, constitutes trade secret information of HPT. HPT's source code and its other confidential and proprietary intellectual property (such as its key generator and MPVI communication protocol documents) are not publicly known or available, are protected from disclosure by HPT and constitute trade secret information of HPT. In connection with HPT's claims sounding in trade secret misappropriation, Defendants have admitted to the receipt and possession of HPT's source code, key generator and MPVI communication protocol documents. Likewise, Defendants have admitted to the dissemination of HPT's source code to a third party – which action alone gives rise to liability under Count II for violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836 et seq., Count III for misappropriation of trade secrets arising under the Washington Uniform Trade Secrets Act, RCW 19.108 and Count IV for

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 et. seq. However, Defendants' misconduct and misappropriation goes well beyond this.

In fact, apart from Defendants' admitted misconduct relating to the possession and dissemination of HPT's trade secret information, Defendants' characterizations of HPT's expert, Dr. Ernesto Staroswiecki, Ph. D., P.E., and his opinions (or alleged lack thereof) is disingenuous. Dr. Staroswiecki performed an analysis of discovery information and of Defendants' source code and rendered various opinions including but not limited to that:

A. Some of HPT's intellectual property is present in Defendants' source code.

B. Defendants provided application keys to third parties and shared source code with third parties that is identical to that present in HPT's software products.

C. Some of the source code present on different versions of the Defendants' software products is extremely similar or identical to source code from HPT's software product.

D. Defendants' software tools were able to handle HPT's hardware, which would require Defendants to use HPT's communication protocols.

E. Having access to HPT's source code could have provided Defendants with, among other things, proven working strategies, a performance baseline, suggestions on how to address problems, access to algorithm or vehicle manufacturer data, etc., that could have save Defendants a significant amount of research and development time and resources that would have been required to achieve a product in its current form.

Defendants' misconduct in this regard further establishes liability as to all the various claims asserted – and, at the very least, raises factual questions which preclude partial summary judgment as to Counts II, III and IV in this case.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

Defendants' motion is not well founded in law or fact and should be denied in its entirety.

**LR 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**[2]

1. At substantial expense, hard work and ingenuity over the course of many years and thousands of man hours, HPT has developed complete, cost effective tuning and data acquisition solutions for automobile enthusiasts and professional shops. (*See* Prociuk Decl.).

2. Over the years, HPT has carefully safeguarded its proprietary products, source code and confidential and proprietary information in order to protect its trade secrets, specifications and software. (*See* Prociuk Decl.).

3. HPT is a niche business, which provides complete, cost effective automotive tuning and data acquisition solutions for enthusiasts and professional shops. (*See* Prociuk Decl.).

4. HPT's business includes but is not limited to computer hardware and software designed for use in custom and/or pre-programmed engine and transmission tuning and calibration applications for automobiles, trucks and other types of vehicles (including but not limited to ATVs, snowmobiles and watercraft) (the "HP Tuners Business"). (*See* Prociuk Decl.).

5. HPT has expended significant time, money and resources to develop the HP Tuners Business, and HPT has created methods of business, strategies, programs and technologies which did not exist in the industry prior to HPT's development of the HP Tuners Business. (*See* Prociuk Decl.).

---

[2] As noted above, Defendants improperly failed to include a LR 56.1 Statement of Facts in violation of the rule. The undisputed facts detailed herein by HPT wholly undermine Defendants' motion for partial summary judgment and, instead, unequivocally demonstrate Defendants' liability for the claims asserted in Counts II, III and IV.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

6. Over the years, HPT has invested a great deal of time and money in developing its proprietary products and source code, and in building and growing the HP Tuners Business. (*See* Prociuk Decl.).

7. HPT is constantly working to develop its products, source code and offerings, and has devoted substantial time, money and resources to protect its confidential and proprietary information, and to avoid efforts by third parties to pirate HPT's products and offerings. (*See* Prociuk Decl.).

8. HPT's confidential and proprietary software, source code, license key generator and offerings have been developed and extensively refined by HPT at a substantial cost and effort and constitute confidential information and valuable trade secrets of HPT (collectively, the "Confidential Information"). (*See* Prociuk Decl.).

9. HPT derives economic value from the fact that its Confidential Information is not known outside of HPT's business and is not available through any public records and information sources. HPT's Confidential Information cannot be independently developed by its competitors without great effort and expense. (*See* Prociuk Decl.).

10. Recognizing the economic value that it derives from its Confidential Information, as well as the potential value of this information to its competitors, HPT requires that its Confidential Information be kept strictly confidential by its employees and restricts access to this information. HPT has taken substantial steps and security measures to protect the confidentiality of its Confidential Information, including but not limited to the following:

a) HPT protects access to its Confidential Information through computer passwords;

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

      b) HPT protects to its Confidential Information through hard drive encryption on all employee's computers;

c) HPT protects access to its Confidential Information through sophisticated firewalls;

d) HPT protects distribution of Confidential Information through non-compete and non-disclosure agreements;

e) HPT limits the number of employees having access to its Confidential Information;

f) Employees are given access to HPT's Confidential Information on a "need to know" basis;

g) HPT does not give access to its Confidential Information to non-employees;

h) HPT employees are forbidden from copying, transferring or otherwise duplicating any of HPT's Confidential Information; and

i) HPT requires each employee to return to HPT all Confidential Information when the employee leaves HPT's employ.

(*See* Prociuk Decl.).

11. Furthermore, HPT undertook reasonable measures to maintain the secrecy of its proprietary products, source code, software and offerings, including but not limited to entering into licensing agreements with protective clauses and installing security measures to prevent others from obtaining access and pirating HPT's confidential and proprietary products, source code, software and offerings. (*See* Prociuk Decl.).

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

12. HPT owned and possessed confidential and proprietary documents and data containing trade secrets, including but not limited to source code, the HPT proprietary key generator and MPVI communication protocol documents. (*See* Prociuk Decl.).

13. HPT's confidential and proprietary source code, proprietary key generator and MPVI communication protocol documents constitute information which has never been accessible to the public and HPT takes significant measures to protect this secrecy of this information. (*See* Prociuk Decl.).

14. Without authorization by HPT, Ken Cannata, a former owner of HPT, provided Defendants with copies of and access to confidential and proprietary information of HPT, including but not limited to its confidential and proprietary source code, HPT's proprietary key generator and MPVI communication protocol documents. (*See* Prociuk Decl.).

15. Cannata provided Kevin Sykes-Bonnett with HPT's source code files, proprietary key generator and MPVI communication protocol documents. (See Deposition of Kevin Sykes-Bonnett dated May 16, 2019[3] ("Sykes Deposition 5-16-19"), pp. 346-48, 356-57, which is attached as Exhibit 1 to the Bleiman Decl.).

16. Sykes-Bonnett admitted to using HPT's source code in connection with the development of Defendants' software. (Sykes Deposition 5-16-19, pp. 385-87).

17. Moreover, in connection with the development of the Defendants' software, Sykes-Bonnett disseminated HPT's source code to a third party named Christopher Breton-Jean via Facebook messenger. (Sykes Deposition 5-16-19, pp. 409-10).

---

[3] After Defendants' deceptive conduct and misstatements were exposed in this case, Sykes-Bonnett appeared for a second deposition in this matter to correct and clarify his testimony in this matter, and during which he admitted to the misconduct alleged by HPT in the First Amended Complaint. Sykes-Bonnett's initial deposition has been filed of record in this cause under seal at Dkt. 147, Exhibit A.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

18. Sykes-Bonnett admitted to disassembling HPT's software and stealing HPT's parameters names for inclusion in Defendants' software. (Sykes Deposition 5-16-19, p. 456).

19. In addition, Sykes-Bonnett admitted that he possessed a USB drive containing HPT's proprietary and confidential information. (Sykes Deposition 5-16-19, pp. 351-59; Dkt. 67).

20. Furthermore, Sykes-Bonnett possessed HPT's proprietary key generator tool for use with HPT's interfaces and, in fact, generated HPT application keys for third parties for profit.[4] (Sykes Deposition 5-16-19, pp. 391-94; *see also* Dkt. 67).

21. Dr. Ernesto Staroswiecki, Ph. D., P.E. analyzed various discovery information and Defendants' source code in connection with this matter. Dr. Staroswiecki prepared a report in connection with this matter. (See Expert Report of Dr. Ernesto Staroswiecki, Ph.D., P.E., ("Expert Report"), which is attached as Exhibit 2 to the Bleiman Decl.).

22. In connection with the Expert Report, Dr. Staroswiecki's opinions included but were not limited to the following:

A. Some of HPT's intellectual property is present in Defendants' source code.

B. Defendants provided application keys to third parties and shared source code with third parties that is identical to that present in HPT's software products.

C. Some of the source code present on different versions of the Defendants' software products is extremely similar or identical to source code from HPT's software product.

D. Defendants' software tools were able to handle HPT's hardware, which would require Defendants to use HPT's communication protocols.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

E. Having access to HPT's source code could have provided Defendants with, among other things, proven working strategies, a performance baseline, suggestions on how to address problems, access to algorithm or vehicle manufacturer data, etc., that could have save Defendants a significant amount of research and development time and resources that would have been required to achieve a product in its current form.[5]

F. As detailed in the Expert Report, Defendants' actions hampered Dr. Staroswiecki's work. For example, an additional section of Defendants' source code referred to as "server" code was never identified prior to the inspection. During Dr. Staroswiecki's inspection he discovered references to a remote server in the source code, which was finally produced upon his request during the second half of the second day of the three-day inspection.[6]

23. Defendants did not take Dr. Staroswiecki's deposition in this case. Nor did Defendants disclose an expert to rebut, refute or respond to any of Dr. Staroswiecki's opinions and conclusions in this case.

24. Defendants' characterizations of Dr. Staroswiecki's opinions, findings and conclusions are baseless and without merit. (*See* Declaration of Dr. Ernesto Staroswiecki, Ph.D., P.E., which is attached as Exhibit 3 to the Bleiman Decl.).

---

[4] *See* prior Declarations submitted by Kevin Sykes-Bonnett (Dkt. 67) and Ken Cannata (Dkt. 68) wherein both admit to Defendants' possession of a key generation tool for use with HPT's interface and use of that key generator to issue application keys.

[5] One specific example of this is referenced in paragraph 16 of this Statement of Undisputed Facts above.

[6] Much of the actual "work" takes place in the online services source code (e.g. server code). (*See* Prociuk Decl.). Work is maintained in online services to protect it from distribution. (*See* Prociuk Decl.). That work is secured because it is what is of value. (*See* Prociuk Decl.). The server code is where Defendants likely have most of HPT's copied IP. (*See* Prociuk Decl.). Dr. Staroswiecki was not given access to the server code until after halfway through his inspection, which impacted the breadth and depth of his inspection. (*See* Expert Report).

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

**ARGUMENT**

**THE MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD BE DENIED.**

**A. SUMMARY JUDGMENT STANDARD.**

Partial summary judgment in Defendant's favor is wholly inappropriate in this case, where both the facts and the law support HPT's claims. Summary judgment is only available where, viewing the evidence in the light most favorable to the nonmoving party, "there are no genuine issues of material fact." Fed. R. Civ. P. 56(a).

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Standard Insurance Company v. Deaver*, 2012 U.S. Dist. LEXIS 119073, ¶3-5 (W.D. Wash 2012) *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253, 106 S. Ct. 2505 (U.S. 1986); *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

Facts are considered material if they "might affect the outcome of the suit under the governing law," so material facts are more than irrelevant or unnecessary under the substantive law. *Certain Underwriters at Lloyd's v. Mills Brothers International*, 2019 U.S. Dist. LEXIS 129598, ¶7 (W.D. Wash 2019) *citing Anderson*, 477 U.S. at 248. A factual dispute is "genuine" if the evidence could lead a reasonable jury to return a verdict for the nonmovant. However, a nonmovant need not produce evidence that would be admissible at trial to avoid summary judgment. *Certain Underwriters*, 2019 U.S. Dist. LEXIS 129598, at ¶8 *citing* Celotex, 477 U.S. at 324. A nonmovant's submission of "competing evidence that relates to" a central issue in the

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

case is demonstrative of a genuine dispute of material fact. *See Certain Underwriters*, 2019 U.S. Dist. LEXIS 129598, at ¶12. The Court must view the facts and reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255.

Defendants argue that summary judgment in their favor is somehow appropriate here because HPT has failed to produce sufficient evidence to prove its claims. Nothing could be further from the truth and Defendants' contentions are frivolous based on the record in this case. Defendants completely mischaracterize the significance and substance of the evidence HPT has obtained through the discovery process. HPT has obtained voluminous amounts of evidence directly supporting its claims (and which, at least, constitute competing evidence that relates to the central issues in the case demonstrative of genuine disputes of material fact). (*See* Statement of Undisputed Facts above which are incorporated herein by this reference; *see* Sykes-Bonnett 5-16-19 Deposition, *generally*).

However, whether Plaintiff has obtained sufficient evidence to prove its claims is not determinative in a summary judgment analysis. Rather, the question is whether there are genuine disputes regarding the material facts of each claim. *See, e.g., Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir.1993) ("Summary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues."). Furthermore, "in the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that 'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Boland, Inc. v. Rolf C. Hagen (USA) Corp*., 685 F. Supp. 1094, 1100 (E.D. Ca. 2010), *quoting First Nat'l Bank*, 391 U.S. 253, 289-90 (1968); see also *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association*, 809 F. 2d 626, 631

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

(9th Cir. 1987) ("If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true.")

Defendants' reference to *Soremekun v. Thrifty Payless, Inc.*, 509 F. 3d 978 (9th Cir. 2007) for the proposition that summary judgment may be granted where "the nonmoving party lacks evidence to support its case" is completely distinguishable. In that case, the available evidence negated essential elements of each claim. Here, the Defendants do not even mention the underlying elements of Plaintiff's claims or the particularly claims even being challenged, let alone present any evidence negating any element of any claim. Effectively, Defendants seemingly look for the court to grant partial summary judgment based exclusively on Defendants' self-serving, baseless and unsubstantiated statements and vague, supported mischaracterizations. Defendants' motion for partial summary judgment should be denied.

**B. HPT'S SOURCE CODE, KEY GENERATOR AND MPVI COMMUNICATION PROTOCOL DOCUMENTS CONSTITUTE "TRADE SECRET" INFORMATION OF HPT, WHICH TRADE SECRETS HAVE BEEN MISAPPROPRIATED BY DEFENDANTS.**

Under the Defend Trade Secrets Act, a "trade secret' is information that (1) derives independent economic value, actual or potential, from not being generally known to, or readily ascertainable by other people who can obtain economic value from its disclosure or use and (2) is subject to reasonable efforts to maintain its secrecy. (See 18 U.S.C. § 1839(3)).

Similarly, under the Washington Uniform Trade Secrets Act, a "trade secret" is defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) Derives independent economic value, actual or potential, from not being

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Wash. Rev. Code § 19.108.010(4).

Likewise, the Illinois Trade Secrets Act defines a trade secret as: "A "trade secret" is defined as: "information, including but not limited to technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d).

From the outset, it is critical to point out that Defendants' motion wholly ignores controlling precedent of this Court which expressly provides that ***the determination of whether specific information is a trade secret is a factual question, not a question of law, and is therefore not properly determined at the summary judgment stage***. *Veritas Operating Corp. v. Microsoft Corp. v. Veritas Operating Corp.*, Case No. C06-0703-JCC, 2008 U.S. Dist. LEXIS 8166, at *11 (W.D. Wash. Feb. 4, 2008)(emphasis added). Defendants' motion fails for this reason alone.

Here, Defendants erroneously contend that Plaintiff has not sufficiently identified the trade secrets which Defendants have misappropriated. Nevertheless, contrary to Defendants' contentions, HPT has specifically identified numerous trade secrets which Defendants have unlawfully used, misappropriated, distributed and relied upon in connection with the development of Defendants' software products. HPT's source code, key generator and MPVI communication protocol documents constitute information which derives independent economic

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

value from not being generally known to, or readily ascertainable by other people and is information which HPT takes considerable measures to protect. (*See* Statement of Undisputed Material Facts set forth herein). Defendants have admitted to using, possessing and disseminating HPT's source code, key generator and MPVI communication protocol documents which gives rise to liability for the claims asserted in Counts II, III and IV. (*See* Statement of Undisputed Material Facts set forth herein).

In fact, in the Motion for Summary Judgment filed by Defendant John Martinson (Dkt. 183), Martinson asserts that "Mr. Sykes-Bonnett, himself, has confirmed at deposition that the admittedly improper use and distribution of unauthorized HP Tuners' credits, and other misuse of HP Tuners' property was in no way conducted with either the knowledge of, or participation by, Mr. Martinson."[7] (Dkt. 183, at p. 4). Consequently, Defendants are affirmatively admitting that Sykes-Bonnett engaged in misconduct in connection with HPT's intellectual property in one pleading but, yet, are inexplicably seeking partial summary judgment in another pleading. Defendants' motion for partial summary judgment has no merit whatsoever and should be denied.

Defendants' motion also ignores factually similar and controlling precedent from this District. In making a determination on summary judgment regarding claims alleged under the Washington Trade Secrets Act, the Western District of Washington has refused to grant summary judgment in defendant's favor where, as here, the plaintiff alleged defendant misappropriated trade secrets contained in source code plaintiff had allegedly developed. *See*

[7] As demonstrated in HPT's Response in Opposition to Martinson's Motion for Summary Judgment, Martinson was actively involved, knowledgeable and participated in the misconduct giving rise to liability for the claims asserted and Martinson's Motion for Summary Judgment is not well founded in law or fact and should also be denied.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

*Veritas*, 2008 U.S. Dist. LEXIS 8166, at *10 *citing Ed Nowogroski Ins., Inc. v. Rucker*, 971 P.2d 936, 941 (Wash. 1999).

Similarly, the Western District also refused to grant summary judgment in *Ultimate Timing, LLC v. Simms*, where the allegedly misappropriated trade secrets included software code. 715 F. Supp. 2d 1195, 1206 (W.D. Wash. 2010). In both *Veritas* and *Ultimate Timing*, there was no dispute that software code could potentially constitute a trade secret; rather, the disputes centered on whether the code at issue was generally known or ascertainable.

Defendants' motion for partial summary is replete with factual misstatements, misrepresentations and inaccuracies. For example, Section B of the Argument section of Defendants' Motion for Partial Summary Judgment asserts a series of blatantly meritless contentions concerning Dr. Staroswiecki's opinions and findings. As detailed in the Expert Report, Dr. Staroswiecki's specifically concluded that some of the source code present on different versions of the Defendants' software products is extremely similar or identical to source code from HPT's software product. (*See* Expert Report attached as Exhibit 2 to the Bleiman Decl.). Consequently, Defendants' claim that Dr. Staroswiecki failed to find copying or other misappropriation of HPT's trade secret information is without merit and should be rejected. Moreover, Defendants did not disclose an expert to rebut, refute or respond to any of Dr. Staroswiecki's opinions and conclusions in this case.

Dr. Staroswiecki also concluded that Defendants provided application keys to third parties, that Defendants shared source code with third parties that is identical to that present in HPT's software products and that Defendants' software tools were able to handle HPT's hardware, which would require Defendants' to use HPT's communication protocols. All of these



Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

opinions give rise to liability under Counts II, III and IV and, at least, present genuinely disputed issues as to material facts and thus preclude summary judgment.

In addition to misstating Dr. Staroswiecki's opinions, Defendants' motion also falsely contends that "[t]he fact is that Syked Tuning made absolutely no use of the HP Tuners' software in developing its own software."[8] This assertion is wholly undermined and refuted by Sykes-Bonnett's own deposition testimony wherein he admitted to using HPT's source code in connection with the development of Defendants' software. (*See* Sykes Deposition 5-16-19, pp. 385-87). Likewise, Sykes-Bonnett admitted to sharing HPT's source code with third parties in connection with the development of Defendants' software. (Sykes Deposition 5-16-19, pp. 409-10). Simply put, Defendants' arguments in this regard are frivolous and manufactured, are refuted by Defendants' evidentiary admissions in this matter and establish liability or, at least, create material factual questions which undermine Defendants' motion for partial summary judgment.

**CONCLUSION**

Defendants' Motion for Partial Summary Judgment does not comply with LR 56.1, is legally baseless and factually unfounded. For these reasons, partial summary judgment in Defendants' favor would be wholly inappropriate and Defendants' motion should be denied in its entirety.

---

[8] In the motion, Defendants make the totally unfounded claim that if there are similarities between HPT's source code and Defendants' source code, it is because HPT copied source code from third party sources or from Defendants. There is absolutely no evidentiary support for this vague, fabricated claim and it should be ignored.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547

WHEREFORE, HP TUNERS, LLC, respectfully prays for an order denying Defendants' Motion for Partial Summary Judgment (Dkt. 182) in its entirety, and for such other and further relief as this Court deems necessary and appropriate.

Dated this 3rd day of September, 2019

Respectfully submitted,

*s/ Andrew P. Bleiman*
Attorneys for HP Tuners, LLC

Stephen G. Leatham, WSBA #15572
Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
PO Box 611
211 E. McLoughlin Boulevard
Vancouver, WA 98666-0611
Telephone:  (360) 750-7547
Fax:  (360) 750-7548
E-mail:  sgl@hpl-law.com

Andrew P. Bleiman (admitted *pro hac vice*)
Marks & Klein
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
(312) 206-5162
andrew@marksklein.com

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT - page 17

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2019, I caused the foregoing to be electronically with the Clerk of Court using the **CM/ECF system** which will electronically send Notice to all Counsel of Record.

MARKS & KLEIN

*s/ Andrew P. Bleiman*
Andrew P. Bleiman (admitted *pro hac vice*)
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
Telephone: (312) 206-5162
E-mail: andrew@marksklein.com

Attorney for Plaintiff

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - page 18

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547