HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HP TUNERS, LLC, a Nevada limited liability)
company,                                  )   CASE NO.  3:17-cv-05760-BHS
                                          )
                    Plaintiff,            )   **PLAINTIFF'S      RESPONSE      IN**
                                          )   **OPPOSITION TO DEFENDANT JOHN**
        vs.                               )   **MARTINSON'S        MOTION       FOR**
                                          )   **SUMMARY JUDGMENT**
KEVIN   SYKES-BONNETT   and   SYKED)
ECU   TUNING   INCORPORATED,   a)             **NOTING DATE:  SEPTEMBER 6, 2019**
Washington   corporation,   and   JOHN)
MARTINSON,                                )   **ORAL ARGUMENT REQUESTED**
                                          )
_____Defendants._____ )

        Plaintiff HP TUNERS, LLC, a Nevada limited liability company ("HPT"), for its

response in Opposition to Defendant John Martinson's ("Martinson" or "Defendant") Motion for

Summary Judgment[1] (Dkt. 183) states as follows and submits the accompanying Declaration of

Andrew P. Bleiman, Esq. ("Bleiman Decl.") which is being filed contemporaneously herewith.

---

[1]       It should be noted that Defendant John Martinson's Motion for Summary Judgment violates Rule
56 and LR 56.1 by virtue of their failure to include a statement of material facts which is mandated by the
rule.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

## INTRODUCTION

Defendant John Martinson's "it wasn't me, it was my business partner who did it" defense is unavailing and unfounded.  Contrary to Martinson's claims, Martinson was involved in the misconduct alleged both individually and as an owner and officer of Defendant Syked ECU Tuning, Inc. ("Syked").  Martinson's self-serving proclamations of innocence are undermined by the evidence adduced to date.  Factual questions exist in this matter concerning Martinson's role, involvement and participation in the misconduct alleged, and Martinson's motion for summary judgment should be denied.

At all times, Martinson was the CFO, an engineer/programmer, and an officer of Syked. He was intimately involved in the creation and development of Syked's software.  As detailed in HPT's response in opposition to Defendants' motion for partial summary judgment, HPT's expert, Dr. Ernesto Staroswiecki, Ph. D., P.E., opined that some of HPT's intellectual property is present in Syked's source code, some of the source code present on different versions of the Defendants' software products is extremely similar or identical to source code from HPT's software product, and Defendants' software tools were able to handle HPT's hardware, which would require Defendants to use HPT's communication protocols.

In addition, as detailed herein, documentary evidence produced by Defendants in this case demonstrates Martinson's knowledge of and involvement in the hacking and reverse engineering of HPT's software by a third-party contractor for Syked (Christopher Breton-Jean) and it also makes specific reference to Martinson's payments to Breton-Jean for such work. These facts raise questions of triable fact which defeat Martinson's motion for summary judgment (and, actually, give rise to liability on the part of Martinson under the claims asserted).

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
JOHN MARTINSON'S MOTION FOR SUMMARY JUDGMENT -
page 2

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Here, HPT has asserted claims against Martinson for: (i) violation of the Computer Fraud and Abuse Act ("CFAA") arising under 18 U.S.C. §1030; (ii) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836 et seq.; (iii) misappropriation of trade secrets arising under the Washington Uniform Trade Secrets Act, RCW 19.108; (iv) violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 et. seq.; (v) unfair competition under the Washington Consumer Protection Act, RCW 19.86.020; (vi) unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et. seq.; (vii) breach of contract; and (viii) tortious interference with prospective economic relations.

Martinson's attempt to point the finger solely at Sykes-Bonnett and contend that he had no involvement whatsoever is not well founded. The evidence establishes that Martinson was involved and participated in the misconduct giving rise to liability for the claims which have been plead or, at the very least, the evidence raises genuine factual questions for the trier of fact to determine regarding Martinson's involvement in and liability for such misconduct. In addition, as demonstrated herein, as an owner and officer of Syked, Martinson may be held personally liable under the statutory claims which have been plead. Finally, the misconduct at issue is sufficient to overcome corporate immunity. For these reasons, Defendant John Martinson's motion for summary judgment should be denied in its entirety.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
JOHN MARTINSON'S MOTION FOR SUMMARY JUDGMENT -
page 3

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

## LR 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS[2]

1.    Martinson is an owner and officer of Syked.  (*See* Deposition of John Martinson ("Martinson Dep.") which has been filed of record in this cause under seal at Dkt. 147 (Exhibit B), pp. 6, 34-35).

2.    Martinson is the "CFO" and an "engineer" for Syked and, as engineer, he is a programmer.  (Martinson Dep., p. 6, 13-14).

3.    As an engineer for Syked, Martinson wrote source code, worked to develop Syked's software and was intimately involved in the creation and development of the software since at least 2013.  (Martinson Dep., p. 6, 13-14, 21-22).

4.    Martinson's work in connection with the development of Syked's software included programming, writing code, incorporating checksum algorithms and general creation and development of Syked's software.  (Martinson Dep., p. 13, 14, 122, 138).

5.    At his deposition, Martinson admitted: "I'm very forgetful." (Martinson Dep., p. 18).

6.    He further admitted: "I forget details often."  (Martinson Dep., p. 19).

7.    Martinson has difficulty remembering things because of the stress that he is under.  (Martinson Dep., p. 19).

8.    Martinson admitted that third persons, including Christopher Breton-Jean ("Breton-Jean"), performed work for Syked. (Martinson Dep., p. 89-91).

---

[2]    As noted above, Defendants improperly failed to include a LR 56.1 Statement of Facts in violation of the rule.  The undisputed facts detailed herein by HPT wholly undermine Defendant's motion for summary judgment and, instead, unequivocally demonstrate Defendant's liability for the claims asserted in the First Amended Complaint.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

1    9.    Martinson admitted that Breton-Jean worked on the development of Defendant

2    Syked's software.  (Martinson Dep., p. 97).

3    10.    Syked engaged and paid Breton-Jean to reverse engineer HPT's software.  (See

4    Deposition of Kevin Sykes-Bonnett dated May 16, 2019  ("Sykes Deposition 5-16-19"), pp. 357,

5    368-69, 396, 469-71, which is attached as Exhibit 1 to the Bleiman Decl.

6    11.    Syked engaged and paid Breton-Jean to, among other things, hack HPT's

7    software and reverse engineer HPT's checksum and seed key algorithms for Syked.  (Sykes

8    Deposition 5-16-19, pp. 367-69, 396, 403-04, 405, 408-10; *see also* Exh. 8 to Bleiman Decl.).[3]

9    12.    On September 1, 2017, Breton-Jean was paid for his work in connection with

10    various seed key and checksum algorithms which he obtained from reverse engineering HPT's

11    software.[4]  (*See* Exh. 9 to Bleiman Decl.).

12    13.    Martinson was involved in determining the nature and extent of the services and

13    work performed by Breton-Jean and Syked viewed Breton-Jean as part of the team.  (S*ee* Exh. 17

14    and Exh. 18 to Bleiman Decl.).[5]

15    14.    The work performed by Breton-Jean and other independent contractors in

16    connection with Syked's software would be incorporated into the software by Martinson and

17    Sykes-Bonnett.  (Martinson Dep., p. 122).

18

19

20

21

22

---

[3]    Exhibit 8 contains Facebook messenger communications between Sykes-Bonnett and Breton-Jean
23    detailing the information sought by Defendants to be reverse engineered from HPT's software.
[4]    This is one example of several Paypal records evidencing payments to Breton-Jean for services
24    performed.  This particular payment related to services performed in connection with reverse engineering
of checksum and seed key algorithms.
[5]    Exh. 17 is one example of Sykes-Bonnett's communications to Breton-Jean wherein he is
25    communicating to Breton-Jean what him and Martinson ("we") want Breton-Jean to do for Syked.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

15.     In connection with the development of Defendants' software, Martinson and Sykes-Bonnett would add the seed key algorithms and flash routines to the Syked software. (Martinson Dep., pp. 138-39).

16.     Martinson had access to the email address software@sykedecutuning.com. (Martinson Dep., p. 125).

17.     In connection with Breton-Jean's work, Sykes-Bonnett instructed Breton-Jean to blind copy software@sykedecutuning.com on his emails to Sykes-Bonnett.  (*See* Exh. 16 to Bleiman Decl.).[6]

18.     Sykes-Bonnett's Facebook messenger communications to Breton-Jean demonstrate that Martinson was involved in making various payments to Breton-Jean for the work he performed.  (*See* Exh. 7, Exh. 10, Exh. 11, Exh. 12, Exh. 13, Exh. 14 to Bleiman Decl.).

19.     Martinson used and tested work product created by Breton-Jean for Syked.  (See Exh. 15 to Bleiman Decl.).[7]

20.     While Martinson denied ever seeing or using a HPT interface (*see* Martinson Dep., p. 102), Sykes-Bonnett admitted to Breton-Jean that Martinson had one of the two HPT interfaces that were provided to Sykes-Bonnett by Ken Cannata.  (*See* Exh. 5 and Exh. 6 to Bleiman Decl.).[8]

---

[6]     This demonstrates that Martinson received work product from Breton-Jean resulting from Breton-Jean's hacking and reverse engineering of HPT's software and was fully involved with and aware of the work being performed by Breton-Jean for Syked.

[7]     This is one example of many to Martinson's use and knowledge of work product created by Breton-Jean for Syked.

[8]     Consequently, in the face of his claimed denial, questions of fact exist as to whether Martinson was using a HPT interface in connection with his work on the Syked software.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

21.     On behalf of Syked, **Martinson,** as "CoOwner", executed a non-disclosure agreement with Ken Cannata dated March 11, 2016. (Martinson Dep., p. 65; see also Exh. 4 to Bleiman Decl.).

22.     Shortly thereafter, on April 8, 2016, Ken Cannata (a former owner of HPT) began using a secret email account to share highly confidential and proprietary information of HPT with Defendants. (Sykes Deposition 5-16-19, pp. 365-83).

23.     In particular, Cannata created an email account with the email address "somethingnew1892@yahoo.com", which he used to send emails to Sykes-Bonnett who had created a secret email address "fhptuners@yahoo.com" for purposes of having private communications with Cannata. (Sykes Deposition 5-16-19, pp. 365-83).

24.     In April and May 2016, Cannata used the "somethingnew1892@yahoo.com" secret email address to share source code and program files with Defendants. (Sykes Deposition 5-16-19, pp. 370-73).

25.     In addition, on October 16, 2016, Cannata shared additional source code files and program files with Defendants using the secret email account. (Sykes Deposition 5-16-19, pp. 374).

26.     Subsequently, on January 9, 2017, Cannata shared additional confidential and proprietary information of HPT with Defendants, including proprietary information relating to HPT's application key as well as a highly confidential document relating to HPT's interface programming. (Sykes Deposition 5-16-19, pp. 376-77).

27.     Dr. Ernesto Staroswiecki, Ph. D., P.E. analyzed various discovery information and Defendants' source code in connection with this matter. Dr. Staroswiecki

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
JOHN MARTINSON'S MOTION FOR SUMMARY JUDGMENT -
page 7

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

prepared a report in connection with this matter.  (*See* Expert Report of Dr. Ernesto Staroswiecki, Ph.D., P.E., ("Expert Report"), which is attached as Exhibit 2 to the Bleiman Decl.).

28.     In connection with the Expert Report, Dr. Staroswiecki's opinions included but were not limited to the following:

A.     Some of HPT's intellectual property is present in Defendants' source code.

B.     Some of the source code present on different versions of the Defendants' software products is extremely similar or identical to source code from HPT's software product.

C.     Defendants' software tools were able to handle HPT's hardware, which would require Defendants' to use HPT's communication protocols.

D.     Having access to HPT's source code could have provided Defendants with, among other things, proven working strategies, a performance baseline, suggestions on how to address problems, access to algorithm or vehicle manufacturer data, etc., that could have save Defendants a significant amount of research and development time and resources that would have been required to achieve a product in its current form.

E.     As detailed in the Expert Report, Defendants' actions hampered Dr. Starowiecki's work.  For example, an additional section of Defendants' source code referred to as "server" code was never identified prior to the inspection.  During Dr. Staroswiecki's inspection he discovered references to a remote server in the source code, which was finally produced upon his request during the second half of the second day of the three-day inspection.

29.     Defendants did not take Dr. Staroswiecki's deposition in this case.  Nor did Defendants disclose an expert to rebut, refute or respond to any of Dr. Staroswiecki's opinions and conclusions in this case.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
JOHN MARTINSON'S MOTION FOR SUMMARY JUDGMENT -
page 8

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## ARGUMENT

## THE MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD BE DENIED.

### A.  SUMMARY JUDGMENT STANDARD.

Summary judgment in Defendant's favor is wholly inappropriate in this case, where both the facts and the law support HPT's claims.  Summary judgment is only available where, viewing the evidence in the light most favorable to the nonmoving party, "there are no genuine issues of material fact."  Fed. R. Civ. P. 56(a).

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Standard Insurance Company v. Deaver*, 2012 U.S. Dist. LEXIS 119073, ¶3-5 (W.D. Wash 2012) *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253, 106 S. Ct. 2505 (U.S. 1986); *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

Facts are considered material if they "might affect the outcome of the suit under the governing law," so material facts are more than irrelevant or unnecessary under the substantive law. *Certain Underwriters at Lloyd's v. Mills Brothers International*, 2019 U.S. Dist. LEXIS 129598, ¶7 (W.D. Wash 2019) *citing Anderson*, 477 U.S. at 248. A factual dispute is "genuine" if the evidence could lead a reasonable jury to return a verdict for the nonmovant.  However, a nonmovant need not produce evidence that would be admissible at trial to avoid summary judgment. *Certain Underwriters,* 2019 U.S. Dist. LEXIS 129598, at ¶8 *citing* Celotex, 477 U.S. at 324. A nonmovant's submission of "competing evidence that relates to" a central issue in the

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
JOHN MARTINSON'S MOTION FOR SUMMARY JUDGMENT -
page 9

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

case is demonstrative of a genuine dispute of material fact.  *See Certain Underwriters*, 2019 U.S. Dist. LEXIS 129598, at ¶12.  The Court must view the facts and reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255.

Furthermore, "in the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that 'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"  *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 1094, 1100 (E.D. Ca. 2010), *quoting First Nat'l Bank*, 391 U.S. 253, 289-90 (1968); see also *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association*, 809 F. 2d 626, 631 (9th Cir. 1987) ("If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true.").

Defendant argues that summary judgment in his favor is somehow appropriate here because HPT has failed to produce any evidence that Martinson "did any of the acts alleged in the First Amended Complaint."  However, contrary to Defendant's self-serving and conclusory mischaracterizations of the evidence, the testimonial and documentary evidence adduced to date raises factual questions concerning Martinson's involvement, role and participation in the misconduct alleged.

For example, as detailed in the Statement of Facts set forth above, shortly after Martinson executed a non-disclosure agreement on behalf of Syked ECU Tuning, Inc., Ken Cannata (a former owner of HPT) provided Sykes-Bonnett – Martinson's business partner in Syked – with highly confidential and proprietary information of HPT.  Likewise, Defendants engaged Breton-Jean to reverse engineer and hack HPT's software.  Martinson was involved in making various

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
JOHN MARTINSON'S MOTION FOR SUMMARY JUDGMENT -
page 10

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

payments to Breton-Jean for the work he performed and was involved in and aware of the nature of the services being performed by Breton-Jean for Syked. Martinson's feigned ignorance and claimed innocence is undermined by the facts adduced in discovery to date and questions of material fact exist as to Martinson's involvement in the alleged misconduct giving rise to HPT's claims of violation of the Computer Fraud and Abuse Act (Count I), trade secret misappropriation (Counts II, III and IV), unfair competition (Counts V and VI), breach of contract (particularly the EULA which prohibits the reverse engineering, misuse and misconduct alleged)(Count VII) and tortious interference (Count VIII).

In addition, at all times, Martinson was the engineer and programmer for Syked. He has been intimately involved with the creation and development of Syked's source code since at least 2013. Here, credible evidence has been presented in the form of expert testimony that Defendants' source code contains parts of HPT's source code as Dr. Staroswiecki, some of the source code present on different versions of the Defendants' software products is extremely similar or identical to source code from HPT's software product and Defendants' software tools were able to handle HPT's hardware, which would require Defendants to use HPT's communication protocols. (*See* Exh. 2 to Bleiman Decl.). Consequently, at a minimum, on this record, given Martinson's position and role with Syked, questions of fact exist for the trier of fact to determine as to Martinson's responsibility for and involvement in the misconduct which can be demonstrated herein. The evidence bearing on Martinson's role, knowledge and involvement creates genuine disputes of material fact precluding summary judgment on the claims asserted in the First Amended Complaint, specifically including the claims for trade secret act violations in Counts II, III and IV. As such, Martinson's motion for summary judgment should be denied.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

Furthermore, Martinson's efforts to point the finger at the corporate defendant (which he owns) or his business partner are unfounded as he may be held personally liable under several of the claims asserted herein by HPT.  For example, individuals may be liable for violations of the Computer Fraud and Abuse Act by their company.  *See Facebook, Inc. v. Power Ventures, Inc.*, 844 F. 3d 1058 (9th Cir. 2016) (upholding defendant's CEO as personally liable for defendant's violation of CFAA).  Therefore, Martinson may be held personally liable on HPT's claim in Count I for violation of the Computer Fraud and Abuse Act.

Similarly, corporate officers may be personally liable for claims for unfair competition. "A corporate officer or director is personally liable for torts the officer authorizes or directs or in which the officer participates." *See Suarez Corp. Indus. V. Earthwise Techs., Inc.*, 636 F. Supp. 2d 1139, 1149 (W.D. Wash. 2008) (denial of defendants' summary judgment motion holding corporate officer may be personally liable for claims of unfair competition arising from the acts of the corporation).  Accordingly, Martinson may be personally liable for HPT's unfair competition claims in Counts V and VI.

Likewise, Martinson may be held individually liable on HPT's claims for tortious interference in Count VIII.  A "corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) (internal quotation marks omitted).

Finally, the misconduct alleged is sufficient to overcome corporate immunity.  As detailed in the Statement of Facts above, the corporate officers of Syked, including Martinson, engaged in the misconduct alleged by HPT.  Martinson funded the hacking and reverse engineering of HPT's software and HPT's intellectual property can be found in Syked's source

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
JOHN MARTINSON'S MOTION FOR SUMMARY JUDGMENT -
page 12

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

code – which Martinson developed.  Under the doctrine of corporate immunity, "if a corporate officer participates in wrongful conduct or with knowledge approves of the conduct, then the officer, as well as the corporation, is liable for the penalties.  *Grayson v. Nordic Constr. Co.*, 29 Wash. 2d 548, 554 (1979); *see also State v. Ralph Williams' N. W. Chrysler Plymouth*, 553 P. 2d 423, 552 (1976).

In *Grayson*, the court imposed personal liability because the defendant owner of the construction company personally directed the unlawful mailing of brochures that constituted a CPA violation.  *Grayson,* 29 Wash. 2d at 554.  Here, factual questions exist as to Martinson's involvement with and engagement in the tortious, bad faith acts against HP Tuners, including the reverse engineering HPT's software and misappropriating HP Tuners' trade secrets and proprietary information.  Therefore, disputed factual issues exist which support a finding of personal liability as against Martinson, despite his status as a corporate officer at Syked ECU Tuning, and summary judgment in the face of such factual disputes would be inappropriate.

## CONCLUSION

Based on the foregoing, Defendant John Martinson's Motion for Summary Judgment does not comply with LR 56.1, is legally baseless and factually unfounded.  For these reasons, Defendant John Martinson's Motion for Summary Judgment should be denied in its entirety.

WHEREFORE, HP TUNERS, LLC, respectfully prays for an order denying Defendant John Martinson's Motion for Summary Judgment in its entirety, and for such other and further relief as this Court deems necessary and appropriate.

Dated this 3rd day of September, 2019          Respectfully submitted,

*s/ Andrew P. Bleiman*
Attorneys for HP Tuners, LLC

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
JOHN MARTINSON'S MOTION FOR SUMMARY JUDGMENT -
page 13

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

Stephen G. Leatham, WSBA #15572
Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
PO Box 611
211 E. McLoughlin Boulevard
Vancouver, WA 98666-0611
Telephone:  (360) 750-7547
Fax:  (360) 750-7548
E-mail:  sgl@hpl-law.com

Andrew P. Bleiman (admitted *pro hac vice*)
Marks & Klein
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
(312) 206-5162
andrew@marksklein.com

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
JOHN MARTINSON'S MOTION FOR SUMMARY JUDGMENT -
page 14

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

1

**<u>CERTIFICATE OF SERVICE</u>**

2
     I hereby certify that on September 3, 2019, I caused the foregoing to be electronically

3
with the Clerk of Court using the **CM/ECF system** which will electronically send Notice to all

4
Counsel of Record.

5

6
                      MARKS & KLEIN

7
                      <u>*s/ Andrew P. Bleiman*</u>

8
                      Andrew P. Bleiman (admitted *pro hac vice*)

                      1363 Shermer Road, Suite 318

9
                      Northbrook, Illinois 60062

                      Telephone:  (312) 206-5162

10
                      E-mail:  <u>andrew@marksklein.com</u>

11

                      Attorney for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
JOHN MARTINSON'S MOTION FOR SUMMARY JUDGMENT -
page 15

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547