THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN SYKES-BONNETT, SYKED ECU TUNING INCORPORATED, a Washington corporation, and JOHN MARTINSON<br><br>Defendants. | Cause No. 3:17-cv-05760 BHS<br><br>**REPLY IN SUPPORT OF DEFENDANT JOHN MARTINSON'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Note On Motion Calendar: September 6, 2019**<br><br>**Oral Argument Requested** |

Defendant John Martinson ("Mr. Martinson"), through his undersigned counsel, hereby submits the following Reply in support of his Motion for Summary Judgment dismissing all claims against him in the above-captioned matter.

**INTRODUCTION AND SUMMARY OF THE ARGUMENT**

HP Tuners fails to accept that the time for speculation, conjecture and guesswork as to events that "might" have occurred is over, and that it is now time for it to present the evidence needed to prove its claims. HP Tuners comes nowhere close to doing so.

The "evidence" HP Tuners cites and relies upon does nothing than establish the undisputed facts (1) that Mr. Martinson was a co-owner of Syked ECU Tuning, (2) that as such he helped finance the company and paid some bills, and (3) that beginning in 2013 *long before HP Tuners alleges Syked ECU Tuning even received any of HP Tuners' purported "trade secret" information,* he developed software for Syked ECU Tuning. Significantly, HP Tuners does not, and cannot, offer any evidence that Mr. Martinson engaged in any wrongdoing himself, or that he knew of and facilitated any wrongdoing on the part of Syked



MANN LAW GROUP PLLC
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

ECU Tuning. This is clear from a careful review of the "evidence" HP Tuners cites and relies upon at pages 4-8 of its Opposition to Mr. Martinson's Motion for Summary Judgment.

## ARGUMENT

### A. HP Tuners' "Material Facts" Either Misquote Actual Testimony Or Are Immaterial To The Actual Issue Of Whether Mr. Martinson Is Personally Liable In This Action.

At pages 4-8 of its Opposition, HP Tuners purports to set out the "facts" purporting to establish Mr. Martinson's personal liability. Significantly, HP Tuners nowhere actually quotes any of the deposition testimony or documents purporting to support its claims and apparently expects this Court to search the record itself to see if the testimony actually supports HP Tuners' claims. A probable reason for taking this approach is that review of the actual testimony vaguely cited by HP Tuners indicates that the testimony either does not actually support HP Tuners' claims, or that it relates to irrelevant and undisputed matters that in no way establish liability on the part of Mr. Martinson.

Let's consider what HP Tuners claims and what Mr. Martinson actually said and did:

**Claim:** 1. Martinson is an owner and officer of Syked. (See Deposition of John Martinson ("Martinson Dep.") which has been filed of record in this cause under seal at Dkt. 147 (Exhibit B), pp. 6, 34-35).

**Response:** This is not in dispute. Furthermore, Mr. Martinson has been an owner and officer of Syked since at least as early as 2013, well before any of the matters complained about by HP Tuners in this action tool place. (Martinson Dep. p. 21, line18 – p. 22, line 6.)

**Claim:** 2. Martinson is the 'CFO' and an 'engineer' for Syked and, as engineer, he is a programmer. (Martinson Dep., p. 6, 13-14).

**Claim:** 3. As an engineer for Syked, Martinson wrote source code, worked to develop Syked's software and was intimately involved in the creation and development of the software since at least 2013. (Martinson Dep., p. 6, 13-14, 21-22).



MANN LAW GROUP PLLC
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

**Claim:** 4. Martinson's work in connection with the development of Syked's software included programming, writing code, incorporating checksum algorithms and general creation and development of Syked's software. (Martinson Dep., p. 13, 14, 122, 138).

**Response:** Claims 2, 3 and 4 are undisputed and do not establish liability on the part of Mr. Martinson. Furthermore, Mr. Martinson's testimony at page 122 of his deposition is in response to questioning beginning with, "Describe Syked ECU Tuning's source control and environment in 2014." (Martinson Dep. p. 121, lines 17-18.) Again, this testimony clarly relates to events taking place *before* any of the acts complained of by HP Tuners.

**Claims:** 5. At his deposition, Martinson admitted: "I'm very forgetful." (Martinson Dep., p. 18).

6 He further admitted: 'I forget details often.' (Martinson Dep., p. 19).

7. Martinson has difficulty remembering things because of the stress that he is under. (Martinson Dep., p. 19).

**Response:** What this has to do with the allegations made against Mr. Martinson is a mystery. This testimony simply does not, and cannot, establish liability on the part of Mr. Martinson.

**Claim:** 8. Martinson admitted that third persons, including Christopher Breton-Jean ("Breton-Jean"), performed work for Syked. (Martinson Dep., p. 89-91).

**Response:** This is undisputed. Furthermore, Mr. Martinson's testimony concerning Mr. Breton-Jean was in response to the question, "Okay. So identify for me all of the people *since 2013* who have performed services for Syked ECU Tuning in connection with either the development of any software or hardware products." (Martinson Dep., p. 90, lines 2-5, emphasis supplied.) Again, the question *actually asked* relates to events taking place *long before* any of the acts complained of by HP Tuners in this action. Finally, Mr. Martinson directly testified that he never talked with Mr. Breton-Jean either by phone, or email, or text message "or any other form of messaging service." (Martinson Dep. p. 91, lines 1-7.)



MANN LAW GROUP PLLC
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

**Claim:** 9. Martinson admitted that Breton-Jean worked on the development of Defendant Syked's software. (Martinson Dep., p. 97).

**Response:** Here Mr. Martinson was clearly testifying as to Mr. Breton-Jean's involvement with *server* software, which is altogether *different* from the so-called "client" based software that is at issue here. Mr. Martinson *nowhere* testified that he had any knowledge or awareness of Mr. Breton-Jean's involvement in the software at issue here.

**Claim:** 10. Syked engaged and paid Breton-Jean to reverse engineer HPT's software.

**Response:** HP Tuners is clearly being disingenuous here. Mr. Sykes-Bonnett *never* testified that "Syked" engaged and paid Mr. Breton-Jean to reverse engineer HPT's software. On the contrary, Mr. Sykes-Bonnett testified that he, and he alone, was responsible for this. Consider the actual testimony, that HP Tuner's conveniently fails to quote:

> Q: So then like the binary swap was not a document that was provided by Ken. Where would you have gotten that from?
>
> A: So that's a utility. When we had reverse engineered the production version of HP Tuners software, I created that utility to swap the binary file out of the saved file that's used to tune a car.
> Q: *And when you say "we," that was you and Christopher Breton-Jean?*
> A: *Correct.*
> Q: *Was anyone else involved in that reverse engineering?*
> A; *No.*
> Q: And so essentially any of the other, like, documents or folders like this on Exhibit 13 where it says cloned cable or cracked and the resources, was that all work product that you and Christopher Breton-Jean created?
> A: Yes.
> Q: *Was John [Martinson] involved in any of that?*
> A: *No.*

(Sykes-Bonnett Dep. p. 357, line 16 - p. 368, line 8, emphasis supplied.)

The very testimony HP Tuners cites to but fails to quote gives lie to its claim that "Syked" and not Mr. Sykes-Bonnett in his individual capacity alone, who engaged Mr. Breton-Jean for purposes of reverse engineering. Indeed, Mr. Sykes-Bonnett clearly and directly testified that Mr. Martinson was *not* "involved in any of [this]."



MANN LAW GROUP PLLC
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

**Claim:** "11. Syked engaged and paid Breton-Jean to, among other things, hack HPT's software and reverse engineer HPT's checksum and seed key algorithms for Syked. (Sykes Deposition 5-16-19, pp. 367-69, 396, 403-04, 405, 408-10; see also Exh. 8 to Bleiman Decl.)."

**Response:** Mr. Sykes-Bonnett never testified that "Syked" as opposed to he personally ever engaged Mr. Breton-Jean to "hack" HP Tuners' software. Nothing in this testimony establishes any involvement on the part of Mr. Martinson. Indeed, the only time Mr. Martinson is mentioned in this testimony is where Mr. Sykes-Bonnett made clear that Mr. Martinson wanted no involvement in anything questionable:

> Q: Okay. And you recall getting a phone call from Ken while you were in Las Vegas at this dance competition?
>
> A: Yeah. So we were at the dance competition, and I had stepped outside. I can visualize exactly where I was at. And I stepped outside, and I was talking to John [Martinson] at that time. Phone rings and it was Ken. Ken says he's got a -- got a great idea. And so I merged it with John, and said, Hey, John, you know, Ken's got a great idea, you know. At so at that point Ken proceeded to say we should release a cracked version of the software that was given to me by Christopher Breton-Jean that required no licenses. And at that time, you know, I -- well, *first off John said, you know, he wants no part of this and hung up the phone.*"

(Sykes-Bonnett Dep. p. 402, line 21 - p. 403, line 10, emphasis supplied.)

Again, HP Tuners' blatantly distorts Mr. Sykes-Bonnett's actual testimony.

**Claim:** "12. On September 1, 2017, Breton-Jean was paid for his work in connection with various seed key and checksum algorithms which he obtained from reverse engineering HPT's software. 4 (See Exh. 9 to Bleiman Decl.)."

**Response:** What, if anything, this has to do with liability on the part of Mr. Martinson remains a mystery. On its face, Exhibit 9 was clearly sent to "Kevin Sykes Bonnett" and the subject says, "*You* sent a payment." (Emphasis supplied.) This exhibit in no way establishes that Mr. Martinson was personally involved.



MANN LAW GROUP PLLC
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

**Claim:** 13. Martinson was involved in determining the nature and extent of the services and work performed by Breton-Jean and Syked viewed Breton-Jean as part of the team. (See Exh. 17 and Exh. 18 to Bleiman Decl.).

**Response:** Exhibits 17 and 18 are clearly hearsay documents as they are the statements of Mr. Sykes-Bonnett, not Mr. Martinson. More importantly, they do not reflect misconduct on the part of Mr. Martinson beyond the admitted and uncontroversial fact that he is an owner and officer of Syked ECU Tuning. Furthermore, and as Mr. Martinson testified to at his deposition, (Martinson Dep. p. 97) Mr. Martinson's involvement with Mr. Breton-Jean had to do with the *server* software that plays no role whatsoever in this lawsuit. In view of Mr. Martinson's denials under oath of any personal knowledge or involvement in the activities complained of in this case as well as Mr. Sykes-Bonnett's confirmation, under oath, that Mr. Martinson was not involved, the vague, hearsay statements in Exhibits 17 and 18 cannot suffice to impose personal liability on Mr. Martinson.

**Claim:** 14. The work performed by Breton-Jean and other independent contractors in connection with Syked's software would be incorporated into the software by Martinson and Sykes-Bonnett. (Martinson Dep., p. 122).

**Response:** A simple review of Mr. Martinson's testimony at pages 121 and 122 of his deposition reveals that his testimony was in response to a line of questioning beginning with, "Describe Syked ECU Tuning's source control and environment in 2014." (Martinson Dep. p. 121 lines 17 and 18). None of this testimony establishes that Mr. Martinson was aware of any of the acts complained of here, which occurred long after 2014.

**Claim:** 15. In connection with the development of Defendants' software, Martinson and Sykes-Bonnett would add the seed key algorithms and flash routines to the Syked software. (Martinson Dep., pp. 138-39).

**Response:** First, what is meant by "the" seed key algorithms and flash routines? To the extent HP Tuners implies or claims that these algorithms and routines are HP Tuners'



MANN LAW GROUP PLLC
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

property, HP Tuners is being dishonest. Mr. Martinson's actual testimony was that Syked ECU Tuning's algorithms were in fact obtained from "manufacturers," not from HP Tuners:

Q: Who develops Syked ECU Tuning's checksum algorithms?

A: The algorithms are manufacturers -- manufacturer specific. *Manufacturers develop them.*

(Martinson Dep. p. 137, line 25 - 138, line 1. Emphasis supplied.)

Nowhere in Mr. Martinson's actual testimony does he say that any of HP Tuners' alleged property is "add[ed]...to the Syked software" or that he had any knowledge of such being done. Again, HP Tuners is playing fast and loose with the truth.

**Claim:** 16. Martinson had access to the email address software@sykedecutuning.com. (Martinson Dep., p. 125).

**Response:** This does not and cannot establish liability on the part of Mr. Martinson.

**Claim:** 17. In connection with Breton-Jean's work, Sykes-Bonnett instructed Breton-Jean to blind copy software@sykedecutuning.com on his emails to Sykes-Bonnett. (See Exh. 16 to Bleiman Decl.).

**Response:** Given that Mr. Martinson had worked with Mr. Breton-Jean on server software matters long before any of the acts complained of in this case took place, this does not form a basis on which a reasonable jury can impose personal liability on Mr. Martinson.

**Claim:** 18. Sykes-Bonnett's Facebook messenger communications to Breton-Jean demonstrate that Martinson was involved in making various payments to Breton-Jean for the 12 work he performed. (See Exh. 7, Exh. 10, Exh. 11, Exh. 12, Exh. 13, Exh. 14 to Bleiman Decl.).

**Response:** See Response to Claim 13 above. Given that Mr. Breton-Jean had been doing work for Syked ECU Tuning from well before any of the acts complained of in this case had even taken place, why continued payments to Mr. Breton-Jean for his services should have raised flags for Mr. Martinson remains unexplained. These hearsay exhibits cannot, and do not, form a legitimate basis for imposing personal liability on Mr. Martinson.



MANN LAW GROUP PLLC
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

**Claim:** 19. Martinson used and tested work product created by Breton-Jean for Syked. (See Exh. 15 to Bleiman Decl.).

**Response:** See Responses to Claims 13 and 18 above. Furthermore, Exhibit 15 simply has Mr. Sykes-Bonnett saying, "It works for both John and I." What does the supposed "work product" consist of? Where is it shown that this undefined "work product" is somehow the property of HP Tuners? How is any of this supposed to impose liability on Mr. Martinson? HP Tuners has offered no credible explanation. Nor can it.

**Claim:** 20. While Martinson denied ever seeing or using a HPT interface (see Martinson Dep., p. 102), Sykes-Bonnett admitted to Breton-Jean that Martinson had one of the two HPT interfaces that were provided to Sykes-Bonnett by Ken Cannata. (See Exh. 5 and Exh. 6 to Bleiman Decl.).

**Response:** See Responses to Claims 13, 18 and 19 above. There is no admission or other evidence here that Mr. Martinson actually had one of the interfaces. Furthermore, HP Tuners has not established, nor can it establish, that the " the two HPT interfaces that were provided to Sykes-Bonnett by Ken Cannata" were improperly received by Syked ECU Tuning. It is undisputed that at the time Mr. Cannata supplied the interfaces to Mr. Sykes-Bonnett, Mr. Cannata, was, in fact, a one-third owner of HP Tuners, an officer and director of HP Tuners, and had both the actual and apparent authority to provide these interfaces to Mr. Sykes-Bonnett. There is simply no evidence that possession of an interface by Syked ECU Tuning, *voluntarily provided to them directly from and by an owner and officer of HP Tuners,* somehow violates HP Tuners' rights.

**Claim:** 21. On behalf of Syked, Martinson, as “CoOwner”, executed a non-disclosure agreement with Ken Cannata dated March 11, 2016. (Martinson Dep., p. 65; see also Exh. 4 to Bleiman Decl.).

**Response:** The undisputed execution of a non-disclosure agreement with Mr. Cannata while he was still an owner and officer of HP Tuners does not and cannot impose personal liability on Mr. Martinson.



MANN LAW GROUP PLLC
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

**Claim:** 22. Shortly thereafter, on April 8, 2016, Ken Cannata (a former owner of HPT) began using a secret email account to share highly confidential and proprietary information of HPT with Defendants. (Sykes Deposition 5-16-19, pp. 365-83).

**Response:** This again is disingenuous on the part of HP Tuners. Mr. Sykes-Bonnett never testified that "Defendants" communicated with Mr. Cannata using a secret email account -- his testimony clearly relates to his *own* communications with Mr. Cannata. Nowhere in the eighteen pages of deposition testimony broadly and vaguely cited by HP Tuners does Mr. Sykes-Bonnett ever indicate that Mr. Martinson was ever privy to these communications. Nowhere did Mr. Sykes-Bonnett ever indicate that Mr. Martinson knew or or had access to this email account or had knowledge of the communications in that account. By substituting the word "Defendants" into the actual testimony of Mr. Sykes-Bonnett, HP Tuners is again playing fast and loose with the truth in a transparent bid to mislead this Court.

**Claim:** 23. In particular, Cannata created an email account with the email address “somethingnew1892@yahoo.com”, which he used to send emails to Sykes-Bonnett who had created a secret email address “fhptuners@yahoo.com” for purposes of having private communications with Cannata. (Sykes Deposition 5-16-19, pp. 365-83).

**Response:** See Response to Claim 22 above. At least here, HP Tuners accurately states that the communications were sent to "Sykes-Bonnett," rather than "Defendants." Again, nothing in Mr. Sykes-Bonnett's actual deposition testimony indicates that Mr. Martinson participated in or had any knowledge of these communications.

**Claim:** 24. In April and May 2016, Cannata used the “somethingnew1892@yahoo.com” secret email address to share source code and program files with Defendants. (Sykes Deposition 14 5-16-19, pp. 370-73).

**Response:** See Response to Claim 22 above. HP Tuners is again being disingenuous in claiming that these communications were with "Defendants" rather than with Mr. Sykes-Bonnett only. Again, nothing in Mr. Sykes-Bonnett's actual deposition testimony indicates



MANN LAW GROUP PLLC
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

that Mr. Martinson participated in or had any knowledge of these communications. Again, HP Tuners is apparently trying to mislead this Court.

**Claim:** 25. In addition, on October 16, 2016, Cannata shared additional source code files and program files with Defendants using the secret email account. (Sykes Deposition 5-16-19, pp. 374).

**Response:** See Responses to Claims 22 and 24 above. HP Tuners is again being disingenuous in claiming that these communications were with "Defendants" rather than with Mr. Sykes-Bonnett only. Again, nothing in Mr. Sykes-Bonnett's actual deposition testimony indicates that Mr. Martinson participated in or had any knowledge of these communications.

**Claim:** 26. Subsequently, on January 9, 2017, Cannata shared additional confidential and proprietary information of HPT with Defendants, including proprietary information relating to HPT's application key as well as a highly confidential document relating to HPT's interface programming. (Sykes Deposition 5-16-19, pp. 376-77).

**Response:** See Responses to Claims 22, 24 and 25 above. HP Tuners is again being disingenuous in claiming that these communications were with "Defendants" rather than with Mr. Sykes-Bonnett only. Again, nothing in Mr. Sykes-Bonnett's actual deposition testimony indicates that Mr. Martinson participated in or had any knowledge of these communications.

**Claim:** 27. Dr. Ernesto Staroswiecki, Ph. D., P.E. analyzed various discovery information and Defendants' source code in connection with this matter. Dr. Staroswiecki prepared a report in connection with this matter.

**Response:** Dr. Staroswiecki's Expert Report is addressed in Defendants' Reply in Support of their Motion for Partial Summary Judgment filed contemporaneously herewith. In that Reply, Defendants establish that Dr. Staroswiecki failed to find any direct copying of HP Tuners' software and that to the extent any "similarities" exist between the Syked ECU Tuning software and that of HP Tuners, those similarities exist because *both* Syked ECU Tuning *and* HP Tuners used the *same* third-party source in developing their respective programs. More importantly, nothing in Dr. Staroswiecki's report indicates that Mr.



MANN LAW GROUP PLLC
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

Martinson personally participated in, or had knowledge of any, improper activities directed to HP Tuners. Nor can Dr. Staroswiecki properly opine as to Mr. Martinson's personal liability. Dr. Staroswiecki's purported expertise is in computer software, not as to who knew what or what his possible state of mind is or was.

**B. HP Tuners' Case Against Mr. Martinson Is A House Of Cards -- No Credible Basis Exists For Imposing Personal Liability On Mr. Martinson.**

As established above, HP Tuners' case against Mr. Martinson is based on inaccurate descriptions of actual deposition testimony, vague out-of-context statements made by others in hearsay documents, and vague claims as to things that "might" have happened. Significantly, HP Tuners makes no effort to refute the indisputable facts that (1) Mr. Martinson never admitted knowledge of any of the the nefarious acts complained of by HP Tuners in this case and (2) that Mr. Sykes-Bonnett *himself* confirmed under oath that Mr. Martinson had no knowledge of such acts either.

The cases cited by HP Tuners itself make clear that to impose personal liability on the officer or director of a corporation requires that the officer/director have knowledge of the improper acts and participates in the improper acts. Here, in the case of Mr. Martinson, there is absolutely no evidence to establish either.

Significantly, HP Tuners makes no effort whatsoever to implicate Mr. Martinson in the various claims it makes in this action. For example, HP Tuners makes no attempt to show that Mr. Martinson was involved in attempting "to remove licensing restrictions from HPT's VCM Suite Software," or that he, "add[ed] extra licenses to existing interfaces and res[old] them," as alleged in Count I of the First Amended Complaint. Nor does HP Tuners make any attempt to show that Mr. Martinson "modified HPT's confidential and proprietary source code to allow users to bypass all licensing checks and prompts, thus enabling HPT's users to use the software on any vehicle they wish without paying any licensing fees to HPT" as alleged in Counts II, III and IV of the First Amended Complaint. Similarly, HP Tuners makes no attempt to show that Mr. Martinson "deceive[d] the public by passing off HPT credits and



MANN LAW GROUP PLLC
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

license keys as authentic products and offerings of HPT when, in fact, they are not" as alleged in Counts V and VI of the First Amended Complaint. Nor has HP Tuners made any attempt to show that Mr. Martinson somehow violated a "EULA" agreement with HP Tuners as alleged in Count VII of the First Amended Complaint. Finally, HP Tuners has made no attempt to demonstrate that Mr. Martinson "solicited vendors, customers and suppliers of HPT to purchase hacked license keys and versions of software with licensing defeated from Defendants" as alleged in Count VIII of the First Amended Complaint.

At the end of the day, HP Tuners' case against Mr. Martinson consists of (1) the inaccurately described deposition testimony of Mr. Martinson and Mr. Sykes-Bonnett that HP Tuners apparently cannot be bothered actually to quote (and for good reason too -- it does not say what HP Tuners claims) and (2) the vague out of context social media comments made by Mr. Sykes-Bonnett in his communications with Mr. Breton-Jean. These do not rise to the evidentiary level needed to impose personal liability on Mr. Martinson. The relevant, long-existent standard for defeating a motion for summary judgment is not merely to provide *some* evidence to support a claim, it is to provide *probative* evidence in support of its claim or defense. *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir. 2001). Here, HP Tuners must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 415 U.S. 574, 586-87 (1986). HP Tuners "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue" *Podohnik v. U.S. Postal Service,* 409 F.3d 584, 594 (3d Cir. 2005). And it is clear that a "genuine" issue of material fact exists "only if there is a sufficient evidentiary basis on which a reasonable finder of fact could find for the nonmoving party. " *In re Barboza,* 545 F.3d 702, 707 (9th Cir. 2008). Here HP Tuners has not come close to meeting these clear and long-standing requirements.

**CONCLUSION**

For all the foregoing reasons, Defendant John Martinson's Motion for Summary Judgment should be granted.



MANN LAW GROUP PLLC
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500

Dated September 6, 2019.

Respectfully submitted,

*/s/ Philip P. Mann*
Philip P. Mann, WSBA No: 28860
**Mann Law Group PLLC**
107 Spring St.
Seattle, Washington 98104
Phone (206) 436-0900
Fax (866) 341-5140
phil@mannlawgroup.com

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify on the date indicated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties who have appeared in this matter.

DATED: September 6, 2019 /s/ *Philip P. Mann*



MANN LAW GROUP PLLC
107 Spring St.
Seattle, WA 98101
Phone: 206.436.8500