1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HP TUNERS, LLC,

                    Plaintiff,

        v.

KEVIN SYKES-BONNETT, et al.,

                    Defendants.

CASE NO. C17-5760 BHS

ORDER DENYING
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY
JUDGMENT

13      This matter comes before the Court on Defendants Syked ECU Tuning

14   Incorporated ("Syked"), Kevin Sykes-Bonnett ("Sykes-Bonnett"), and John Martinson's

15   ("Martinson") (collectively "Defendants") motion for partial summary judgment.  Dkt.

16   182.  The Court has considered the pleadings filed in support of and in opposition to the

17   motion and the remainder of the file and hereby denies the motion for the reasons stated

18   herein.

19                      **I.   PROCEDURAL HISTORY**

20      On September 20, 2017, HP Tuners filed an amended complaint against

21   Defendants asserting (1) violations of the Computer Fraud and Abuse Act, 18 U.S.C.

22   § 1030; (2) violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836; (3) violations

ORDER - 1

1    of the Washington uniform trade secret act, RCW Chapter 19.108; (4) violations of the

2    Illinois trade secrets act, 765 ILCS 1065/1, *et seq.*; (5) unfair competition under the

3    Washington consumer protection act, RCW Chapter 19.86; (6) unfair competition under

4    the Illinois consumer fraud and deceptive business practices act, 815 ILCS 505/1, *et seq.*;

5    (7) breach of contract; and (8) tortious interference with prospective contractual or

6    economic relations.  Dkt. 35.

7        On July 31, 2019, Defendants filed a motion for partial summary judgment on HP

8    Tuners' claims involving trade secrets.  Dkt. 182.  On September 3, 2019, HP Tuners

9    responded.  Dkts. 188.  On September 6, 2019, Defendants replied.  Dkts. 197.

10                    **II.  FACTUAL BACKGROUND[1]**

11        HP Tuners is a Nevada limited liability company that "provides complete, cost

12    effective automotive tuning and data acquisition solutions for enthusiasts and

13    professional shops."  Dkt. 35, ¶¶ 5, 12.  HP Tuners' "business includes but is not limited

14    to computer hardware and software designed for use in custom and/or pre-programmed

15    engine and transmission tuning and calibration applications for automobiles, trucks and

16    other types of vehicles (including but not limited to ATVs, snowmobiles and

17    watercraft)."  Dkt. 189, ¶ 6.  Keith Prociuk ("Prociuk"), HP Tuners' owner, asserts that

18    HP Tuners' "confidential and proprietary software, source code, license key generator

19    and offerings have been developed and extensively refined by [HP Tuners] at a

20

---

21        [1] HP Tuners argues that Defendants' motion "violates Rule 56 and LR 56.1 by virtue of their
failure to include a statement of material facts which is mandated by the rule."  Dkt. 188 at 1 n.1.  Neither
rule, however, requires such a statement of fact.  Moreover, Defendants' motion is based on the argument

22    that HP Tuners lacks evidence to support its claims against Defendants.

1  substantial cost and effort and constitute confidential information and valuable trade

2  secrets of [HP Tuners]."  *Id.* ¶ 10.

3          Regarding HP Tuners' claims for trade secret misappropriation, Prociuk declares

4  that HP Tuners "owned and possessed confidential and proprietary documents and data

5  containing trade secrets, including but not limited to source code, the [HP Tuners]

6  proprietary key generator and MPVI communication protocol documents."  *Id.* ¶ 14.  He

7  also declares that a former owner of HP Tuners "provided Defendants with copies of and

8  access to" this information.  *Id.* ¶ 16.

9          HP Tuners has submitted the expert report of Dr. Ernesto Staroswiecki

10  ("Staroswiecki") in support of its claims.  Staroswiecki qualifies his opinions by stating

11  that he evaluated "intellectual property (IP) claimed by [HP Tuners] as trade secrets or

12  otherwise protected property."  Dkt. 192-2 at 5.  Staroswiecki opines that (1) "Syked had

13  access to IP that [HP Tuners] claims are trade secrets," (2) "Syked disclosed to third

14  parties IP that [HP Tuners] claims are trade secrets," (3) "Syked used in their products IP

15  that [HP Tuners] claims are trade secrets," and (4) "Syked benefitted from access to [HP

16  Tuners'] trade secrets."  *Id.* at 6.

17          Sykes-Bonnett, owner of Syked, asserts that he formed Skyed in 2014 after

18  independently developing a software program to tune cars.  Dkt. 182-1, ¶ 2.  Sykes-

19  Bonnett declares that his program was developed long before HP Tuners claims he

20  received a copy of HP Tuners' code.  *Id.* ¶ 2.  He declares that, although his code has

21  undergone revisions, the alterations were based on third-party software and not HP

22  Tuners' code.  *Id.* ¶¶ 4–5.

# III.  DISCUSSION

## A.    Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically

1    attested by that party contradict facts specifically attested by the moving party.  The

2    nonmoving party may not merely state that it will discredit the moving party's evidence

3    at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

4    *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

5    nonspecific statements in affidavits are not sufficient, and missing facts will not be

6    presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

7         It is the rare case when parties dispute the well-established standard for summary

8    judgment.  Defendants assert that "[o]n an issue as to which the nonmoving party will

9    have the burden of proof . . . the movant can prevail merely by pointing out that there is

10   an absence of evidence to support the nonmoving party's case."  Dkt. 182 at 2 (citing

11   *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007)).  *Soremekun* is an

12   unusual opinion because the panel affirmed "the district court's well-reasoned Order

13   Granting Defendant Thrifty Payless, Inc.'s Motion for Summary Judgment" in a one-

14   sentence order and then attached that order as an appendix to the opinion.  Regardless,

15   the underlying order cited *Celotex* for the proposition Defendants assert.  *See Soremekun*,

16   509 F.3d at 984.  In *Celotex*, the Supreme Court stated that it "find[s] no express or

17   implied requirement in Rule 56 that the moving party support its motion with affidavits

18   or other similar materials *negating* the opponent's claim."  *Celotex*, 477 U.S. at 323.

19   Moreover, "[o]ne of the principal purposes of the summary judgment rule is to *isolate*

20   *and dispose of factually unsupported claims or defenses*, and we think it should be

21   interpreted in a way that allows it to accomplish this purpose."  *Id.* at 323–24 (emphasis

22   added).

ORDER - 5

1    HP Tuners contends that Defendants' recitation of the summary judgment standard

2  is partly in error.  Dkt. 188 at 11–12.  HP Tuners seems to confuse whether it must

3  produce sufficient evidence to prove its claims with whether Defendants must produce

4  any evidence at all.  Regarding the first issue, the Court agrees with HP Tuners that the

5  issue at summary judgment is not whether the party has produced sufficient evidence to

6  prevail at trial.  Instead, the Court considers whether the party has produced sufficient

7  evidence to create a material question of fact that must be resolved by a fact-finder.

8    However, on the second issue, Defendants' initial burden is only to establish that

9  HP Tuners has failed to produce evidence on at least one essential element of its claim.

10  HP Tuners argues that "Defendants' reference to [*Soremekun*] for the proposition that

11  summary judgment may be granted where 'the nonmoving party lacks evidence to

12  support its case' is completely distinguishable."  Dkt. 188 at 12.  *Soremekun* is not

13  distinguishable on this point because, in *Celotex*, the Supreme Court held exactly what

14  Defendants assert, which is summary judgment is appropriate for a party that does not

15  bear the burden at trial if the party that does bear the burden lacks some evidence to

16  support every element of its claim.  For example, the parties may agree that HP Tuners

17  has material that is considered a trade secret, but if HP Tuners has no evidence that

18  Defendants misappropriated that specific trade secret in any manner, then summary

19  judgment is appropriate because trial is unnecessary when evidence is lacking on an

20  essential element of HP Tuners' claim.  Having clarified these issues, the Court agrees

21  with HP Tuners on one additional issue.

22

1    Defendants move for summary judgment but fail to specify which of HP Tuners'

2  eight claims they seek to have the Court dismiss.  For example, Defendants' introduction

3  states that they "hereby move for partial summary judgment that the automobile tuning

4  software created, distributed, used or otherwise commercialized by Syked Tuning does

5  not contain any purported trade-secrets [sic] or other intellectual property claimed by [HP

6  Tuners] and that Syked Tuning's continued commercialization of its tuning software

7  infringes no legitimate right of HP Tuners."  Dkt. 182 at 1.  Defendants' conclusion

8  "respectfully request that this Court enter partial summary judgment that the Syked

9  Tuning software at issue in this matter does not infringe any right of HP Tuners and that

10  all claims based on such allegations be dismissed from this action."  *Id.* at 8.  Defendants

11  essentially request that HP Tuners or the Court set out the elements of HP Tuners' claims

12  and determine which ones are based solely on the allegation that Syked's software

13  includes HP Tuners' trade secrets.  HP Tuners responds that "it appears as if partial

14  summary judgment is only being sought in connection with Count II, Count III and Count

15  IV of the First Amended Complaint."  Dkt. 188 at 1 n.1.  In reply, Defendants fail to

16  clarify which claims they attack.  *See* Dkt. 197 at 1 ("The question presented is whether

17  HP Tuners can on the evidence adduced to date show that Syked ECU Tuning improperly

18  incorporates HP Tuners' alleged trade-secrets in its client-based software.").  The

19  generality with which Defendants address HP Tuners' claims is sufficient reason alone to

20  deny the motion.  The Court, however, will attempt to address some disputed issues.

21

22

1    **B.      Incorporation of Trade Secrets**

2          Defendants move for partial summary judgment on the issue of "whether Syked

3    ECU Tuning improperly incorporates HP Tuners' alleged trade-secrets in its client-based

4    software." Dkt. 197 at 1.  On that specific question, the only relevant evidence is

5    Staroswiecki's report because the other alleged misappropriations are irrelevant to the

6    question.  For example, HP Tuners submitted evidence that Sykes-Bonnett improperly

7    obtained HP Tuners' key generator and improperly distributed keys to unlock HP Tuners'

8    product in exchange for various items.  Dkt. 188 at 8 ("Sykes-Bonnett possessed HPT's

9    proprietary key generator tool for use with HPT's interfaces and, in fact, generated HPT

10   application keys for third parties for profit.") (citing Sykes-Bonnett's deposition and

11   declarations in the record).  Although this evidence appears to fully support a claim for

12   misappropriation of a trade secret, it has nothing to do with the allegation that Syked's

13   software contains HP Tuners' secrets.  Similarly, HP Tuners claims that Sykes-Bonnett

14   improperly obtained HP Tuners' MPVI communication protocol documents.  Dkt. 188 at

15   7 (HP Tuner's former owner Ken Cannata "provided Kevin Sykes-Bonnett with [HP

16   Tuners'] source code files, proprietary key generator and MPVI communication protocol

17   documents.").  Neither HP Tuners nor Staroswiecki explain what MPVI stands for or

18   how these documents or information within these documents was incorporated into

19   Skyed's software.  Thus, to the extent that HP Tuners' claims are based on the misuse of

20   its key generator or MPVI communication protocol documents, the Court concludes that

21   the claims are outside the scope of this summary judgment motion.

22

1          Regarding HP Tuners' source code, there appears to be at least two aspects to HP

2    Tuners' claims.  First, misappropriation includes acquisition by improper means as well

3    as use without consent.  *See, e.g.*, RCW 19.108.010(2).  Turning to HP Tuners'

4    complaint, the majority of the allegations are based on Defendants' improper acquisition

5    of HP Tuners' code and use of that code to improperly manipulate HP Tuners' software.

6    For example, in support of its Washington trade secret act claim, HP Tuners alleges as

7    follows:

8              Without authorization by HPT, upon information and belief, a third
         party (who was a former employee of HPT) provided Defendants with
9         copies of and access to confidential and proprietary information of HPT,
         including its confidential and proprietary source code.
10             The confidential and proprietary source code wrongfully obtained
         and possessed by Defendants gives Defendants, and those active in concert
11        with them, the ability to modify HPT's confidential and proprietary source
         code to allow users to bypass all licensing checks and prompts, thus
12        enabling HPT's users to use the software on any vehicle they wish without
         paying any licensing fees to HPT.
13             ***
         In violation of law, Defendants have misappropriated HPT's trade
14        secrets by modifying HPT's confidential and proprietary software to bypass
         all licensing checks and prompts to obtain "free" tuning credits from HPT.
15             Defendants, acting in concert with others, have wrongfully accessed,
         trespassed, engineered and/or hacked HPT's software, systems and source
16        code to remove licensing restrictions from HPT's VCM Suite Software to
         distribute it for their own profit as well as to cause harm to HPT, which
17        Defendants view as a competitor.
              Moreover, Defendants, acting in concert with others, accomplished
18        this via various means including adding extra licenses to existing interfaces
         and reselling them, by logging in via remote desktop to customer machines
19        to enter in a hacked license key and by selling a version of hacked software
         with licensing defeated.
20             ***
         Likewise, Defendants have misappropriated HPT's confidential and
21        proprietary information by attempting to sell a cloned HPT interface with
         hacked credits on the internet.

22

1    Dkt. 35, ¶¶ 112, 113, 117–119, 121.  Thus, the majority of HP Tuners' claim is outside

2    the scope of Defendants' motion.

3         Second, HP Tuners' allegation based on copying is limited to an identifiable

4    section of its source code.  Specifically, HP Tuners alleges that "Defendants have

5    misappropriated HPT's parameter lists without HPT's authorization and by having

6    incorporated them into Defendants' own software."  *Id.* ¶ 120.[2]  Staroswiecki identified

7    two direct references to HP Tuners' physical adapter cable in Syked's source code as

8    follows: ("HPT00021A") and ("HPT00021B").  Dkt. 132-2, ¶ 31.  Staroswiecki

9    discussed with HPT personnel and confirmed that these labels correspond to HPT cables.

10   Based on these facts, Staroswiecki opines that: "To interface or communicate with HPT

11   hardware would have required use of HPT's communication protocols. Therefore, to

12   conduct these communications that Syked software was able to manage implies that

13   Syked was using HPTs communications protocols."  *Id.* ¶ 33.  Thus, HP Tuners has

14   submitted evidence that Skyed copied or used HP Tuners' product with what appears to

15   be parameters within the communication protocols.

16        Turning to the parties' briefs, they dispute what HP Tuners can claim as a trade

17   secret and whether HP Tuners is able to prove that it possesses trade secrets.  Although

18   the parties engage in these disputes, neither directly addresses whether the specific

19   information Staroswiecki identifies either is material that may be protected as a trade

20   secret as a matter of law, *see, e.g.*, 18 U.S.C. § 1839(3), or whether HP Tuners can

21

_____

22        [2] Based on the Court's review of the complaint, this appears to be the only allegation related to software copying in any of HP Tuners' claims.

1  establish as a matter of fact whether it derives economic value from this information and

2  properly protected disclosure of this information, *Veritas Operating Corp. v. Microsoft*

3  *Corp.*, C06-0703JCC, 2008 WL 474248, at *3 (W.D. Wash. Feb. 4, 2008). The Court

4  declines to do so *sua sponte* and is satisfied that Defendants have failed to meet their

5  burden to establish that no questions of material fact exist as to Defendants' copying of

6  HP Tuners' trade secrets. Therefore, the Court denies Defendants' motion.

7  **C.    Other Considerations**

8  The parties should be informed that there is another civil case set for trial on their

9  trial date of October 29, 2019. Although the Court usually allows the case that has been

10  pending the longest to proceed to trial first, which is this case, the Court is seriously

11  considering delaying this matter to let the other matter proceed to trial first. *See*, *Dietz v.*

12  *Bouldin*, 136 S. Ct. 1885, 1891 (2016) ("a district court possesses inherent powers that

13  are 'governed not by rule or statute but by the control necessarily vested in courts to

14  manage their own affairs so as to achieve the orderly and expeditious disposition of

15  cases.'") (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). Based on the

16  current state of affairs, it appears that this matter is nowhere near ready for trial while the

17  other matter presents specific and particularized issues with multiple disclosed experts

18  and would be a more efficient use of the Court's and the jury's time. Moreover, the

19  parties have informally contacted the Court regarding problems associated with preparing

20  a joint trial brief, which is unusual in that most parties can at least agree on what the

21  pending trial will entail. Therefore, unless the parties' pretrial materials, such as the trial

22

ORDER - 11

1    briefs or pretrial order, convince the Court that this matter is truly ready for trial, the

2    matter may be set over while the Court hears the other pending matter.

3                                          **IV.   ORDER**

4          Therefore, it is hereby **ORDERED** that Defendants' motion for partial summary

5    judgment, Dkt. 182, is **DENIED**.

6          Dated this 4th day of October, 2019.

7

8                                                    _____

9                                                    BENJAMIN H. SETTLE
                                                     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 12