THE HONORABLE BENJAMIN H. SETTLE

1

2

3

4

5

6

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

HP TUNERS, LLC, a Nevada limited
liability company,

Cause No. 3:17-cv-05760 BHS

9

Plaintiff,

**DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

10

v.

<u>Note On Motion Calendar:</u>
<u>June 25, 2021</u>

11

12

KEVIN SYKES-BONNETT, SYKED ECU
TUNING INCORPORATED, a Washington
corporation, and JOHN MARTINSON

**Oral Argument Requested**

13

Defendants.

14

15

16

## I.       INTRODUCTION

17

18

19

20

21

Defendants Kevin Sykes-Bonnett, John Martinson and Syked ECU Tuning, Inc.
(collectively "Syked Tuning") hereby move for partial summary judgment that the subject
automobile tuning software created, distributed, used or otherwise commercialized by Syked
Tuning *does not* contain any purported trade-secrets or other intellectual property claimed by
Plaintiff HP Tuners, LLC ("HP Tuners") and that Syked Tuning's continued
commercialization of its tuning software infringes no legitimate right of HP Tuners.

22

23

24

25

26

27

In its earlier motion for summary judgment filed July 31, 2019 (Dkt. #182), Syked
Tuning argued and established (1) that HP Tuners has been unwilling (or more likely unable)
to articulate with any degree of specificity what its purported trade-secrets are, (2) that Syked
Tuning developed its tuning software with the aid of third-parties entirely independent of HP
Tuners, and (3) that a detailed inspection of Syked Tuning's tuning software by HP Tuner's
own experts, following a three-day review failed to identify any "copying" or other use of HP
Tuners' alleged trade-secrets or proprietary information in Syked Tuning's tuning software.

28

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

In short, despite months of scorched earth discovery, full access to Syked Tuning's software and source code, and a detailed review by highly credentialed experts hired by HP Tuners, HP Tuners is unable (1) to identify exactly what its supposed trade-secrets are and (2) point to where or how these supposed trade-secrets are in the Syked Tuning software.

On October 4, 2019, this Court issued an order (Dkt. #212) denying Syked Tuning's motion identifying various ambiguities the parties had not addressed and that precluded granting Syked Tuning's motion at that time.

On October 9, 2019, this Court issued an additional order (Dkt. #225) wherein the Court correctly noted that, "in its trial brief, HP Tuners, relying on the same expert report, repeats the same high-level general accusations that Defendants copied HP Tuners's trade secrets without specifically identifying what trade secrets were copied." (Dkt. #225 at p. 2.) In that same order, the Court further noted that, "These accusations lack sufficient detail to put Defendants on notice of what was copied or convince the Court that there is a concrete dispute for trial." (Dkt. #225 at p. 3.) Additionally and importantly, the Court noted that, "So far, the only specific copying evidence the Court will allow are the two files identified in the Court's order, which are ('HPT00021A') and ('HPT00021B')." *Id.* Finally, the Court expressly and clearly ordered that, "If HP Tuners intends to submit any additional evidence of copying, *it must disclose to Defendants and the Court exactly what secrets were copied." Id.* (Emphasis supplied.)

More than eighteen months later, HP Tuners has neither submitted any additional evidence of copying nor has it disclosed exactly what trade secrets were copied. Furthermore, the *only* "evidence" of "copying" remains limited to the "two files identified in the Court's order, which are ('HPT00021A') and ('HPT00021B')."

As will be developed herein, these two files *are not* "trade-secrets" of HP Tuners, but, rather, are *non-secret* instructions developed by a third-party chip manufacturer. These instructions are described in freely available published data sheets and instruction manuals and are neither secret nor the property of HP Tuners. Because these instructions are not, and cannot be trade-secrets, much less trade-secrets owned by HP Tuners, any trade-secret claim by HP Tuners based on these instructions has no basis in either law or fact. As these two instructions remain "the only specific copying evidence [that] the Court will allow," HP Tuners simply cannot maintain any legitimate claim that the Syked Tuning software somehow

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

contains its trade-secrets.  Given the absolute dearth of any evidence to support HP Tuners' claim, partial summary judgment is not only appropriate, but demanded as to HP Tuners' claims for trade-secret misappropriation.

## II.    THE CLAIMS AT ISSUE

HP Tuners' First Amended Complaint (Dkt.#35), which remains operative here, alleges eight separate counts.  Of these, Counts II, III and IV are based on allegations that Syked Tuning misappropriated HP Tuner's trade-secrets and incorporated them into Syked Tuning's own software product.

In particular, Count II of the First Amended Complaint alleges "Violation of the Defend The Trade Secrets Act, 18 U.S.C. § 1836 [and] Washington Uniform Trade Secret Act, RCW 19.108" and, at ¶¶ 105 and 107, alleges (1) that "Defendants have missappropriated HPT's parameter lists without HPT's authorization and by having incorporated them into Defendants' own software" and (2) that, "Such use of HPT's confidential and proprietary trade secret information constitutes misappropriation under the DTSA."

Count III of the First Amended Complaint alleges "Violation of the Washington Uniform Trade Secret Act, RCW 19.108" and, at ¶¶ 120 and 122, alleges (1) that, "Defendants have misappropriated HPT's parameter lists without HPT's authorization and by having incorporated them into Defendants' own software" and (2) that, "Such use of HPT's confidential and proprietary trade secret information constitutes misappropriation under the Washington Uniform Trade Secrets Act, RCM 19.108."

Count IV of the First Amended Complaint alleges "Violation of the Illinois Trade Secrets Act, RCW 765 ILCS 1065/1. Et Seq., and, at ¶¶ 135 and 137, alleges (1) that, "Defendants have misappropriated HPT's parameter lists without HPT's authorization and by having incorporated them into Defendants' own software" and (2) that, "Such use of HPT's confidential and proprietary trade secret information constitutes misappropriation under the Illinois Trade Secrets Act."

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT                    Page 3
Cause No. 17-CV-05760-BHS

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

### III      EVIDENCE RELIED UPON

Evidentiary support for this motion is provided in the accompanying Declaration of John Martinson and Exhibits A-F attached thereto.  Further evidentiary support for this motion is provided in the previously filed Declarations of  Kevin Sykes-Bonnett (Dkt. # 182-1), John Martinson (Dkt. # 198) and Philip P. Mann (Dkt. # 182-2) and the exhibits attached thereto.  Still further evidentiary support for this motion is provided by the second Declaration of Philip P. Mann filed September 6, 2019 (Dkt. #196) and the confidential exhibits filed under seal in connection therewith (Dkt. ## 196-1, 196-2 & 196-3).

### IV      LEGAL STANDARDS

**A.      Summary Judgment**

The applicable legal standards have been clarified in and by this Court's October 4, 2019 Order (Dkt. #212) at pages 4-7.  In relevant part, that Order clarifies that, "The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)."  Furthermore, "There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply 'some metaphysical doubt')."  Additionally, "The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)*).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888–89 (1990)."

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT                    Page 4
Cause No. 17-CV-05760-BHS

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

In the context of this case, this Court's October 4, 2019 Order further clarifies that, "[Syked Tuning's] initial burden is only to establish that HP Tuners has failed to produce evidence on at least one essential element of its claim." (Order at p. 6) and that, "[I]f HP Tuners has no evidence that Defendants misappropriated that specific trade secret in any manner, then summary judgment is appropriate because trial is unnecessary when evidence is lacking on an essential element of HP Tuners' claim." *Id.*

Summary judgment is appropriate if, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, the moving party shows that "there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Torres v. City of Madera,* 648 F.3d 1119, 1123 (9th Cir. 2011). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail by pointing out that the nonmoving party lacks evidence to support its case. *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007).

If the moving party meets its initial burden, the opposing party must then set out "specific facts" showing a genuine issue for trial in order to defeat the motion. *Id.* "The mere existence of a scintilla of evidence in support of the nonmoving party's position" is not sufficient; this party must present probative evidence in support of its claim or defense. *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir. 2001). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable finder of fact could find for the nonmoving party. *In re Barboza,* 545 F.3d 702, 707 (9th Cir. 2008).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 415 U.S. 574, 586-87  (1986); see also *Podohnik v. U.S. Postal Service,* 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the

DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT   Page 5
Cause No. 17-CV-05760-BHS

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 411 U.S. 242, 247-48 (1986).

**B.     Trade-Secrets**

HP Tuners' claims for theft of trade-secret are brought under (1) the "Defend The Trade Secrets Act, 18 U.S.C. § 1836" (Count II), (2) the "Washington Uniform Trade Secret Act RCW 19.108" (Count III) and (3) the "Illinois Trade Secrets Act, 765 ILCS 1065/1, Et. Seq." (Count IV).

**1.     The "Defend Trade Secrets Act," 18 U.S.C. § 1836**

Count II of HP Tuners' Amended Complaint alleges violations of the "Defend the Trade Secrets Act, 18  U.S.C. § 1836" (hereinafter, "DTSA").  Section 1836 (b)(1) of the Act specifies that, "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  The term, "trade secret," is defined in 18 U.S. Code § 1839 as follows:

(3) the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

(A) the owner thereof has taken reasonable measures to keep such information secret; **and**

(B) **the information derives independent economic value,** actual or potential, **from not being generally known to, and not being readily ascertainable through proper means by, another person** who can obtain economic value from the disclosure or use of the information;

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT                    Page 6
Cause No. 17-CV-05760-BHS

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

18 U.S.C. § 1839 (3) (emphasis supplied).

Similarly, the term, "misappropriation" is defined by 18 U.S.C § 1839 (5)(A) as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." "Improper means," in turn, is defined by 18 U.S.C § 1839 (6) as follows:

(6) the term "improper means"—

(A) includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means; and

(B) **does not include reverse engineering, independent derivation, or any other lawful means of acquisition**;

18 U.S.C. § 1839 (6) (emphasis supplied).

Importantly and of significance here, under its express terms, HP Tuners cannot base a claim for violation of the DTSA on supposed "trade secret" information that is either "generally known to, [or] readily ascertainable through proper means by, another person" or that Syked Tuning acquired through, "reverse engineering, independent derivation, or any other lawful means of acquisition."

## 2.    The Washington Uniform Trade Secret Act, RCW 19.108

Count II and III of HP Tuners' Amended Complaint allege violations of the "Washington Uniform Trade Secret Act, RCW 19.108."  Under RCW 19.108.010 (4):

"Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(a) Derives independent economic value, actual or potential, **from not being generally known to, and not being readily ascertainable by proper means by, other persons** who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT                    Page 7
Cause No. 17-CV-05760-BHS

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.8500

RCW 19.108.010 (4), (emphasis supplied).

RCW  19.108.010 (2) states, in part, that:

(2) "Misappropriation" means:

(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) Used improper means to acquire knowledge of the trade secret;

RCW 19.108.010 (2).

Finally, RCW 19.108.010 (1) states that, "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means..."

Again, HP Tuners cannot base a claim for violation of the Washington Uniform Trade Secret Act on supposed "trade secret" information that is either "generally known to, [or] readily ascertainable through proper means by, other persons."

**3.      The Illinois Trade Secrets Act, 765 ILCS 1065/1, et. seq.**

Count IV of HP Tuners' Amended Complaint alleges violation of the "Illinois Trade Secrets Act, 765 ILCS 1065/1, Et. Seq."  Under the Illinois Trade Secrets Act:

'Trade secret' means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:

(1) is sufficiently secret to derive economic value, actual or potential, **from not being generally known to other persons** who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT                    Page 8
Cause No. 17-CV-05760-BHS

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

765 ILCS 1065/2 (d) (emphasis supplied).

The Illinois Trade Secrets Act further states in part that, ""Misappropriation" means: (1) acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means…" 765 ILCS 1065/2 (b)(1).

Finally, the Illinois Trade Secrets Act states that "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means. **Reverse engineering or independent development shall not be considered improper means.**" 765 ILCS 1065/2 (a) (emphasis supplied).

Again, HP Tuners cannot base a claim for violation of the supposed "trade secret" information that is acquired through "Reverse engineering or independent development."

### 4.   Relevant Case Law Confirms That These Statutes Mean What They Say

Despite these separate acts, the elements of trade-secret theft are all essentially the same.  A necessary requirement in all cases is that there, in fact, be a trade-secret.  The existence of a trade-secret is something the claimant, i.e. HP Tuners, must prove as part of its case in chief.  Courts applying the three three trade secret statutes HP Tuners asserts and relies on in this action consistently hold that trade secret protection does not extend to supposed trade secrets that are already known and/or readily ascertainable through independent development or reverse engineering.

For information to qualify as a trade secret, it must be secret. *Confederated Tribes of Chehalis Reservation v. Johnson,* 135 Wn.2d 734, 749, 958 P.2d 260 (1998); *Buffets, Inc. v. Klinke,* 73 F.3d 965, 967–68 (9th Cir. 1996) (applying the Washington UTSA).  Information is not secret if it is in the public domain, may be readily ascertainable from another source, or is not materially different from a competitor's information. *Robbins, Geller, Rudman & Dowd, LLP v. State,* 179 Wn. App. 711, 722, 328 P.3d 905 (2014); *Plymouth Grain Terminals, LLC v. Lansing Grain Co., LLC,* No. 10-CV-5019-TOR, 2013 WL 12177037, at *15 (E.D. Wash. Dec. 20, 2013) (applying Washington state law); *McCallum v. Allstate Prop.*

1  & Cas. Ins. Co., 149 Wn. App. 412, 426 (2009). "It is axiomatic that information widely

2  disclosed to the public is not a trade secret." *Wang v. Golf Tailor,* LLC, No. 17-cv-00898-LB,

3  at *7 (N.D. Cal. July 5, 2017) (applying Defense of Trade Secret Act).  *See also Ultimax*

4  *Cement Mfg. Corp. v. CTS Cement Mfg. Corp.,* 587 F.3d 1339, 1355 (Fed. Cir. 2009) ("[o]nce

5  the information is in the public domain and the element of secrecy is gone, the trade secret is

6  extinguished.").

7      "For a trade secret to exist, the underlying information must not be readily

8  ascertainable by proper means from another source." *Plymouth Grain Terminals,* 2013 WL

9  12177037, at *15. Under the UTSA, "the existence of a trade secret [is] measured by the

10  accessibility of the information within a given industry, *i.e.*, the persons who can obtain

11  economic value from its disclosure or use." *Precision Moulding & Frame, Inc. v. Simpson*

12  *Door Co.,* 77 Wash. App. 20, 26–27, 888 P.2d 1239, 1243 (1995).

13      When courts face the question of whether information is "reasonably ascertainable,"

14  they will look "to the degree of time, effort, and expense required of a defendant to acquire or

15  reproduce the alleged trade secret information by other proper means." *Amoco Prod. Co. v.*

16  *Laird,* 622 N.E.2d 912, 918 (1993) (interpreting the phrase "readily ascertainable" in

17  Indiana's UTSA). "[A] trade secret may exist where the duplication of effort was time-

18  consuming, relatively time-consuming and expensive, or producible after significant time,

19  effort and expense." *Id.* (citations omitted). Research must be fairly inconvenient or difficult

20  for trade secret status to be conveyed. *Id.* "A plaintiff may not ground a misappropriation

21  claim on matters that are common or obvious in the relevant industry." *Think Village-Kiwi,*

22  *LLC v. Adobe Sys., Inc.,* No. C 09–04166, 2009 WL 3837270 (N.D. Cal. Nov. 16, 2009)

23  (interpreting "readily ascertainable" in California's UTSA).

24      "A party asserting a trade secret claim bears the burden of 'proving that legally

25  protectable secrets exist.'"ʼ  *Cascade Designs Inc. v. Windcatcher Tech. LLC,* No. C15-

26  1310TSZ, 2016 WL 374564, at *2 (W.D. Wash. Feb. 1, 2016) (quoting *Boeing Co. v.*

27  *Sierracin Corp.,* 738 P.2d 665, 674 (Wash. 1987)).  To demonstrate the existence of a

28

protectable trade secret, a plaintiff must first identify the alleged trade secret and then show: (1) that the information derives independent economic value from not being generally known or readily ascertainable to others who can obtain economic value from knowledge of its use, and (2) that reasonable efforts have been taken to maintain the secrecy of the information. *Precision Moulding & Frame, Inc. v. Simpson Door, Co.,* 77 Wash.App. 20, 25 (1995).

To prove ownership of a trade secret, plaintiffs "must identify the trade secrets and carry the burden of showing they exist." *MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 522 (9th Cir. 1993). "The plaintiff 'should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade.' " I*max Corp. v. Cinema Techs., Inc.,* 152 F.3d 1161, 1164 (9th Cir. 1998). Plaintiffs must "clearly refer to tangible trade secret material" instead of referring to a "system which *potentially* qualifies for trade secret protection." *Id.* at 1167 (emphasis in original). Plaintiffs may not simply rely upon "catchall" phrases or identify categories of trade secrets they intend to pursue at trial. *See Imax, 1*52 F.3d at 1167; *X6D Ltd. v. Li-Tek Corps. Co.,* No. 10-cv-2327-GHK-PJWx, 2012 WL 12952726, at *6 (C.D. Cal. Aug. 27, 2012). It is inadequate for plaintiffs to "cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information." *X6D Ltd. v. Li-Tek Corps. Co.,* 2012 WL 12952726, at *6 (internal quotations omitted); *see also* IDX Sys. Corp. v. Epic Sys. Corp., *165 F. Supp. 2d 812, 819 (W.D. Wis. 2001)* ("Long lists of general areas of information containing unidentified trade secrets are not substitutes for particularized and concrete trade secrets.").

Identifying trade secrets with sufficient particularity is important because defendants need "concrete identification" to prepare a rebuttal. *Imax,* 152 F.3d at 1167. Courts and juries also require precision because, especially where a trade secrets claim "involves a sophisticated and highly complex" system, the district court or trier of fact will not have the requisite expertise to define what the plaintiff leaves abstract. *Id.*

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT                    Page 11
Cause No. 17-CV-05760-BHS

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

**ARGUMENT**

**A.      HP Tuners Has Not Yet Identified What Its Purported Trade-Secrets Are.**

As noted in this Court's October 9, 2019 Order, HP Tuners' accusations "lack sufficient detail to put Defendants on notice of what was copied or convince the Court that there is a concrete dispute for trial."  (Dkt. #225 at p. 3.)  As further noted by the Court, "HP Tuners...repeats the same high-level general accusations that Defendants copied HP Tuners's trade secrets without specifically identifying what trade secrets were copied." (Dkt. #225 at p. 2.)  The Court further correctly noted that, "an expert's vague opinion that 'some portions' of code are similar is not admissible evidence to support a claim for trade secret misappropriation," (Dkt. #225 at p. 2) and that, "So far, the only specific copying evidence the Court will allow are the two files identified in the Court's order, which are ('HPT00021A') and ('HPT00021B')." *Id.*  Finally, the Court expressly ordered that, "If HP Tuners intends to submit any additional evidence of copying, it must disclose to Defendants and the Court exactly what secrets were copied."  *Id.*

Despite this clear directive from the Court, HP Tuners has neither disclosed "to Defendants and the Court exactly what secrets were copied" and has submitted no "additional evidence of copying."  In a transparent attempt to seek reconsideration of this Court's clear directive, HP Tuners, on November 13, 2019, filed what it styled its "Supplemental Trial Brief" (Dkt. #236).  In that "supplemental" brief, HP Tuners purported to identify the following as its supposed "trade secrets":

- VCM Suite Software;

- Parameters List;

- Source Code;

- MPVI Communications Protocol;

- Communication Algorithms; and

- Application Key Generator.

Significantly, HP Tuners never specifies what these supposed "trade secrets" even are beyond merely giving them a name.  As correctly noted by the Court in its October 4, 2019 Order, "Neither HP Tuners nor Staroswiecki explain what MPVI stands for or how these documents or information within these documents was incorporated into Skyed's software."  (Dkt. # 212 at p. 8).  This remains true today.

Similarly, simply saying "VCM Suite Software," "Parameters List," "Source Code," "Communication Algorithms" and "Application Key Generator" comes nowhere close to meeting this Court's October 9, 2019 clear directive that, "If HP Tuners intends to submit any additional evidence of copying, *it must disclose to Defendants and the Court exactly what secrets were copied.*" (Dkt. #225 at p. 3, emphasis supplied.)

Furthermore, the "VCM Suite Software" is not, and cannot be, "secret."  This software is, in fact, publicly available for download by anyone from HP Tuner's own server at https://www.hptuners.com/downloads/.

HP Tuners did not invent "source code."  Nor did it invent "parameters lists," "communications algorithms," "communications protocols" or "application key generators." Without specifying far more detail than it has, HP Tuners comes nowhere close to establishing that any of these purported "trade secrets" meet the definitional requirements of the DTSA, or the Washington and Illinois trade secret laws that HP Tuners asserts here.

**B.**    **With One Exception, HP Tuners' Expert Report Does Not Even Purport To Show Where These Alleged "Trade Secrets" Are Copied Into Or Otherwise Contained In The Syked-Tuning Software.**

Despite HP Tuners' utter failure to identify its supposed "trade secrets" beyond "the same high-level general accusations that Defendants copied HP Tuners's trade secrets without specifically identifying what trade secrets were copied" this Court found inadequate before (Dkt. #225 at p.2), the fact remains that HP Tuners' *own expert,* Dr. Staroswiecki, has nowhere in his expert report identified where these alleged "trade secrets" are actually found in the accused Syked Tuning software.  HP Tuners' unsupported arguments notwithstanding,

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT                               Page 13
Cause No. 17-CV-05760-BHS

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

its *own expert* has thus been unable to support any claim that these supposed "trade secrets" were somehow incorporated into the accused Syked Tuning software.

A review of Dr. Staroswiecki's expert report reveals that nowhere in his report does Dr. Staroswiecki even mention the terms, "MPVI," or "Parameters List," much less show where these are found in the Syked Tuning software.  Although the term, "VCM Suite source code" appears in paragraphs 23, 25 and 26 of Dr. Staroswiecki's report, such refers *only* to the undisputed fact that Defendant Kevin Sykes-Bonnett had received this information from a founder of HP Tuners and, in turn, shared it with another.  Significantly, Dr. Staroswiecki, in his report, *nowhere* identifies or otherwise discloses *where* this "VCM Suite source code" is copied into or otherwise appears in the Syked-Tuning software.  There is no evidence to support HP Tuner's claim that the Syked-Tuning software includes the "VCM Suite source code."

The term, "Application Key Generator" does not appear in the report either, and the term "Application Key" appears *only* in paragraph 27 of Dr. Staroswiecki's report wherein he states (incorrectly)[1] that, "Syked shared HP Tuners' software application keys with third parties via electronic means."  However, these "application keys" do not make up the Syked-Tuning software, are not part of the Syked-Tuning software, and are nowhere to be found in the Syked-Tuning software.   *Nowhere* in his report does Dr. Staroswiecki point to or otherwise show where these "application keys" are copied or otherwise found in the Syked-Tuning software.

C.   **The Two "Files" Identified In HP Tuners' Expert Report And Referenced In This Court's October 4, 2019 Order Are *Not* Trade Secrets Of HP Tuners.**

It is only in connection with the supposed "communications protocols" that Dr. Staroswiecki's expert report even begins to identify specific code in the Syked-Tuning software that is supposedly copied from HP Tuner's software.  In particular, Dr. Staroswiecki, at paragraphs 30-33 of his report, identifies only two lines of code "in the repository dated

---

1  The application keys were shared only by Mr. Sykes-Bonnett, not by Syked ECU Tuning.

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

2017-05-16," that he suggests, but nowhere actually states, were copied from HP Tuners' own source code.[2]

A review of Dr. Staroswiecki's report that addresses these two lines of code (i.e. ¶¶ 30-33) shows that Dr. Staroswiecki nowhere even claims that these lines of code originated or were contained in the HP Tuners' source code.  In particular, at ¶30 of his report, Dr. Staroswicki states that, "HPT developed a custom communications protocol," *but nowhere does he describe what that "communications protocol" is or otherwise identify what lines of code or other information actually make up that alleged, "custom communications protocol."*

Similarly, at ¶30 of his report, Dr. Staroswiecki states that, "Syked interfaced with HPT hardware," and that, "The variable ftStatus used by Syked in their cable communication file...contains direct reference to the HPT hardware."  Again, Dr. Staroswiecki does not state (nor can he) that (1) "interfacing" with HPT hardware somehow constitutes copying or other misappropriation of trade secrets or (2) that a "direct reference to the HPT hardware" does either.  Again, Dr. Staroswiecki's carefully worded report *never* actually states that, "*this* line of code from HP Tuner's software is copied into and appears at *this* location in the Syked-Tuning software" or words to that effect.  Dr. Staroswiecki does not say that because he *cannot* say that without committing perjury.

Paragraphs 32 and 33 of Dr. Staroswiecki's expert report also fail to identify where any of HP Tuner's alleged "trade secrets" are actually contained in the Syked-Tuning software.  Paragraph 32 states only that, "This code is used when a new USB device is detected to determine whether it is a valid connection it should be able to manage," and that, "The code above shows that connections it should be able to manage include connections to hardware labeled 'HPT00021A' and 'HPT00021B.'"  This states nothing more than that the Syked-Tuning software communicates with USB devices and that these USB devices might include HP Tuners' devices.  Again, Dr. Staroswiecki fails to identify any code that was

---

2  Significantly, HP Tuners has *never* disclosed to Defendants or their counsel the actual HP Tuners source code they claim was copied, and Dr. Staroswiecki does not include a copy of the source code as an exhibit in his Expert Report.

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

developed by HP Tuners and copied into the Syked-Tuning software. Nor has he established that HP Tuners has a legitimate right to prohibit third-party manufacturers, such as Syked-Tuning, from connecting to HP Tuners' devices.

Finally, Paragraph 33 of Dr. Staroswiecki's report states, without any support whatsoever, that, "To interface or communicate with HPT hardware would have required use of HPT's communication protocols." There is absolutely no stated basis for this bald assertion. More importantly (and as established below) it is simply not true. Even Dr. Staroswiecki hedges on this point by stating in the very next (and final) sentence of ¶33 that, "Therefore, to conduct these communications that Syked software was able to manage implies that Syked was using HPTs communications protocols." Using the weasel-word "implies" demonstrates that Dr. Staroswiecki, himself, was unable to assert with confidence that Syked-Tuning was, in fact, "using HPTs communications protocols," and there is absolutely no basis or even assertion that the Syked software ever "conducted these communications."

At the end of the day, all Dr. Staroswiecki's report establishes is that two lines of code he sets out in ¶31 of his report were found "in the repository dated 2017-05-16." Significantly, nowhere does he state that these lines of code were found in any of the later versions of the Syked-Tuning software he had access to and inspected. Nor does he even state that HP Tuners is the actual author of these lines of code. Most significantly, neither he nor anyone else even claims that these lines of code are "trade secrets" or otherwise "not readily ascertainable." He does not say these things because he *cannot* say these things and remain truthful.

**D.    The Two "Files" Identified In This Court's October 4, 2019 Order Denying Summary Judgment Are Not Even Secret, Much Less The Property Of HP Tuners**

As established by the accompanying declaration of John Martinson, who helped write and develop the Syked Tuning software, the two lines of code Dr. Staroswiecki identifies in ¶31 of his report were not, in fact, written by HP Tuners but, instead, (1) were written by a

third-party supplier, (2) were and remain readily available on the Internet, and (3) are in no way, shape or form "secret."

In particular, Mr. Martinson testifies that the two instructions identified in ¶31 of Dr. Staroswiecki's report can be obtained from the Application Note, AN_407 "D3XX .NET Programmers Guide" dated November 1, 2016 issued by Future Technology Devices International Limited ("FTDI") of Glasgow, United Kingdom, a maker of various interfaces for use with USB devices.   (Martinson Dec. ¶¶2,3, Exhibit A.)   At page 12 of the Programmer's Guide are instructions provided by FTDI as to how to use their "OpenBySerialNumber" command to enable communication with USB devices.   (Martinson Dec.¶3).   This   instruction   uses   the   general   command,   "FT_STATUS OpenBySerialNumber(string szSerialNumber)" which command is incorporated into prior versions of the Syked ECU Tuning software.   (Martinson Dec. ¶3).   The instructions identified in ¶31 of Dr. Staroswiecki's report are each derived from, and follow from, the general command instruction provided at page 12 of the Programmer's Guide.   *Id.* Accordingly, the instructions identified in ¶31 of Dr. Staroswiecki's report result simply following the directives given at page 12 of the Programmer's Guide and inserting the publicly available, non-secret identifiers "HPT00021A" and "HPT00021B," which are publicly available and can readily be ascertained following the procedures Mr. Martinson describes in detail in paragraphs 5-16 of his declaration and Exhibits B-F attached thereto. (Martinson Dec. ¶¶ 5-16).   As shown in Exhibits E and F to Mr. Martinson's Declaration, connecting a freely available HP Tuners "MPVI" cable to a standard Windows-based computer through a standard USB port and "clicking" on "Properties" ultimately returns, as the "Value" of the device, the character string, "USB\VID_040&PID_\HPT00021," which clearly includes the string, " HPT00021," identified in Dr. Staroswiecki's report.

Importantly, neither HP Tuners nor Dr. Staroswicki claims that these identifiers, namely, "HPT00021A" and "HPT00021B," are or even can be "trade secrets."   On the contrary, these are each pieces of publicly available information made available to the public

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT                              Page 17
Cause No. 17-CV-05760-BHS

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

by HP Tuners itself. (Martinson Declaration ¶4.) Not only does HP Tuners fail to claim that the instructions appearing at ¶31 of Dr. Staroswiecki's report are trade secrets of HP Tuners, they *cannot* make such a claim. (Martinson Dec. ¶17). The indisputable fact is that these instructions were written by Future Technology Devices International Limited ("FTDI") of Glasgow, United Kingdom, who made them public (and therefore not-secret) in their Application Note, AN_407 "D3XX .NET Programmers Guide" dated November 1, 2016. The indisputable fact is that the character string "HPT00021" is not, and cannot be, a trade secret but, rather, is information *HP Tuners itself* made public by including in the easily viewable "Properties" portion of the MPVI device it distributed to the public. Not only is there no evidence upon which a reasonable jury can find that these instructions are the "trade secrets" of HP Tuners, neither HP Tuners nor its expert even makes such a claim.

**E.   HP Tuners Has Not Even Claimed, Much Less Shown, That The Two "Files" Identified In This Court's October 4, 2019 Order "Derive Independent Economic Value...From Not Being Generally Known To, And Not Being Readily Ascertainable Through Proper Means By, Another Person."**

In addition to actual secrecy, a wholly separate and independent requirement under any of the DTSA, the Washington and Illinois trade secret laws asserted by HP Tuners in this case is that the alleged trade secret derive "independent economic value" from being secret. With respect to the two lines of code found by Dr. Staroswiecki and addressed by this Court in its October 2, 2019 Order, there is absolutely no explanation given by HP Tuners or its expert as to what these lines even are, much less than that they derive the requisite "independent economic value." Under any of the asserted trade secret statutes, HP Tuners must prove, in addition to these lines being "secret," that they also "derive independent economic value" as well. *See, Precision Moulding & Frame, Inc. v. Simpson Door, Co.,* 77 Wash.App. 20, 25 (1995). HP Tuners nowhere even claims these two lines derive such independent economic value, much less offer any evidence to support such a claim.

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT                                   Page 18
Cause No. 17-CV-05760-BHS

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

**F.      The Syked-Tuning Software Was Developed Independent Of HP Tuners**

As previously addressed in detail in Syked-Tunings' Reply In Support Of Its First Motion For Partial Summary Judgment (Dkt. #194) and the evidence provided in connection therewith, Syked-Tuning's President, Kevin Sykes-Bonnett, testified at deposition that Syked-Tuning developed the software at issue in this case by reference to confidential information of a third party (Dkt. # 194, p. 5, see also Docket No. 182-1, ¶¶ 2-5).  As also addressed in detail in Syked-Tunings earlier filed Reply, HP Tuners' own President, Kieth Prociuk, testified at deposition not only that it would *not* be a violation of HP Tuners' rights for Syked-Tuning to base its software on that of a third party, but that HP Tuners *itself* could have copied its own software from that same third-party source (Dkt. # 194, pp. 5-8, see also Docket No. 182-1, ¶¶ 2-5).

To the extent Dr. Staroswiecki's expert report claims (as yet unidentified) similarities in the "seed key" and "checksum" routines used by Syked-Tuning and HP Tuners, again, Mr. Sykes-Bonnett's unrefuted testimony that he developed the Syked ECU Tuning seed key and checksum routines using third party sources, combined with Mr. Prociuk's admission that HP Tuners, itself, might "possibly" have used these same sources itself, is more than ample explanation for any "similarities" that might exist.  Importantly, HP Tuners apparently failed to tell Dr. Staroswiecki of how it developed its own software and what third-party sources it "possibly" used in so doing.  Given that HP Tuners cannot positively discount the possibility that it used the same third-party source in developing its software that Syked ECU Tuning did, it cannot even be established who the actual creator of HP Tuners' software is, much less that it is, in fact, an actual creation of HP Tuners.  Again, it is basic law that HP Tuners cannot claim misappropriation as to alleged "trade secrets" it does not actually own.

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT                    Page 19
Cause No. 17-CV-05760-BHS

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

**G.     There Is No Evidence That Syked-Tuning "Misappropriated" Any "Trade Secret" Of HP Tuners**

After nearly four years, the fact remains that HP Tuners' own experts have been unable to identify where, if at all, any source code or other proprietary information of HP Tuners is found in the Syked-Tuning software.

The two instructions identified in ¶31 of Dr. Staroswiecki's report and which this Court has characterized as, "the only specific copying evidence the Court will allow," (Dkt. #225 at p. 3.) are, in fact, a combination of the non-secret, publicly available instructions of a third-party chip manufacturer, namely Future Technology Devices International Limited ("FTDI") of Glasgow, United Kingdom and the device "properties" that HP Tuners *itself* makes available to the public.  Because these instructions (1) are not developed or otherwise owned by HP Tuners, and (2) are not, in fact, "secret," they do not meet the definition of "trade secret" as set out in any of the DTSA, The Washington Uniform Trade Secret Act, RCW 19.108, or the Illinois Trade Secrets Act,  as interpreted by relevant case law. (See Section IV "LEGAL STANDARDS" above.)

**H.     Because There Is No Evidence That The Syked Tuning Software Was Either Copied From HP Tuners' Software Or Incorporated Any Purported "Trade-Secret" Owned By HP Tuners, Partial Summary Judgment Should Be Granted In Favor Of Syked Tuning With Respect To All Claims That The Syked Tuning Software Contains Or Incorporates Such "Secrets".**

With the exception of the two instructions identified in Paragraph 31 of Dr. Staroswiecki's expert report, which, as established herein are neither the property of HP Tuners nor "secret," the supposed "evidence" of trade secret misappropriation still remains "the same high-level general accusations that Defendants copied HP Tuners's trade secrets" which the law deems inadequate (Dkt. #225, p. 2).  Because there is no evidence upon which a reasonable jury can find (1) that HP Tuners has specifically identified what "trade secrets" it supposedly owns and (2) where those specifically identified "trade secrets" are found or otherwise present in the Syked-Tuning software, HP Tuners cannot, as a matter of law, establish the essential elements (namely existence and ownership of a "trade secret" and

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

1   "misappropriation" of the specifically defined "trade secret" as defined by the Federal and

2   two State statutes HP Tuners asserts in this action) needed to prevail.

3       Proving the existence of a trade-secret, and identifying with specificity what that

4   trade-secret is, is a necessary element of any trade-secret claim, whether brought under

5   Washington State Law, Illinois law, or Federal DTSA. "In order to survive summary

6   judgment, a plaintiff must present evidence creating a genuine issue of material fact that a

7   trade secret exists and was misappropriated by the defendant." *Fluke Corp. v. Milwaukee*

8   *Elec. Tool Corp.,* 162 Wn. App. 1040 (Wash. Ct. App. 2011); *Inteum Co. v. Nat'l Univ. of*

9   *Sing.,* 371 F. Supp. 3d 864, 877 (W.D. Wash. 2019) ("Thus, Plaintiff bears the burden of

10  establishing that each alleged trade secret is protected under the WUTSA through declarations

11  or affidavits providing concrete examples as to how the alleged trade secrets are novel and

12  unique and that they have been subject to reasonable efforts to maintain their secrecy.");

13  *Suarez Corp. Industries v. Earthwise Technologies, 636 F. Supp. 2d 1139 (W.D. Wash. 2008)*

14  ("Mr. Searle fails to create a genuine issue of material fact as to whether incorporation of a

15  scroll fan into SCI's heaters derives independent economic value from not being generally

16  known to or readily ascertainable. The Court should therefore grant SCI's Motion for

17  Summary Judgment on Searle's Trade Secret Misappropriation Claim"); *Next Payment Sols.*

18  *v. Clearesult Consulting, Inc.,* No. 1:17-cv-8829 (N.D. Ill. May 31, 2020) (Summary

19  Judgment granted dismissing trade-secret claim under Illinois and DTSA statutes where

20  claimant failed to identify what the alleged trade secrets actually are or otherwise establish

21  their existence).

22      HP Tuners's failure to identify with specificity what trade-secret was supposedly

23  stolen dooms its claim that the Syked Tuning software includes such alleged secrets.  Given

24  that HP Tuners has not and cannot identify any particular "trade-secret" it claims Syked

25  Tuning stole, there is no surprise that HP Tuners' own software experts were unable to

26  identify any such theft either during their inspection of the Syked Tuning software or in their

27  expert report.

28

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT                    Page 21
Cause No. 17-CV-05760-BHS

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

Given that HP Tuners has not, and cannot, provide evidence that the Syked Tuning software was copied from HP Tuners' software or incorporates (so far unidentified) trade-secrets of HP Tuners, partial summary judgment that the Syked Tuning software does not infringe any right of HP Tuners is appropriate and should be granted.  In particular, this Court should rule, as a matter of law, that: (1) HP Tuners cannot prove that the Syked-Tuning software that it accuses in this case contains and/or uses any purported "trade secret" of HP Tuners, (2) Defendants are not liable for any claim based on the allegations that the Syked-Tuning software was created, used, sold or otherwise distributed in violation of any of the Federal DTSA, the Illinois laws regarding trade secrets and/or the Washington laws regarding trade secrets, and (3) that HP Tuners is not entitled to an injunction against any use, sale, distribution or other commercialization of the Syked-Tuning software.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court enter partial summary judgment that the Syked Tuning software at issue in this matter  does not infringe any right of HP Tuners and that all claims based on such allegations be dismissed from this action.

Dated June 2, 2021.                              Respectfully submitted,

*/s/ Philip P. Mann*
Philip P. Mann, WSBA No: 28860
**Mann Law Group PLLC**
403 Madison Ave. N. Ste. 240
Bainbridge Island, Washington 98110
Phone (206) 436-0900
phil@mannlawgroup.com

Attorneys for Defendants

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT                    Page 22
Cause No. 17-CV-05760-BHS

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.8500

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify on the date indicated below, I electronically filed the foregoing

3   with the Clerk of the Court using the CM/ECF system which will send notification of such

4   filing to all parties who have appeared in this matter.

5

6   DATED: June 2, 2021.                    _/s/ Philip P. Mann_____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT                    Page 23
Cause No. 17-CV-05760-BHS

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.8500