HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HP TUNERS, LLC, a Nevada limited liability company,

                 Plaintiff,

    vs.

KEVIN SYKES-BONNETT and SYKED ECU TUNING INCORPORATED, Washington corporation, and JOHN MARTINSON,

                 Defendants.

CASE NO.  3:17-cv-05760-BHS

**PLAINTIFF HP TUNERS LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FRCP 56 AND LR 56.1**

**NOTING DATE: JUNE 25, 2021**

**ORAL ARGUMENT REQUESTED**

NOW COMES, Plaintiff HP Tuners, LLC ("HPT" or "Plaintiff"), by its attorneys, for its Memorandum of Law in Support of Motion for Partial Summary Judgment pursuant to FRCP 56 and LR 56.1.  In support thereof, HPT states as follows:

## I.    **INTRODUCTION**

This is a suit for misappropriation of confidential proprietary information, including trade secrets, and related causes of action for violations of federal and state law, unfair competition, breach of contract and tortious interference with prospective economic relations.

On September 20, 2017, Plaintiff initiated litigation against Defendants claiming that Defendants misappropriated HPT's proprietary software, systems and source code, reverse engineered the software, release cracked versions of HPT's software, unlawfully sold thousands

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - page 1

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

of credits for use in HPT's software, created and sold fraudulent application keys to unlock HPT's software, and publicly disclosed HPT's confidential information.  Dkt. 35, ¶¶ 56-81.

After extensive discovery, Defendants admitted to possessing, using and misappropriating HPT's confidential and proprietary information, Defendants have admitted to hacking and publicly releasing cracked versions of HPT's software and Defendants have admitted to generating and selling fraudulent application keys to third parties for profit.

Regarding these issues, in pleadings filed by Defendant in this matter (*see* Dkt. 209, a copy of which is attached hereto as Exhibit A), Defendant Kevin Sykes-Bonnett ("Sykes-Bonnett") admitted liability for "having generated and distributed unauthorized 'keys' permitting others to use HP Tuners tuning products without paying the license fees HP Tuners charges for such use."  (Exh. A, p. 1).  "Mr. Sykes-Bonnett (1) does not deny these allegations, (2) has stipulated and admitted that he engaged in this activity, and (3) accepts liability for having done so."  (Exh. A, p. 1).  The admissions to this misconduct give rise to liability under each of the counts asserted in the First Amended Complaint. (Dkt. 35).

Similarly, Defendant Sykes-Bonnett also conceded liability for "having 'hacked' certain HP Tuners' software and posting that hacked software to the Internet under the username, 'ecumaster.'"  (Exh. A, p. 2).  "Mr. Sykes-Bonnett (1) does not deny these allegations, (2) has stipulated and admitted that he engaged in this activity, and (3) accepts liability for having done so."  (Exh. A, p. 2).  The admissions to this misconduct give rise to liability under each of the counts asserted in the First Amended Complaint. (Dkt. 35).

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - page 2

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

While this Motion for Partial Summary Judgment is limited to Defendants Kevin-Sykes-Bonnett, Syked ECU Tuning, Inc. and Syked Performance Engineering LLC[1], Defendants' misconduct goes beyond these issues.  At trial and as detailed in prior pleadings filed in this matter, numerous factual issues exist concerning Defendant John Martinson's actions, involvement in, knowledge of and misconduct vis-à-vis the various claims asserted.

At this time, based on the admissions made by Kevin Sykes-Bonnett, individually, and in his capacity as a principal, owner and officer of Defendant Syked ECU Tuning, Inc. and its successor or alter ego, Syked Performance Engineering, LLC, partial summary judgment against Defendants Kevin-Sykes-Bonnett, Syked ECU Tuning, Inc. and Syked Performance Engineering LLC and in favor of Plaintiff HPT on Counts I through VIII is appropriate at this time and the only remaining determination to be made is the measure of damages and nature and extent of the injunctive relief to be entered against these Defendants.

## II.    LR 56.1 STATEMENT OF MATERIAL FACTS

1.    HPT is a Nevada limited liability company with its principal place of business in Buffalo Grove, Illinois.

2.    Sykes-Bonnett is a resident of Washington and is an owner and officer of Defendant Syked ECU Tuning Incorporated ("Syked Tuning") and Defendant Syked Performance Engineering LLC ("SPE").

---

[1]    On October 1, 2020, HPT filed a successor liability based Complaint in this Court against SPE entitled *HP Tuners, LLC v. Syked Performance Engineering, LLC*, Civ. No. Case 3:20-cv-05973-BHS (the "Successor Litigation", Dkt. 1), which has been consolidated with this matter. (Dkt. 271).  At deposition in this matter, Sykes-Bonnett admitted that he and Martinson are the sole owners of SPE.  *See* Transcript of the Videotaped Deposition of Kevin E. Sykes-Bonnett, Volume II, dated May 16, 2019 ("Sykes-Bonnett Tr."), p. 424-425 (Dkt. 192-1).  There is no issue of fact that SPE is a mere continuation of Syked Tuning, with all of its assets, at the same business address with the same equipment, personnel, and signage, and otherwise held out to the public with no distinction from the prior entity.

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - page 3

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

3.      John Martinson ("Martinson") is a resident of Washington and an owner and officer of Syked Tuning and SPE.

4.      Syked Tuning was a corporation existing under the laws of Washington with its principal places of business in Puyallup, Washington and was dissolved on or about June 7, 2019.

5.      On May 8, 2019, Sykes-Bonnett and Martinson formed SPE.  The business of Defendant SPE remains identical to that of its predecessor, Syked Tuning.  Sykes-Bonnett and Martinson are the owners and principals of both entities, the website for both businesses is the same (www.sykedecutuning.com), and the principal business address for Defendant SPE at 1602 Point Fodsick Drive NW, Gig Harbor, Washington 98335.  SPE has remained and continued at this same address as Syked ECU, with the assets of Syked Tuning, holding itself out to the public as the same continued business, and with the same equipment, signage, and under the same lease.

6.      HPT's business includes but is not limited to computer hardware and software designed for use in custom and/or pre-programmed engine and transmission tuning and calibration applications for automobiles, trucks and other types of vehicles (including but not limited to ATVs, snowmobiles and watercraft) (the "HP Tuners Business").

7.      For HPT to gain a competitive advantage in the industry, it has cultivated, nurtured and maintained an extensive network of vendors, resellers and customers to which HPT provides its products and offerings.

8.      HPT has expended significant time, money and resources to develop the HP Tuners Business, including development of its proprietary products and source code, with methods, strategies, programs and technologies which did not exist in the industry prior to HPT's

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - page 4

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

development of the HP Tuners Business. HPT is constantly working to develop same, and to avoid efforts by third parties to pirate HPT's products and offerings.

9.      HPT's confidential and proprietary software, source code, license key generator, implementation of various algorithms and MPVI communication protocol documents and offerings have been developed and extensively refined by HPT at a substantial cost and effort and constitute confidential information and valuable trade secrets of HPT (collectively, the "Confidential Information").

10.      HPT derives economic value from the fact that its Confidential Information is not known outside of HPT's business and is not available through any public records and information sources. HPT's Confidential Information cannot be independently developed by its competitors without great effort and expense.  Accordingly, HPT requires that its Confidential Information be kept strictly confidential by its employees, restricts access to this information, and has taken substantial steps and security measures to protect the confidentiality of same.

11.      Furthermore, HPT undertook reasonable measures to maintain the secrecy of its proprietary products, source code, software and offerings, including but not limited to entering into licensing agreements with protective clauses and installing security measures to prevent others from obtaining access and pirating HPT's confidential and proprietary products, source code, software and offerings.

12.      In connection with the Defendants' use of HPT's software, Defendants entered into an End User License Agreement ("EULA") with HPT, which provided in pertinent part:.

> You may not create a derivative work, reverse engineer, decompile, or disassemble the SOFTWARE PRODUCT, except and only to the extent that such activity is expressly permitted by applicable law notwithstanding this limitation.

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - page 5

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

13.     The EULA also limits the user's right to transfer the software, stating:

> You may physically transfer the SOFTWARE PRODUCT from one of your computers to another provided that the SOFTWARE PRODUCT is used on only one computer at a time. You may not distribute copies of the SOFTWARE PRODUCT or accompanying written materials to others. You may not transfer the SOFTWARE PRODUCT to anyone without the prior written consent of HP Tuners LLC.

14.     At deposition and in pleadings filed in this matter, Sykes-Bonnett, individually and as owner, officer and agent of Defendants Syked Tuning and SPE, had conceded and admitted that he:

a.   decompiled, disassembled and hacked HPT's software.

b.   possessed HPT's confidential and proprietary source code and parameters list.

c.   accessed HPT's confidential and proprietary source code and parameters list.

d.   shared HPT's confidential and proprietary source code with third parties.

e.   incorporated HPT's confidential and proprietary source code, parameters list and other proprietary information into Syked Tuning's software.

f.   referenced HPT's confidential and proprietary source code, parameters list and other proprietary information in connection with the development of Syked Tuning's software.

g.   received, accessed and used the subject Flash Drive through unauthorized means containing HPT's confidential and proprietary information.

h.   received, accessed and used HPT's confidential and proprietary trade secret information, including source code, program files and other materials on the Flash Drive containing HPT's confidential and proprietary information in connection with the development of Defendants' software.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

i.  received, possessed, accessed and used HPT's confidential and proprietary key generator tool, and generated application keys for use with HPT interfaces for third parties for profit.

j.  released and made hacked HPT software publicly available for download by third parties on the internet under the username "ecumaster", among other aliases, which "cracked" software allows users to bypass all licensing checks and prompts, thus enabling HPT's users to use the software on any vehicle they wish without paying any licensing fees to HPT.

k.  knowingly generated, created, used and/or obtained fraudulent application keys that were not generated by HPT and which have been passed off as genuine and authentic products and offerings of HPT.

l.  disclosed HPT's source code to third parties via electronic means.

m.  shared HPT's confidential and proprietary files with third parties via electronic means.

(*See* Dkt. 209; *see also* Dkt. 192-1, *generally*)

15.     John R. Bone, CPA, CFF, HPT's damages expert, analyzed various pleadings and discovery information and has rendered various opinions on monetary damages in this matter, which have neither been countered nor refuted by Defendants in any manner whatsoever.

16.     As a result of Defendants' misconduct, HPT has suffered irreparable harm; therefore, permanent injunctive relief is appropriate.

17.     HPT's First Amended Complaint asserts the following causes of action: (a) Count I - violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030; (b) Count II - violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836 *et seq*.; (c) Count III -

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - page 7

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

misappropriation of trade secrets under the Washington Uniform Trade Secrets Act, RCW 19.108 ("WUTSA"); (d) Count IV - violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et. seq.* ("ITSA"); (e) Count V - unfair competition in violation of the Washington Consumer Protection Act, RCW 19.86.020 ("WCPA"); (f) Count VI - unfair competition in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et. seq.* ("ICFA"); (g) Count VII - breach of contract; and, (h) Count VIII - tortious interference with prospective economic relations.

18.     During the pendency of this action, Sykes-Bonnett and Martinson formed SPE and dissolved Syked Tuning.   SPE continues the business of Syked Tuning in the same manner, with the same assets, and from the same location.  HPT's Complaint in the Successor Litigation brings a cause of action against SPE premised on successor liability for the same claims as the First Amended Complaint herein, which has been incorporated and consolidated into this action.

### III.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).   The determination of the existence of a

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - page 8

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

material fact is often a close question, and the Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Factual issues of controversy should be resolved in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630; *Anderson*, 477 U.S. at 255. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990). *See also Insurance Company of the West v. Afford-A-Home, Inc.*, 2014 U.S. Dist. LEXIS 166928, at *6-7 (W.D. Wash. December 2, 2014).

A. **SUMMARY JUDGMENT ON COUNT I - VIOLATION OF THE CFAA, 18 U.S.C. §1030 - SHOULD BE GRANTED AGAINST DEFENDANTS SYKES-BONNETT, SYKED TUNING, AND SPE**

The CFAA was enacted in 1984 as a criminal statute to protect classified information in government computer systems. In 1994 it added a private right of action (18 U.S.C. § 1030(g)) permitting both compensatory damages and injunctive relief and, in 1996, it expanded to include computers "which [are] used in interstate or foreign commerce or communications" by defining such computers as "protected" computers. The CFAA irrespective of whether information qualifies as a secret, from the taking and/or use of same by hackers, spammers and others.

The *prima facie* elements of a CFAA claim are: (1) intentionally accessing a computer (2) "without authorization" or that "exceeds authorized access," (3) from a protected computer, (4) committed for commercial advantage or private financial gain or committed in furtherance of

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - page 9

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

any commercial or tortious act or the value of the information obtained exceeds $5,000.  *See* 18 U.S.C. §1030(a)(2).

The CFAA defines "exceeds authorized access," as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled to so obtain or alter." *See* 18 U.S.C. § 1030(e)(6). To prove that one has "exceeded authorized access," a plaintiff may show (a) how the person's authority to obtain or alter information on the computer was limited, rather than absolute, and (b) how the person exceeded the limitations in obtaining or altering the information.

Here, there is no genuine issue of material fact that Defendants' *admitted* misconduct constitutes violations of the CFAA. Sykes-Bonnett, individually and as an owner an officer of Defendant Syked Tuning, and in concert with others, knowingly and with intent to defraud, wrongfully accessed, trespassed, engineered and/or hacked HPT's software, systems and source code to remove licensing restrictions from HPT's VCM Suite Software which has a value far in excess of $5,000 and publicly distributed it to cause harm to HPT, which is a competitor of Defendants.  Defendants, acting in concert with others, accomplished this via various means including adding extra licenses to existing interfaces and reselling them, by logging in via remote desktop to customer machines to enter in a hacked license key and by selling a version of hacked software with licensing defeated.  HPT's business, computers, software, systems and source code are used in, and affect, interstate commerce.

Likewise, based on the admissions herein, there is no genuine issue of material fact that Sykes-Bonnett, individually and as an owner an officer of Defendant Syked Tuning and its successor or alter ego SPE, *intentionally* hacked and publicly released HPT's software to allow third parties to use HPT's software without having to purchase application keys from HPT.  (*See*

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

Exh. A). Defendants Sykes-Bonnett and Syked Tuning, by virtue of its principals and independent contractors which were engaged to provide services) have admitted to *intentionally* reverse engineering, decompiling, disassembling and otherwise hacking HPT's software. Furthermore, Sykes-Bonnett has also admitted to *intentionally* distributing fraudulent application keys to third parties for profit.   As a result of the intentional misconduct (which has been admitted), summary judgment in favor of HPT and against Defendants Kevin Sykes-Bonnett, Syked Tuning and SPE should be entered on Count I for violation of the CFAA and this matter should be set for prove on the issue of monetary damages and the nature and extent of the permanent injunctive relief to be entered.

> **B.     SUMMARY JUDGMENT ON COUNT II - VIOLATION OF THE DTSA, 18 U.S.C. §1836 *ET SEQ*. - SHOULD BE GRANTED AGAINST DEFENDANTS SYKES-BONNETT, SYKED TUNING, AND SPE**

The DTSA is a federal statute which prohibits the theft of trade secrets. *See* 18 U.S.C.A. § 1832. The purpose of the statute is to "give American companies the opportunity to protect against and remedy misappropriation of important proprietary information." B. Cohen, M. Renaud & N. Armington, *Explaining the Defend Trade Secrets Act,* BUSINESS LAW TODAY (Sept. 2016).   To prevail on a claim for violation of the DTSA, Plaintiff must prove: (1) the existence of a trade secret that is related to a product or service used in, or intended for use in, interstate commerce; (2) ownership of the trade secret by Plaintiff; and (3) an actual or threatened misappropriation of the trade secret. 18 U.S.C. § 1836.

A trade secret consists of information as to which the owner has taken reasonable measures to keep secret and derives actual or potential value from not being generally known to or readily ascertainable by the general public, and may include financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations,

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - page 11

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs or codes. 18 U.S.C. § 1839(3). Trade secret information may consist of information that is stored or recorded physically, electronically, graphically, photographically or in writing. Id.  The "owner" of a trade secret is the person or entity in whom or in which rightful legal or equitable ownership resides. *See* 18 U.S.C. § 1839(4).

The term "misappropriation" means: (1) acquisition of a trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret by a person who used improper means to acquire knowledge of the trade secret; or (3) disclosure or use of a trade secret by a person who knew or had reason to know at the time of disclosure or use that the trade secret was derived through a person who had used improper means to acquire the trade secret; or (4) disclosure or use of a trade secret by a person who acquired the trade secret under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or (5) disclosure or use of a trade secret by a person who derived the trade secret through a person who owed a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or (6) disclosure or use of a trade secret by a person who before a material change of his or her position knew or had reason to know that it was a trade secret, and that knowledge of it had been acquired by accident or mistake. 18 U.S.C. § 1839(5).  The term "improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means, but does not include reverse engineering, independent derivation or any other lawful means of acquisition. 18 U.S.C. § 1839(6).

Here, there is no genuine issue of material fact that: (1) Defendants Sykes-Bonnett, Syked Tuning and SPE had access to HPT's trade secrets, including HPT's source code,

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

parameters' list, key generator, implementation of various algorithms, MPVI communication protocol documents and various HPT files, programs, documents, materials and information on a Flash Drive (which Sykes-Bonnett destroyed); (2) HPT's trade secrets are not generally known to, or readily ascertainable by, the general public or its competitors; (3) HPT's trade secrets have independent value, both actual and potential, from not being generally known, and not readily ascertainable by proper means, by other persons who can obtain economic value from their disclosure and use; (4) HPT undertook significant efforts to maintain the confidential nature of its trade secrets; (5) Defendants misappropriated HPT's trade secrets without HPT's knowledge or consent; (6) Defendants' misappropriation of HPT's trade secrets was willful and malicious; (7) Defendants used, and may be continuing to use, HPT's trade secrets to benefit themselves/itself to the detriment of HPT; and (8) as a result of Defendants' misappropriation of trade secrets, HPT has suffered and will continue to suffer damages.

There is no genuine issue of material fact on these issues based on the Defendants' admissions to having engaged in the aforesaid misconduct.  Consequently, summary judgment in favor of HPT and against Defendants Sykes-Bonnett, Syked Tuning and SPE should be entered on Count II for violation of the DTSA and this matter should be set for prove on the issue of monetary damages and the nature and extent of the permanent injunctive relief to be entered.

**C.      SUMMARY JUDGMENT ON COUNTS III AND IV - VIOLATION OF THE WASHINGTON UNIFORM TRADE SECRETS ACT, RCW 19.108 AND VIOLATION OF THE ILLINOIS TRADE SECRETS ACT, 765 ILCS 1065/1 *ET. SEQ.* - SHOULD BE GRANTED AGAINST DEFENDANTS SYKES-BONNETT, SYKED TUNING, AND SPE**

Washington and Illinois have substantially similar statutes governing the misappropriation of trade secrets. Under both the WUTSA and ITSA, no genuine issue of material fact exists concerning violations by Defendants Sykes-Bonnett, Syked Tuning and SPE.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

The WUTSA is largely identical to the Uniform Trade Secrets Act, and likewise prohibits "misappropriation" of trade secrets and provides certain remedies.

The WUTSA defines "Improper means" to include theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. *See* Wash. Rev. Code § 19.108.010(1). "Misappropriation" means":(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) Used improper means to acquire knowledge of the trade secret; or

(ii) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was

(A) derived from or through a person who had utilized improper means to acquire it,

(B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or

(C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Wash. Rev. Code § 19.108.010(2)

In addition, under the WUTSA, "Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.  *See* Wash. Rev. Code § 19.108.010(2).  A "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

Wash. Rev. Code § 19.108.010(4)

The Illinois statute is also largely identical to the Uniform Trade Secrets Act and, like the WUTSA, prohibits "misappropriation" of trade secrets and provides certain remedies.  *See* 765 ILCS 1065/1 *et seq.*   "Improper means" is defined to include theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means. *See* 765 ILCS 1065/2(a). "Misappropriation" under the ITSA means:

> (1) acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means; or
> (2) disclosure or use of a trade secret of a person without express or implied consent by another person who:
>> (A) used improper means to acquire knowledge of the trade secret; or
>> (B) at the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:
>>> (I) derived from or through a person who utilized improper means to acquire it;
>>> (II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>> (III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>> (C) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

765 ILCS 1065/2(b)

Under the ITSA, "Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other for-profit or not-for-profit legal entity.  765 ILCS 1065/2(c).  "Trade Secret" means information, including but not limited to, technical or non-technical data, a formula, pattern,

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - page 15

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:

(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d).

Here, there is no genuine issue of material fact that: (1) Defendants Sykes-Bonnett and Syked Tuning had access to HPT's trade secrets, including HPT's source code, parameters' list, key generator, implementation of various algorithms, MPVI communication protocol documents and various HPT files, programs, documents, materials and information on a Flash Drive (which Sykes-Bonnett destroyed); (2) HPT's trade secrets are not generally known to, or readily ascertainable by, the general public or its competitors; (3) HPT's trade secrets have independent value, both actual and potential, from not being generally known, and not readily ascertainable by proper means, by other persons who can obtain economic value from their disclosure and use; (4) HPT undertook significant efforts to maintain the confidential nature of its trade secrets; (5) Defendants misappropriated HPT's trade secrets without HPT's knowledge or consent; (6) Defendants' misappropriation of HPT's trade secrets was willful and malicious; (7) Defendants used, and may be continuing to use, HPT's trade secrets to benefit themselves/itself to the detriment of HPT; and (8) as a result of Defendants' misappropriation of trade secrets, HPT has suffered and will continue to suffer damages.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

There is no genuine issue of material fact on these issues based on the Defendants' admissions to having engaged in the aforesaid misconduct as detailed in the Statement of Material Facts.   Consequently, summary judgment in favor of HPT and against Defendants Sykes-Bonnett, Syked Tuning and SPE should be entered on Count III and IV for violations of the WUTSA and the ITSA and this matter should be set for prove on the issue of monetary damages and the nature and extent of the permanent injunctive relief to be entered.

> **D.** **SUMMARY JUDGMENT ON COUNTS V AND VI - UNFAIR COMPETITION UNDER THE WCPA, *RCW 19.86.020,* AND UNFAIR COMPETITION UNDER THE ICFA, 815 ILCS 505/1 *ET. SEQ.* - SHOULD BE GRANTED AGAINST DEFENDANTS SYKES-BONNETT, SYKED TUNING, AND SPE**

The unfair competition statutes under Washington and Illinois law are similar as well. Based on the admissions of the Defendants herein, there is no genuine issue of material fact vis-à-vis Defendants' violations of the WCPA and the ICFA and summary judgment on Counts V and VI is appropriate.

The elements to establish a claim under the WCPA are: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) public interest; (4) injury to business or property; and (5) causation.  *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 787–93, 719 P.2d 531 (1986).

The term "unfair or deceptive" is not otherwise defined in the Act, and only a capacity or tendency to deceive need be proved as opposed to a showing of intentional deception. See RCW 19.86.020.   *See also  State v. A.N.W. Seed Corp.*, 116 Wn.2d 39, 50, 802 P.2d 1353 (1991); *Hangman Ridge*, 105 Wn.2d at 785, 719 P.2d 531.

The ICFA is similarly designed to protect consumers, borrowers, and businessmen against business fraud, unfair methods of competition (unfair competition), and unfair or

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

deceptive practices in the conduct of trade or business. *See generally* 815 ILCS 505/1, *et seq*. Violations of the Act include the use of any deception, fraud, false pretense, false promise, misrepresentation, or concealment of facts in the conduct of trade or commerce. *See* 815 ILCS 505/2.  The elements of a private cause of action under the ICFA are:

(1) a deceptive act or practice by the defendant;

(2) the defendant intended the plaintiff to rely on the deception;

(3) the deception occurred in the course of conduct involving trade or commerce; and

(4) actual damages to the plaintiff proximately caused by the deception.

*See  Connick v. Suzuki Motor Co., Ltd*, 174 Ill. 2d 482, 501 (Ill. 1996)

Based on Defendants' admissions (as detailed in the Statement of Material Facts above) as to misappropriating and using HPT's confidential and proprietary trade secret information, there is no genuine issue of material fact on this claim and summary judgment is appropriate. Likewise, Defendants' admissions to publicly advertising and unauthorized sales of discounted HPT application keys (e.g. credits) to third parties, deceived the public by falsely passing off such application keys (e.g. credits) as authentic products and offerings of HPT.

For these reasons, summary judgment in favor of HPT and against Defendants Sykes-Bonnett, Syked Tuning and SPE should be entered on Count V for violation of the WCPA, and on Count VI for violation of the ICFA, and this matter should be set for prove-up on the issue of monetary damages and the nature and extent of the permanent injunctive relief to be entered.

**E.    SUMMARY JUDGMENT ON COUNT VII - BREACH OF CONTRACT - SHOULD BE GRANTED AGAINST DEFENDANTS  SYKES-BONNETT, SYKED TUNING, AND SPE**

Parties to a valid binding contract are legally obligated to abide by the terms of that contract. *General Teamsters Local No. 231 v. Whatcom County*, 38 Wn. App. 715, 721 (Wash.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

App. 1984); *see also GMAC v. Everett Chevrolet, Inc*., 179 Wn. App. 126, 147 (Wash. App. 2014); Wash. Const. Art. 1, § 23 (no law impairing the obligation of contracts shall be passed). A breach of contract is thus actionable where there is 1) a contract which imposes a duty; 2) the duty is breached; and 3) the breach proximately causes damage to the plaintiff.  *Northwest Mfrs. V. Dep't of Labor*, 78 Wn. App. 707, 717 (Wash. App. 1995).

"A contract exists when the intention of the parties is plain and the terms of a contract are agreed upon . . . A contract requires offer, acceptance, and consideration."  *Veith v. Xterra Wetsuits, LLC*, 144 Wn. App. 362, 366 (2008).  A contract is not valid until acceptance of an offer (*see Hansen v. Transworld Wireless TV-Spokane, Inc*., 111 Wn. App. 361, 370 (2002), which acceptance "is an expression … of the intention to be bound by the offer's terms." *Plouse v. Bud Clary of Yakima, Inc*., 128 Wn. App. 644, 648 (2005).  Contract validity requires parties' objective manifestation of mutual assent to all material terms of the agreement."  *P.E. Sys., LLC v. CPI Corp*., 176 Wn. 2d 198, 209 (2012).

In order to prevail on a breach of contract claim, the plaintiff must prove causation, the third element of a breach of contract claim. Under Washington law, proximate cause encompasses both cause in fact and legal cause, with a cause in fact being "a cause but for which the claimed damages would not have occurred."  *Northwest Mfrs.*, 78 Wn. App. at 713. Proximate cause occurs where the damages "may fairly and reasonably be considered either arising naturally … or such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract, as the probably result of the breach of it." *Gaglidari v. Denny's Rests., Inc*., 117 Wn. 2d 426, 446 (1990).

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

Here, in connection with Defendants' use of HPT's software, Defendants entered into the EULA with HPT.  It is uncontested that the EULA is a valid and enforceable contract and HPT fully performed its obligations under the EULA.  The EULA provided, in pertinent part:

> You may not create a derivative work, reverse engineer, decompile, or disassemble the SOFTWARE PRODUCT, except and only to the extent that such activity is expressly permitted by applicable law notwithstanding this limitation.

The EULA also limits the user's right to transfer the software.  Specifically, it states:

> You may physically transfer the SOFTWARE PRODUCT from one of your computers to another provided that the SOFTWARE PRODUCT is used on only one computer at a time. You may not distribute copies of the SOFTWARE PRODUCT or accompanying written materials to others. You may not transfer the SOFTWARE PRODUCT to anyone without the prior written consent of HP Tuners LLC.

Among other things, as detailed in the Statement of Material Facts, Defendants (including Sykes-Bonnett and Syked Tuning, by virtue of its principals and independent contractors) admitted to reverse engineering, decompiling, disassembling and otherwise hacking HPT's software in violation of the terms and provisions of EULA.  Defendants also wrongfully transferred, shared and disseminated HPT's software publicly without authorization in violation of the EULA.  Defendants' misconduct constitutes material breaches of the EULA and it is undisputed that HPT suffered damages as a result of these breaches.  There is no genuine issue of material fact in this case concerning Defendants' breaches of contract.

For these reasons, summary judgment in favor of HPT and against Defendants Sykes-Bonnett, Syked Tuning and SPE should be entered on Count VII for breach of contract and this matter should be set for prove on the issue of monetary damages and the nature and extent of the permanent injunctive relief to be entered.

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

1
2
3

**F.    SUMMARY   JUDGMENT    ON   COUNT   VIII  -  TORTIOUS INTERFERENCE   WITH   PROSPECTIVE   CONTRACTUAL   OR ECONOMIC  RELATIONS  -  SHOULD  BE  GRANTED  AGAINST DEFENDANTS SYKES-BONNETT, SYKED TUNING, AND SPE**

4

Tortious interference upon improperly inducing or purposefully causing a third person

5

either to not enter, or not continue, a business relation with another.  Restatement (Second) of

6

Torts § 766B.   The requisite elements are: (1) a valid contractual relationship or business

7

expectancy; (2) the defendant's knowledge of that relationship; (3) and intentional interference

8

with same that induces or causes a breach or termination of the relationship or expectancy; (4)

9

that defendant interfered for an improper purpose or used improper means; and (5) resultant

10

damage.  *See Leingang v. Pierce County Medical Bureau*, 131 Wn.2d 133, 157 (1997).

11

A reasonable business expectancy includes any business relationship that would be of

12

pecuniary value.  *Newton Ins. Agency & Brokerage v. Caledonian Ins. Gr.*, 114 Wn. App. 151,

13

158 (Wash. App. 2002).  Washington state law "does not require the existence of an enforceable

14

contract or the breach of one to support an action for tortious interference with a business

15
16

relationship." *Commodore v. University Mechanical Contractor*, 120 Wn. 2d 120, 138 (1992).

17

In order to prove that interference was *intentional*, the actor must have desired to bring

18

the interference about or knew that "the interference [was] certain or substantially certain to

19

occur as a result of his action." *Newton*, 114 Wn. App. at 158.  The interference must also have

20

been unjustified or improper.  *McGowan*, 723 F. Supp. at 539, *citing Scymanski v. Dufault*, 80

21

Wash. 2d 77, 87 (1971); *Pleas v. Seattle*, 49 Wash. App. 825, 832-33 (1987).  "Exercising in

22

good faith one's legal interests is not improper interference." *Leinang*, 131 Wn. 2d at 157, *citing*

23

*Schmerer v. Darcy*, 80 Wn. App. 599, 506 (1996).

24
25

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - page 21

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

Here, as detailed in the Statement of Material Facts, there is no genuine issue of material fact that: (1) HPT had a valid business relationship or expectancy with its customers; (2) Defendants had knowledge of HPT's business relationships or expectancies with its customers; (3) Defendants intentionally and maliciously interfered with HPT's business relationships or expectancies by publicly distributing hacked HPT software and by selling and/or giving fraudulent application keys and/or credits to HPT's customers; (4) Defendants' improper conduct induced a breach or termination of HPT's business relationships and expectancies; (5) HPT has suffered damages as a result of Defendants' tortious conduct.

For these reasons, summary judgment in favor of HPT and against Defendants Sykes-Bonnett, Syked Tuning and SPE should be entered on Count VIII for tortious interference with prospective contractual or economic relations and this matter should be set for prove on the issue of monetary damages and the nature and extent of the permanent injunctive relief to be entered.

Dated this 2nd day of June, 2021                    Respectfully submitted,

_s/ Andrew P. Bleiman_
Attorneys for HP Tuners, LLC

Stephen G. Leatham, WSBA #15572
Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
PO Box 611
211 E. McLoughlin Boulevard
Vancouver, WA 98666-0611
Telephone:  (360) 750-7547
Fax:  (360) 750-7548
E-mail:  sgl@hpl-law.com

Andrew P. Bleiman (admitted *pro hac vice*)
Marks & Klein
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
(312) 206-5162
andrew@marksklein.com

*Attorneys for HP Tuners, LLC*

Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2021, I caused the foregoing to be electronically with the Clerk of Court using the **CM/ECF system** which will electronically send Notice to all Counsel of Record.

MARKS & KLEIN

*s/ Andrew P. Bleiman*
Andrew P. Bleiman (admitted *pro hac vice*)
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
Telephone:  (312) 206-5162
E-mail:  andrew@marksklein.com

Attorney for Plaintiff

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - page 23